1

```
 1                    UNITED STATES DISTRICT COURT
                      MIDDLE DISTRICT OF FLORIDA
 2                        ORLANDO DIVISION

 3
      UNITED STATES OF AMERICA,    )
 4                                 )
           PLAINTIFF,              )
 5                                 )    CASE NO:
      VS.                          )    6:98-CR-99-ORL-19A
 6                                 )
                                   )    ORLANDO, FLORIDA
 7    SHOLAM WEISS,                )
      JAN R. SCHNEIDERMAN,          )    FEBRUARY 15, 2000
 8    YAAKOV STARK,                )    MORNING SESSION
          A/K/A JAN STARR,          )
 9    KEITH POUND,                 )
                                   )
10         DEFENDANTS.             )

11                      SENTENCING PROCEEDINGS

12           BEFORE THE HONORABLE PATRICIA C. FAWSETT
                   UNITED STATES DISTRICT JUDGE
13

14
      APPEARANCES:
15

16    FOR THE PLAINTIFF:    JUDITH K. HUNT, ESQUIRE
                            THOMAS W. TURNER, ESQUIRE
17
      FOR THE DEFENDANTS:   KENNETH J. KUKEC, ESQUIRE
18                          THOMAS H. DALE, ESQUIRE
                            JOEL HIRSCHHORN, ESQUIRE
19                          CLARK D. MERVIS, ESQUIRE
                            BRUCE A. ALTER, ESQUIRE
20                          ALAN ELLIS, ESQUIRE

21
22    OFFICIAL COURT REPORTER: RITA G. MEYER, RMR-CRR

23    ***PROCEEDINGS RECORDED STENOGRAPHICALLY ***
      COMPUTER-AIDED TRANSCRIPTION
24

25
```

```
 1              (PROCEEDINGS COMMENCED AT 9:40 A.M.)
 2              THE DEPUTY CLERK:  NEXT CASE IS 98-99-CR-ORL-19A,
 3  THE UNITED STATES OF AMERICA VERSUS KEITH POUND, JAN
 4  SCHNEIDERMAN AND YAAKOV STARK, WHO'S ALSO KNOWN AS JAN STARR.
 5              WHO REPRESENTS THE GOVERNMENT, PLEASE?
 6              MS. HUNT:  JUDY HUNT FOR THE UNITED STATES.
 7              THE DEPUTY CLERK:  WHO REPRESENTS KEITH POUND?
 8              MR. DALE:  THOMAS DALE, YOUR HONOR.
 9              THE DEPUTY CLERK:  WHO REPRESENTS JAN SCHNEIDERMAN?
10              MR. KUKEC:  GOOD MORNING, YOUR HONOR.  KENNETH KUKEC
11  ON BEHALF OF MS. SCHNEIDERMAN, WHO'S PRESENT IN THE COURTROOM.
12              THE DEPUTY CLERK:  WHO REPRESENTS MR. STARK?
13              MR. MERVIS:  GOOD MORNING, JUDGE.  CLARK MERVIS AND
14  BRUCE ALTER FOR MR. STARR, BUT WE'VE ALSO FILED PAPERS FOR A
15  SPECIAL APPEARANCE TODAY BY MR. ALAN ELLIS ON BEHALF OF
16  MR. STARR FOR PURPOSES OF THIS HEARING.
17              THE COURT:  WELL, I'LL DEAL WITH THAT WHEN WE GET TO
18  YOUR SENTENCING OF MR. STARR.  MR. STARR IS PRESENT?
19              MR. HIRSCHHORN:  YES, JUDGE.  MR. STARR IS PRESENT.
20              THE COURT:  NOW, THERE ARE COMMON ISSUES IN SOME OF
21  THESE SENTENCINGS.  FOR INSTANCE, THE GROUPING ISSUE ON THE
22  FRAUD AND MONEY LAUNDERING COUNTS IS RAISED IN MR. WEISS'
23  OBJECTION AND IN MS. SCHNEIDERMAN'S OBJECTION AND MR. DALE, I
24  WOULD ASSUME THAT YOU WANT TO BE PRESENT FOR THAT FOR YOUR
25  CLIENT --
```

3

1          MR. DALE:  YES, MA'AM.

2          THE COURT:  -- SINCE HE WOULD BE AFFECTED.  IS THERE

3   TO BE ADDITIONAL EVIDENCE PRESENTED ON THIS MATTER, MS. HUNT?

4          MS. HUNT:  I DON'T BELIEVE SO, YOUR HONOR.

5          THE COURT:  SHOULD THEY BE ARGUED TOGETHER OR SHOULD

6   THEY BE ARGUED BY DEFENDANT?

7          MS. HUNT:  I THINK IT'S A LEGAL ISSUE MORE THAN A

8   FACTUAL ISSUE, YOUR HONOR.  I DON'T KNOW IF THE COURT WANTS TO

9   RESOLVE SOME OF THE FACTUAL OBJECTIONS TO THE PSI'S BEFORE WE

10  PROCEED.  IF THE FACTUAL OBJECTIONS ARE RESOLVED, PERHAPS THEN

11  WE'LL HAVE THE FACTUAL RECORD CLEAR AND WE CAN SIMPLY PROCEED

12  WITH LEGAL ARGUMENT ON WHETHER THE GROUPING SHOULD BE

13  PERMITTED.

14         THE COURT:  WHAT, IN PARTICULAR, ARE YOU TALKING

15  ABOUT WILL AFFECT THE GROUPING ISSUE?

16         MS. HUNT:  AS I UNDERSTAND THE MOST RECENT CASE THAT

17  WAS CITED TO ME, AND IF I -- I WILL GIVE THE COURT THAT

18  CITATION WHEN WE GET TO LEGAL ARGUMENT -- THERE IS SOME

19  DISTINCTION MADE AS TO WHETHER OR NOT THE PROCEEDS WERE USED

20  TO FACILITATE ONGOING CRIMES AS OPPOSED TO BEING DIVERTED

21  EXCLUSIVELY FOR THE PURPOSES OF THE DEFENDANTS' INDIVIDUAL

22  BENEFIT AND I BELIEVE IN THIS CASE, WE HAVE A MIXTURE OF BOTH

23  OF THOSE TYPE OF PROCEEDS.  THERE MAY BE SOME DISPUTE AS TO

24  HOW MUCH FALL IN THOSE TWO CATEGORIES, IF THAT IS A PERTINENT

25  LEGAL CONSIDERATION.

4

1    THE CASE THAT WAS JUST HANDED TO ME BY PROBATION, I

2  HAVE THE COPY WITH ME SO WE CAN GIVE THIS TO THE COURT.  THE

3  MOST RECENT CASE WAS OCTOBER 6 OF 1999, UNITED STATES VERSUS

4  MCCLENTON.

5    THE COURT:  I'VE READ IT.  I'VE GOT IT.

6    MS. HUNT:  UNDER THAT WHICH IS THE MOST RECENT

7  ELEVENTH CIRCUIT, AS THE COURT KNOWS, WHICH CONTRADICTS SOME

8  OF THE POSITIONS I'VE TAKEN BEFORE.

9    THE COURT:  THE QUESTION IS, WHAT FACTUAL ISSUES AND

10  REALLY WHAT YOU'RE SAYING IS, IT DEPENDS ON WHAT THE

11  DEFENDANTS SAY.

12    MS. HUNT:  THAT'S RIGHT.

13    THE COURT:  ALL RIGHT.  LET ME START WITH MR. KUKEC.

14  ARE YOU EXPECTING TO PRESENT ANY EVIDENCE IN ADDITION TO

15  WHAT'S IN THE RECORD ON THIS ISSUE?

16    MR. KUKEC:  NO, YOUR HONOR.

17    THE COURT:  AND MR. DALE, HAVE YOU CONSIDERED THE

18  ISSUE?

19    MR. DALE:  YES.

20    THE COURT:  ARE YOU EXPECTING TO PRESENT ANY

21  ADDITIONAL EVIDENCE?

22    MR. DALE:  NOT ON THAT ISSUE.

23    THE COURT:  YOU DID NOT FILE AN OBJECTION.  I DON'T

24  THINK THE GOVERNMENT WOULD BE PREJUDICED BY HAVING THIS ARGUED

25  FOR MR. POUND SINCE IT WILL BE THE SAME TYPE OF OBJECTION,

5

1  CORRECT, MR. DALE?

2          MR. DALE:  CORRECT, YOUR HONOR.

3          THE COURT:  AND MR. HIRSCHHORN, ARE YOU EXPECTING TO

4  PRESENT ADDITIONAL EVIDENCE?

5          MR. HIRSCHHORN:  NO, YOUR HONOR.  CAN I NOTE THAT

6  WHEN THE COURTROOM DEPUTY CLERK CALLED THE CASE, MY CASE

7  WASN'T CALLED?

8          THE DEPUTY CLERK:  THAT'S TRUE.

9          MR. HIRSCHHORN:  MR. WEISS.

10          THE COURT:  WHY DIDN'T YOU DO THAT?  WELL, CALL IT.

11  THANK YOU, MR. HIRSCHHORN.

12          THE DEPUTY CLERK:  CASE NUMBER 98-99-CR-ORL-19A, THE

13  UNITED STATES OF AMERICA VERSUS SHOLAM WEISS.

14          WHO REPRESENTS THE GOVERNMENT, PLEASE?

15          MS. HUNT:  JUDY HUNT AND TOM TURNER FOR THE UNITED

16  STATES.

17          THE DEPUTY CLERK:  AND WHO REPRESENTS MR. WEISS?

18          MR. HIRSCHHORN:  JOEL HIRSCHHORN, YOUR HONOR.

19          THE COURT:  IS MR. WEISS PRESENT THIS MORNING?

20          MR. HIRSCHHORN:  NO, YOUR HONOR, HE'S NOT PRESENT.

21          THE COURT:  MR. HIRSCHHORN, YOU SAID YOU WERE NOT

22  GOING TO PRESENT ADDITIONAL EVIDENCE ON THIS ISSUE.

23          MR. HIRSCHHORN:  CORRECT.

24          THE COURT:  ALL RIGHT.  NOW, I CAN HANDLE THIS ONE

25  OF TWO WAYS.  WE CAN JUST GO TO THIS ISSUE OR I CAN CALL YOU

6

1  EACH UP HERE AND DO THE PRELIMINARY AND MAKE YOU GO BACK AND

2  SIT DOWN AND THEN GO THROUGH IT.  I WOULD PREFER, TO SAVE

3  TIME, JUST TO GET TO THE ISSUE.  DOES ANYONE OBJECT TO THAT?

4           MR. HIRSCHHORN:  NO, YOUR HONOR.

5           MR. DALE:  NO, YOUR HONOR.

6           THE COURT:  MS. HUNT?

7           MS. HUNT:  NO.

8           THE COURT:  LET ME STATE TO BEGIN WITH THAT THE

9  GOVERNMENT CHARGED THIS CASE AS A PROMOTION AS WELL AS A

10 CONCEALING CHARGE.  THE JURY VERDICTS AS TO THE MONEY

11 LAUNDERING COUNTS, AS TO WHICH THERE IS A CONVICTION FOR EACH

12 OF THE THREE DEFENDANTS I'M ADDRESSING -- BEFORE I GO ON,

13 MR. MERVIS AND MR. ALTER, I'M CORRECT THIS IS NOT AN ISSUE

14 WITH YOUR CLIENT, IS THAT --

15           MR. MERVIS:  CORRECT, JUDGE.

16           THE COURT:  FOUND BOTH PROMOTION AND CONCEALMENT.

17 THE CASES THAT I'VE LOOKED AT IN THE ELEVENTH CIRCUIT MAKE A

18 DISTINCTION IN THE PONZI-TYPE SCHEME FROM A SCHEME IN WHICH

19 THERE IS THE CRIMINAL ACT AND THEN THERE IS A LAUNDERING, SUCH

20 AS IN THAT MEDICAID CASE WHICH I THINK IS THE OCTOBER '99,

21 WHERE THE DOCTOR WAS GIVING THE FALSE INVOICES, GETTING THE

22 MONEY AND THEN THE MONEY WAS BEING SENT OUT TO ALL THESE

23 DIFFERENT PLACES, THE MERRILL LYNCH ACCOUNT AND SO FORTH,

24 WHICH WAS A, A SEPARATE MATTER.

25           THE SEVENTH CIRCUIT IN, AS YOU KNOW, I THINK ONE OF

7

1    THE FOOTNOTES IN THESE CASES LISTS THE DIFFERENT ATTITUDES OF

2    THE CIRCUITS, USES THE LANGUAGE THAT THE FRAUD COULD NOT BE

3    PERPETUATED BUT FOR THE MONEY LAUNDERING, BUT I SEE THAT AS A

4    DISTINCTION FROM THE ELEVENTH CIRCUIT HOLDINGS, PARTICULARLY

5    THE DICTA TOWARD THE END OF THAT OCTOBER '99 CASE, WHERE THE

6    COURT MAKES A DISTINCTION ABOUT THE INABILITY TO FIND THE

7    FUNDS NOT BEING AN INSURMOUNTABLE OBSTACLE TO THE DETECTION OF

8    THE CRIME, AND SO I FEEL THAT I AM BOUND BY THE ELEVENTH

9    CIRCUIT LAW.

10          THERE IS AN ANOMALY UNDER THE LAW, AND I POINT THIS

11   OUT, IT STRUCK ME THAT IF YOU MERELY CONCEAL, YOU DON'T GROUP.

12   BUT IF YOU PROMOTE THROUGH THE MONEY LAUNDERING, THE CRIME,

13   THE FRAUD, THEN THERE'S GROUPING.  THERE SEEMS TO BE A REWARD

14   HERE.  BUT ALSO THE CASES, I THINK, SHOW THE DIFFICULTY IN

15   THIS AREA OF THE LAW BECAUSE OF THE INTENT, I BELIEVE, FROM

16   THE LEGISLATIVE HISTORY TO INTEND TO PUNISH THE CRIME OF MONEY

17   LAUNDERING WITH REGARD TO SERIOUS CRIMES SUCH AS DRUG DEALING.

18   THAT'S NOT TO SAY THAT THE INSTANT CASE IS NOT A SERIOUS

19   CRIME.  THAT WOULD BE AN UNDERSTATEMENT TO TAKE THE OTHER SIDE

20   OF THAT.

21          BUT WHAT I NEED TO ASCERTAIN, I'M JUST TELLING YOU

22   AS I ALWAYS DO, HERE IS WHERE I AM; NOW, YOU EXPLAIN TO ME WHY

23   I'M WRONG OR WHERE YOU THINK I OUGHT TO GO, WHAT I'M

24   MISPERCEIVING.  IT SEEMS TO ME THAT THIS CASE IS A MIXTURE OF

25   CONCEALMENT AND PROMOTION.  IT WAS CHARGED THAT WAY.  THERE'S

8

1   A CONVICTION ON THAT, ON BOTH OF THOSE PRONGS.

2           ONE OF THOSE CASES, I THINK IT WAS THE EMERSON CASE,

3   THE MAIL CARRIER THAT WAS GETTING THE FRAUDULENT BIDS, I

4   BELIEVE I'M RIGHT, THIS IS A CASE, AND HE WAS CHARGED UNDER

5   THE PROMOTION AND PLED TO PROMOTION, ALTHOUGH THAT CASE WOULD

6   APPEAR TO BE A CONCEALMENT CASE, WHICH UNDER ELEVENTH CIRCUIT

7   LAW, THERE WOULD NOT BE GROUPING.  BUT THERE WAS GROUPING IN

8   THAT CASE BECAUSE OF HIS CONVICTION IN THE, UNDER THE

9   PROMOTION PRONG OF THE STATUTE.

10          THE CASE SEEMS TO BE ONE IN WHICH THERE IS THE $35

11  MILLION HOLE, THE WHOLE SEQUENCE OF EVENTS IS NOT ONLY TO

12  CONCEAL THE $35 MILLION HOLE AND LAUNDERING OCCURS TO CONCEAL

13  THE $35 MILLION HOLE AND THEN THE EVER-INCREASING AUGMENTED

14  HOLES, AS WELL AS TO WITHDRAW FUNDS AND TO CONCEAL THE

15  WITHDRAWAL OF THOSE FUNDS.  AND THERE REALLY, I DON'T FIND LAW

16  THAT DOES THE ANALYSIS IN A MANNER THAT IS ANALOGOUS TO THIS

17  CASE, EXCEPT THAT WHILE THIS ISN'T A PONZI SCHEME, IT SEEMS

18  THAT THE CONCEALMENT AND THE PROMOTION WERE DONE TO PERPETUATE

19  THE SCHEME.  NOT IN THE SENSE OF THE FIRST MONEY IN, AND THEN

20  THE SECOND MONEY IN GOING TO PAY THE FIRST INVESTORS AND SO ON

21  AND SO FORTH IN A PONZI SCHEME, BUT IT SEEMS TO BE MORE

22  ANALOGOUS, IN MY ANALYSIS, TO THE CASES WHICH DO HAVE GROUPING

23  THAN THOSE WHICH DO NOT.

24          NOW, IT IS THE GOVERNMENT'S BURDEN HERE, SO YOU NEED

25  TO EXPLAIN TO ME YOUR THEORY, WHICH I HAD DIFFICULTY

1  DISCERNING FROM THE PROBATION OFFICER'S ADDENDUM.  IT'S NOT A
2  CRITICISM OF THE PROBATION OFFICER.  THE ADDENDUM WOULD'VE
3  BEEN MILES LONG, I THINK, TO EXPLAIN THIS TO ME.
4          MS. HUNT:  WELL, YOUR HONOR, I BELIEVE THAT THE
5  REASON THAT THE PROBATION WAS SHORT ON EXPLAINING THE
6  GOVERNMENT'S POSITION IS BECAUSE AS PROBATION KNOWS, I HAVE
7  CONSISTENTLY TAKEN THE POSITION THAT IN THESE CASES, THERE
8  SHOULD BE GROUPING.  AND IN FACT, THAT'S WHAT WE ARGUED IN
9  MR. FORD'S CASE AND IN MR. PLATO'S CASE AND IN THE CASE OF
10 MR. SMYTHE, MR. BLUTRICH AND MR. PFEFFER.  JUDGE CONWAY DID
11 NOT GROUP.  SHE FOUND THE OPPOSITE OF THE WAY THAT THE COURT
12 IS LEANING IN THEIR RESPECTIVE CASES.
13         MY POSITION WAS WHAT THE ELEVENTH CIRCUIT HERE HAS
14 NOW SAID IS WRONG, BECAUSE I ALWAYS BELIEVED IN THESE KIND OF
15 CASES, THEY WERE SO INTERRELATED THAT THEY SHOULD BE TREATED
16 AS THE SAME CONDUCT.  BUT THE ELEVENTH CIRCUIT HERE IN
17 MCCLENTON SAYS RIGHT HERE, TO FIND THAT THIS CONNECTION ALONE
18 IS SUFFICIENT TO JUSTIFY A GROUPING, WOULD MEAN THAT EVERY ACT
19 OF MONEY LAUNDERING WOULD BE CLOSELY RELATED TO THE UNDERLYING
20 CRIME WHICH PRODUCED THE MONEY AND THAT'S WRONG.
21         SO THE ELEVENTH CIRCUIT HAS SAID THAT MY PRIOR
22 ANALYSES THAT I PRESENTED IN ALL PRIOR PROCEEDINGS TO THIS ONE
23 WAS WRONG, WHICH LEAVES ME IN THE UNTENABLE POSITION OF HAVING
24 TO KIND OF SWITCH POSITIONS IN THE MIDDLE OF THIS LARGE CASE,
25 AND SAY THAT ACCORDING TO THIS MOST RECENT CASE, I BELIEVE

1  THEY SHOULD NOT BE GROUPED.

2          THE COURT:  LET ME ASK YOU A QUESTION THERE.

3          MS. HUNT:  YES.

4          THE COURT:  SO ARE YOU IN THE POSITION WHERE YOU

5  FEEL YOU'RE HAVING TO ARGUE LAW AS YOU UNDERSTAND IT, BUT YOU

6  AREN'T OBJECTING TO THE DEFENDANTS' POSITION?

7          MS. HUNT:  I FEEL I HAVE TO OBJECT TO THE

8  DEFENDANTS' POSITION BECAUSE I BELIEVE THE LAW NOW STATES THAT

9  THEIR POSITION IS WRONG.

10          THE COURT:  NOW EXPLAIN TO ME WHY.

11          MS. HUNT:  ALL RIGHT.  SOME OF THE, ESSENTIALLY THE

12  POOL OF MONEY THAT WAS INVOLVED IN THIS CASE, WAS THE SOUTH

13  STAR MONEY.  WE HAVE A LITTLE BIT OF THE PAX MONEY IN

14  MR. POUND'S CASE, SO WE HAVE THESE TWO POOLS OF CASH.  AND I

15  GUESS THE ANALYSIS IS, WHAT WAS DONE WITH THOSE, THE CASH.

16  WELL, WE KNOW THAT ABOUT 65 MILLION OF THE CASH WAS USED TO

17  BUY THE MORTGAGES THAT ENDED UP GOING IN THE BOND.  WE KNOW

18  ANOTHER, I BELIEVE IT WAS 10 TO $12 MILLION OF THAT CASH WAS

19  USED TO ACQUIRE THE CAPITAL ASSETS WHICH WERE USED AS PART OF

20  THAT FRAUD.  THE REST WAS JUST STOLEN.

21          THE REST WAS TRANSFERRED TO VARIOUS BUSINESS

22  ENTERPRISES OF MR. WEISS, IT WAS USED TO BUY JEWELRY

23  COMPANIES, IT WAS SENT OVERSEAS, IT WAS FILTERED AROUND AND

24  HAS STILL NOT BEEN FOUND.  MR. WEISS IS OFF ENJOYING THOSE

25  PROCEEDS AS WE SPEAK.  SO WE HAVE THIS DICHOTOMY OF A GOOD

1  PORTION, AND I BELIEVE IN EXCESS OF $20 MILLION, SIMPLY BEING

2  CONCEALED FOR THE PURPOSES OF PERSONAL USE.

3          THEN TO ME, IN MY OPINION, YOU LOOK AT THE GROUPING

4  GUIDELINE WHICH SAYS THAT MONEY LAUNDERING, WHETHER IT BE

5  CONCEALMENT OR PROMOTION, IS GROUPED TOGETHER, AND THEN THE

6  COURT APPLIES THE MORE SERIOUS OFFENSE, WHICH IS, IN THIS

7  CASE, WOULD BE THE PROMOTION GUIDELINE, WHICH WOULD BE THE

8  HIGHER.

9          IF THE COURT SAYS, BECAUSE WE'RE APPLYING THE HIGHER

10  SENTENCING LEVEL -- WHICH WOULD BE THE LEVEL 23 BASED ON THE

11  PROMOTION -- WE DON'T GROUP, THAT ACTUALLY, AS THE COURT

12  POINTED OUT -- MAKES THE PROMOTION A LESS SERIOUS OFFENSE THAN

13  THE CONCEALMENT, WHICH THE GUIDELINES HAS AS A LOWER STARTING

14  POINT.  AND I THINK THAT THAT, IN TERMS OF POLICY, HITS HEAD

15  ON.  AND I DON'T BELIEVE THESE DEFENDANTS SHOULD BE ENTITLED

16  TO THAT ADVANTAGE BECAUSE I THINK THAT WOULD ESSENTIALLY

17  THWART WHAT THE SENTENCING GUIDELINES WERE TRYING TO DO IN

18  SAYING THAT THE PROMOTION OF ADDITIONAL CRIMES IS THE MORE

19  SERIOUS CRIME.  AND I THINK IT IS WRONG AND I GUESS I'M SAYING

20  BOTH THINGS.  THE ELEVENTH CIRCUIT HERE IS SAYING ONE THING,

21  BUT PERHAPS IN A WAY IT'S WRONG, I THINK IT WOULD BE WRONG FOR

22  THE ULTIMATE OUTCOME TO BE THAT THE SENTENCE IS REDUCED BY

23  COMMITTING MORE SERIOUS CRIMES.

24          AND SO I BELIEVE THAT IN LOOKING AT THAT, WHAT THE

25  COURT SHOULD, SHOULD DECIDE IS THAT BECAUSE THIS IS A MIXTURE,

1  AND BECAUSE A LOT OF THE MONEY LAUNDERING WAS NOT SPECIFICALLY

2  TIED TO THE ONGOING CRIMINAL ACTIVITY BUT WAS SIMPLY FOR THE

3  PURPOSE OF STEALING, THAT THEY SHOULD NOT BE GROUPED AND THAT

4  ALL OF THE MONEY MUST BE TREATED AS ONE, ONE POOL.  BECAUSE I

5  THINK IF WE TRY TO DIVIDE THE CASH UP IN TWO WAYS, THEN WE'RE

6  WALKING DOWN A PATH THAT I HAVE NO IDEA HOW WE WOULD END UP.

7          IN OTHER WORDS, IF WE TRIED TO TREAT $80 MILLION AS

8  GROUPED AND ANOTHER 40 AS NOT GROUPED, I THINK THAT IS

9  CONTRADICTED BY THE PORTION THAT'S MANDATORY THAT SAYS THE

10  MONEY LAUNDERING, ITSELF, BECAUSE IT'S BASED ON THE POOL OF

11  MONEY, SHOULD BE GROUPED TOGETHER.

12          THE COURT:  NOW, YOUR ARGUMENT IS AS TO THE

13  GUIDELINE TO BE APPLIED TO WHETHER IT'S CONCEALMENT OR

14  PROMOTION.  AND MANY OF THE ARGUMENTS OF THE DEFENDANTS GO TO

15  THE ISSUE OF WHETHER THE MONEY LAUNDERING AND THE FRAUD WOULD

16  BE GROUPED.

17          AM I CORRECT, MR. HIRSCHHORN?

18          MR. HIRSCHHORN:  YES.

19          THE COURT:  I THOUGHT THAT WAS YOUR ARGUMENT AND

20  MR. KUKEC, I THOUGHT THAT WAS YOUR ARGUMENT.

21          MR. KUKEC:  CORRECT, YOUR HONOR.

22          THE COURT:  AND MR. DALE WILL ADOPT.

23          MS. HUNT:  THAT'S WHAT I WAS ADDRESSING.  PERHAPS

24  I'M HAVING TROUBLE ARTICULATING, BECAUSE IT'S VERY

25  COMPLICATED.

1    THE COURT:  WHEN YOU WERE TALKING ABOUT THE TWO
2  TYPES OF MONEY LAUNDERING, I THOUGHT YOU WERE ARGUING WHICH OF
3  THE GUIDELINES WOULD APPLY TO THE MONEY LAUNDERING, BUT THE
4  DEFENDANT, THE DEFENDANTS' ARGUMENT IS AS TO NOW, ONCE YOU
5  DECIDE THAT, DO YOU COLLAPSE IT WITH THE FRAUD OR DO YOU KEEP
6  IT SEPARATE?
7    MS. HUNT:  WHAT I WAS TRYING TO SAY IS THAT IF YOU
8  FOLLOWED THE ELEVENTH CIRCUIT COURT'S REASONING TO THE END,
9  YOU WOULD HAVE TO DIVIDE THE MONEY LAUNDERING PROCEEDS INTO
10  TWO POOLS, WHICH IS IMPROPER, BECAUSE THEY HAVE TO BE TREATED
11  AS ONE POOL.  AND I DON'T BELIEVE THE COURT CAN IGNORE THE
12  FACT THAT A SUBSTANTIAL AMOUNT, HORRENDOUS AMOUNT OF THIS
13  CONDUCT WAS DESIGNED TO MONEY LAUNDER FOR THE PURPOSE OF
14  CONCEALING THE WHEREABOUTS FOR THE DEFENDANTS' PERSONAL GAIN.
15    AND WITH THE -- BECAUSE OF THAT BEING A, A
16  TREMENDOUS PART OF THE GOVERNMENT'S EVIDENCE, I DON'T BELIEVE
17  THAT WE CAN SAY BECAUSE ANOTHER PORTION, ALBEIT THE LARGER
18  PORTION WAS USED TO PROMOTE ADDITIONAL CRIMES WHICH LED TO THE
19  STEALING OF MORE MONEY, THAT WE CAN IGNORE THE FACT THAT THERE
20  WAS THIS LARGE SECTION OF MONEY THAT WAS USED, AS THE COURT
21  SAYS, WHICH SHOULD NOT BE GROUPED, AND THAT IS FOR THE PURPOSE
22  OF CONCEALMENT AND HIDING DETECTION AND HIDING GAIN AND FOR
23  THE PURPOSE, THAT TYPE OF MONEY LAUNDERING.
24    THE COURT:  WAS THERE DISCUSSION -- I NOTED WITH
25  SOME CONCERN THAT THERE WERE FEW MEETINGS WITH THE PROBATION

14

1   OFFICER WITH DEFENSE COUNSEL IN THESE SENTENCINGS --

2           MS. HUNT:  RIGHT.

3           THE COURT:  -- IN THE PROBATION OFFICER'S

4   PREPARATION OF THE PRE-SENTENCE REPORT.  BUT WAS THERE

5   DISCUSSION WITH THE PROBATION OFFICER ABOUT SUCH DIVISION?

6   WAS THERE AN ATTEMPT TO DO THAT?

7           MS. HUNT:  NO, YOUR HONOR, BECAUSE I DON'T BELIEVE

8   THAT'S APPROPRIATE.

9           THE COURT:  ALL RIGHT.  AND THE PROBATION OFFICER'S

10  POSITION ON THAT?  ERIC, ARE YOU --

11          THE PROBATION OFFICER:  YOUR HONOR, THIS IS THE

12  FIRST TIME I'VE LOOKED AT IT THIS WAY.  I THINK I'M FOLLOWING

13  WHAT MS. HUNT IS TRYING TO SAY IS THAT CONVICTIONS UNDER 18,

14  1956(A)(1)(A) CARRY A BASE OFFENSE LEVEL 23 AND THE

15  CONCEALMENT WOULD BE A DIFFERENT SECTION OF 1956 AND WOULD

16  HAVE A BASE OFFENSE LEVEL OF 20.  AND IF THE GROUPING IS BASED

17  ON THE FACT THAT IT'S THE CONCEALMENT, WE WOULD HAVE TO REDUCE

18  THE GUIDELINE TO A LEVEL 20 TO BEGIN WITH RATHER THAN A 23.

19  AND THEN WE WOULD ONLY USE $20 MILLION, AND THEN WE WOULD HAVE

20  TWO GROUPS AND THERE MAY BE EIGHT LEVELS DIFFERENCE.  IT WOULD

21  BE VERY COMPLICATED TRYING TO FIGURE THIS OUT.

22          MS. HUNT:  IT WOULD IGNORE THE JURY'S FINDING THAT

23  ALL OF THIS MONEY WAS USED FOR BOTH PURPOSES, WHICH DEMANDS

24  THE APPLICATION OF 23.

25          THE COURT:  JUST A MINUTE.  DON'T THE GUIDELINES,

1  THOUGH, REQUIRE THE MONEY LAUNDERING TO BE GROUPED, PERIOD?

2  YOU HAVE ONE CRIME, AND YOU HAVE TWO PRONGS OF THAT CRIME THAT

3  THE JURY FOUND.

4          THE PROBATION OFFICER:  THAT'S CORRECT.

5          THE COURT:  SO IT WOULD SEEM THAT THAT HAS TO BE

6  GROUPED, JUST FOR STARTERS.

7          THE PROBATION OFFICER:  FOLLOWING RULE (D) UNDER THE

8  GROUPING RULES, YES, BECAUSE ALL THE OFFENSES OF A SIMILAR

9  TYPE BASED ON THE AGGREGATE ARM OR THE TOTAL VALUE OF THE

10  MONEY INVOLVED, WOULD BE GROUPED TOGETHER; THEREFORE, ALL

11  MONEY LAUNDERING 1957 COUNTS, 1956 COUNTS ARE ALL GROUPED

12  TOGETHER AND CHOOSE WHICHEVER ONE COMES OUT THE HIGHEST.  IN

13  THIS CASE, IT'S THE PROMOTION PRONG.

14          THE COURT:  SO THE INITIAL INQUIRY, REALLY, IS YOU

15  GROUP --

16          THE PROBATION OFFICER:  YOU DO GROUP ALL MONEY

17  LAUNDERING.

18          THE COURT:  AND SO IT DOESN'T APPEAR -- NOW, I DON'T

19  KNOW THAT THIS HAS BEEN RESEARCHED, BUT WE HAVEN'T FOUND

20  ANYTHING IN MY OFFICE ON PURSUING THAT TRAIL, AND THAT

21  PROBABLY IS BECAUSE THE FIRST INQUIRY IS, YOU GROUP IT.  YOU

22  DON'T SEGREGATE IT, THE MONEY LAUNDERING, INTO THESE TWO

23  THINGS.

24          THE PROBATION OFFICER:  THAT'S CORRECT.

25          THE COURT:  SO I'LL LET THE DEFENDANTS ARGUE ON

1  THIS, BUT IT APPEARS THAT IS THE FIRST STEP.

2          THEN YOU, MS. HUNT, ARE ARGUING THE OCTOBER '99 CASE

3  -- I'M TERRIBLE WITH NAMES.  THAT'S WHY I CAN'T -- WAS SAYING

4  THAT YOU DO NOT GROUP BECAUSE THE FRAUD ASPECT IN THAT CASE

5  WAS PREDOMINANT AND YOU FEEL THAT THE FRAUD ASPECT HERE IS

6  IMPORTANT AND IT WOULD BE REWARDING THE DEFENDANTS IF THE

7  GROUPING OCCURRED.

8          MS. HUNT:  THAT'S CORRECT, YOUR HONOR.

9          THE COURT:  AND IS THERE ANY OTHER ARGUMENT ON THAT

10 THAT YOU WANT TO MAKE?

11          MS. HUNT:  OTHER THAN THE FACT I THINK THE LAW IS

12 STILL IN A CONFUSED STATE AND THIS MAY BE THE CASE THAT ENDS

13 UP RESOLVING IT.

14          THE COURT:  ALL RIGHT.  MR. HIRSCHHORN?

15          MR. HIRSCHHORN:  YOUR HONOR, I CONCUR WITH THE

16 COURT'S ANALYSIS AND I DEFER TO MR. KUKEC ON THE MATTER.

17          THE COURT:  ALL RIGHT.  MR. KUKEC?  I ASSUME YOU

18 KNEW THAT WAS COMING.

19          MR. KUKEC:  NO, I DIDN'T.

20          THE COURT:  YOU'VE GOT TO SPEAK IN THE MIKE.  YOU'VE

21 BEEN AWAY FROM ME FOR SEVERAL MONTHS AND YOU'VE BECOME

22 UNTRAINED.  WHY DON'T YOU COME UP HERE TO THE PODIUM.  IT WILL

23 BE BETTER.

24          MR. KUKEC:  ACTUALLY, I DIDN'T KNOW THAT WAS COMING,

25 BUT MR. HIRSCHHORN HAS SURPRISED ME FOR ABOUT NINE MONTHS NOW.

1      THE COURT:  YOU'VE RAISED THIS ISSUE, SO YOU WERE
2  PREPARED I THINK.
3      MR. KUKEC:  YES, MA'AM.  AS I SEE IT, I GUESS
4  THERE'S THREE STEPS.  THE FIRST STEP WE KIND OF GOT CAUGHT IN,
5  I DON'T KNOW THAT WE EVEN NEED TO ADDRESS IS, WHICH IS THAT
6  THE MONEY LAUNDERING, BOTH TYPES OF MONEY LAUNDERING SHOULD BE
7  GROUPED TOGETHER, CLEARLY.  AND I THINK THAT'S WHAT THE
8  PROBATION OFFICER HAS DONE IN THE PSI.
9      THE SECOND LEVEL IS SHOULD THE FRAUD AND MONEY
10  LAUNDERING COUNTS BE GROUPED TOGETHER.  THE FINAL STEP WOULD
11  BE, IF THEY ARE GROUPED TOGETHER, WHICH GUIDELINE SHOULD
12  APPLY.  THE FRAUD GUIDELINE OR THE MONEY LAUNDERING GUIDELINE.
13      I BELIEVE THAT THE FRAUD AND MONEY LAUNDERING SHOULD
14  BE GROUPED TOGETHER BECAUSE IT'S CLEARLY INTERTWINED.  THIS
15  CASE IS ABOUT FRAUD.  IT'S MASSIVE FRAUD.  AND AT THIS POINT,
16  WE'RE CERTAINLY NOT DISPUTING THE JURY'S VERDICT.  WE'RE HERE
17  TO ACCEPT IT FOR PURPOSES OF THIS PROCEEDING.
18      THE COURT:  FOR PURPOSES OF THIS ARGUMENT.
19      MR. KUKEC:  CORRECT.  THAT'S RIGHT, JUDGE.  AND THE
20  MONEY LAUNDERING GUIDELINES, THEMSELVES, INCLUDE A THREE-POINT
21  ENHANCEMENT FOR THE PROMOTION PRONG.  IT IS THE PROMOTION
22  PRONG THAT, UNDER THE FIRST SECTION OF THE MONEY LAUNDERING
23  GUIDELINE, ITSELF, INCLUDE A THREE-LEVEL ENHANCEMENT BECAUSE
24  THAT TYPE OF CONDUCT IS ALREADY INCLUDED AND THE DEFENDANT IS
25  BEING PUNISHED FOR THAT.  SO TO GROUP THEM SEPARATELY, THEN,

18

1  WOULD ADD THE MULTIPLE-COUNT ADJUSTMENT, WHICH WOULD, IN

2  ESSENCE, BE DOUBLE COUNTING.

3           AT THIS POINT, JUDGE, DO YOU WANT TO CONSIDER

4  WHETHER THE TWO --

5           THE COURT:  YOU KNOW, I'M READING THESE CASES AND

6  I'M THINKING, THERE'S NO CASE THAT DEALS WITH THE -- I MEAN

7  THE PONZI SCHEME.  THERE'S CONCEALMENT, BUT CLEARLY, THE MONEY

8  IS GOING BACK IN, BACK IN, BACK IN TO PERPETUATE IT.  AND THE,

9  EVEN THE EMERSON CASE, HE PLED TO PROMOTIONS -- IS THE POSTAL

10  CASE -- BUT THAT, TO ME, CLEARLY WAS A CONCEALMENT CASE.  BUT

11  YET, IT SCORED BY GROUPING BECAUSE HE PLED TO PROMOTION.

12           THIS CASE HAS A DRIVING MACHINE OF THE FRAUD AND

13  CONCEALING THE FRAUD AND THEN THERE IS AN ENORMOUS SPIN OFF OF

14  MONEY THAT GOES THROUGH ALL THOSE ACCOUNTS THAT WERE SHOWN IN

15  THE, IN THE EVIDENCE TO PULL SOME OF THAT OUT.  NOT ALL OF IT,

16  I THINK, HAS BEEN IDENTIFIED AS TO WHERE IT WENT AND SO FORTH.

17           MR. KUKEC:  YOUR HONOR, THE --

18           THE COURT:  WHAT I'M LOOKING FOR IS WHERE IS THE

19  PHILOSOPHY OF THE LAW HERE.  I'VE GOT ON THE ONE HAND, THAT

20  THERE IS A BENEFIT THAT MAY BE UNINTENDED FROM THE WAY THE

21  CASES HAVE COME OUT.  BUT ON THE OTHER HAND, HOW CAN YOU

22  FOLLOWING THE GUIDELINES, BREAK THIS INTO THE SEGMENTED PARTS,

23  BECAUSE IT WOULD BE CONTRARY TO THE EXPRESSED STATEMENTS IN

24  THE GUIDELINES.

25           MR. KUKEC:  RIGHT.  I'M ARGUING THE POSITION THAT IT

1   SHOULDN'T BE BROKEN APART.

2           THE COURT:  I KNOW YOU ARE, BUT I'M ASKING YOU TO GO

3   A STEP FURTHER TO THE PHILOSOPHY OF WHY THAT IS, AS A MATTER

4   OF PUBLIC POLICY, WHY THAT WOULD BE THE RIGHT THING TO DO.

5           MR. KUKEC:  YOUR HONOR, MONEY LAUNDERING, THE MONEY

6   LAUNDERING STATUTE, FIRST OF ALL, WAS ENACTED AND THE

7   GUIDELINES WERE ENACTED TO FOLLOW THE STATUTE FOR THE

8   EXPRESSED PURPOSE OF REACHING A CERTAIN TYPE OF BEHAVIOR.

9   THAT IS PRIMARILY WHEN YOU HAVE ORGANIZED CRIME OR A MASSIVE

10  DRUG-TYPE ORGANIZATION AND THEY EARN MONEY THROUGH THEIR

11  ILLICIT ACTIVITIES, AND THEN THEY USE, TAKE THAT MONEY AND

12  LAUNDER IT; CLEAN IT UP.  THAT'S THE CONCEALMENT PRONG.  IT IS

13  GENERALLY -- THAT TYPE OF CONDUCT IS GENERALLY PROSECUTED

14  UNDER THE CONCEALMENT PRONG.

15          THAT TYPE OF CONDUCT IS QUINTESSENTIAL MONEY

16  LAUNDERING AND THAT IS NOT WHAT WE HAVE HERE, PARTICULARLY AS

17  TO MS. SCHNEIDERMAN.  I BELIEVE THAT THERE WAS SOME OF THAT

18  THAT OCCURRED.  WE HAVE THE TESTIMONY OF PATRICK SMYTHE ABOUT

19  A FELLOW NAMED JAY BARTZ WHO WAS HIS LAWYER OUT IN ARIZONA WHO

20  ACTUALLY ENGAGED IN QUINTESSENTIAL-TYPE MONEY LAUNDERING, BUT

21  MS. SCHNEIDERMAN WASN'T CHARGED WITH THAT AND THAT WASN'T THE

22  CONDUCT THAT WAS CHARGED IN THE INDICTMENT.

23          THE INDICTMENT IN THIS CASE, THE MONEY LAUNDERING

24  COUNTS THAT SHE'S CHARGED WITH, ARE MONEY THAT IS GOING TO BE

25  USED TO PURCHASE MORTGAGES TO SUPPORT THE BOND.  SHE IS

20

1   CHARGED REPEATEDLY WITH MAKING TRANSFERS TO FDIC, TO CARC OF
2   LARGE QUANTITIES OF MONEY.  THAT IS -- I REALIZE THE JURY
3   RETURNED A VERDICT ON BOTH PRONGS, BUT THE CONCEALMENT IS
4   INCIDENTAL THERE TO THE PROMOTION.  THAT IS REALLY POURING
5   MONEY BACK IN -- REALLY, THE MONEY LAUNDERING IS INCIDENTAL TO
6   THE FRAUD, ITSELF.
7          WHEN CONGRESS ENACTED THE STATUTE, THEY DID SO IN
8   LANGUAGE THAT'S MUCH BROADER.  THEY CAST A HUGE NET TO CATCH A
9   VERY NARROW SPECIES OF CONDUCT.  AND I REALIZE THAT IF YOU
10  FALL WITHIN THAT NET, YOU CAN BE CONVICTED OF MONEY
11  LAUNDERING.  BUT THAT SHOULDN'T MEAN THAT YOU ARE PUNISHED FOR
12  THE MONEY LAUNDERING, EXCLUSIVE OF WHAT THE UNDERLYING CONDUCT
13  TRULY IS, WHICH IS FRAUD.
14         I HAD RELIED UPON A SEVENTH CIRCUIT CASE THAT WAS
15  DECIDED IN 1999, U.S. VERSUS SMITH, WHICH ADDRESSES THIS
16  DIRECTLY AND ACTUALLY GOES THROUGH THE HISTORY.
17         THE COURT:  I'VE READ THE CASE.  IT HAS THE ANALYSIS
18  OF THE LEGISLATIVE HISTORY AND SO FORTH.
19         MR. KUKEC:  CORRECT.  AT ONE POINT, THE COMMISSION
20  HAD AMENDMENTS TO THE MONEY LAUNDERING GUIDELINES THAT WOULD
21  HAVE ADDRESSED THIS TYPE OF SITUATION BECAUSE WHAT THEY
22  WOULD'VE DONE IS TIED THE PUNISHMENT FOR MONEY LAUNDERING, THE
23  BASE OFFENSE LEVEL TO THE UNDERLYING CONDUCT THAT WAS BEING
24  USED TO GENERATE THE MONEY.  AND IT WENT TO CONGRESS AND
25  CONGRESS REJECTED IT BECAUSE IT FELT IT WAS TOO NARROW.  BUT

1 IN REJECTING IT, IT SPECIFICALLY SAID THAT THE COURTS HAVE THE

2 AUTHORITY UNDER THE GUIDELINES TO BOTH DEPART, IF THAT'S HOW

3 IT SHOULD BE ADDRESSED, OR IN THEIR INITIAL DETERMINATION

4 UNDER THE GUIDELINES OF WHICH IS THE APPLICABLE GUIDELINE.

5 I THINK THERE ARE THREE SOURCES FOR THAT.  FIRST OF

6 ALL, WE'VE GOT THE STATUTORY APPENDIX, WHICH IN AND OF ITSELF,

7 SAYS WHERE IT'S AN ATYPICAL CASE, YOU SHOULD GO TO NOT THE

8 STATUTE THAT'S LISTED AS COMPORTING WITH WHAT THE STATUTORY

9 CONVICTION IS FOR, BUT TO WHAT THE UNDERLYING CONDUCT REALLY

10 TYPIFIES.  THAT'S ALSO CLEAR IN THE INITIAL GUIDELINE, I THINK

11 IT'S 1(B)(1.2), WHICH PROVIDES THAT YOU SHOULD GO TO THE

12 ACTUAL CONDUCT AND PICK THE GUIDELINE THAT MOST CLEARLY

13 REPRESENTS THAT CONDUCT.

14 IT IS ALSO THE PHILOSOPHY OF THE GUIDELINES, ITSELF,

15 IN CHAPTER ONE, INTRODUCTORY COMMENT, I BELIEVE IT'S 4(A).  IT

16 SAYS THAT THE PHILOSOPHY OF THE GUIDELINES IS TO PUNISH FOR

17 WHAT?  THE UNDERLYING CONDUCT.  WE HAVE A CONDUCT BASE RATHER

18 THAN A CHARGED BASE.  IF WE'RE TO APPLY STRICTLY THE MONEY

19 LAUNDERING GUIDELINES IN A SITUATION LIKE THIS, IT REALLY

20 TAKES ALL THE AUTHORITY AWAY FROM THE COURT TO PUNISHMENT,

21 PUNISH FOR THE ACTUAL CONDUCT AND GIVES IT TO THE GOVERNMENT

22 BECAUSE THE GOVERNMENT CAN CHARGE MONEY LAUNDERING IN A WIDE

23 ARRAY OF SITUATIONS THAT I REALLY DON'T THINK CONGRESS

24 INTENDED IT TO BE CHARGED IN, AND THAT THE COMMISSION, IN

25 ENACTING THE GUIDELINES, DIDN'T MEAN TO HAVE THAT CONDUCT

22

1  PUNISHED UNDER THOSE CIRCUMSTANCES.  AND THE GOVERNMENT HAS
2  DONE THAT IN THIS CASE.

3          WE'RE NOT DISPUTING THAT FACIALLY, AT LEAST, THIS
4  CONDUCT FALLS, RUNS AFOUL OF THE MONEY LAUNDERING STATUTE AND
5  THE ESSENTIAL ELEMENTS, BUT WHEN WE'RE APPLYING THE
6  GUIDELINES, AND WE'RE GOING TO GO AFTER THE ACTUAL CONDUCT, I
7  THINK IT'S APPROPRIATE TO PUNISH FOR FRAUD.  BECAUSE THE FRAUD
8  GUIDELINES, THEMSELVES, TAKE INTO ACCOUNT HOW MASSIVE THE
9  FRAUDULENT ACTIVITY IS AND PROVIDE, I THINK, PLENTY OF ROOM
10 FOR DISCRETION AND PUNISHMENT FOR THE CONDUCT THAT TOOK PLACE
11 IN THIS CASE.

12         THE COURT:  THANK YOU, MR. KUKEC.

13         MR. DALE, DO YOU WANT TO ADD ANYTHING?

14         MR. DALE:  NO, YOUR HONOR.

15         THE COURT:  ALL RIGHT.  MS. HUNT, DO YOU WANT TO
16 RESPOND?

17         MS. HUNT:  YES, YOUR HONOR, IF I MAY.  I GUESS IT
18 HORRIFIES ME, TO A CERTAIN EXTENT, TO HEAR AN ARGUMENT THAT IN
19 THIS CASE, SOMEHOW THIS IS NOT A LARGE ORGANIZATION OF
20 ORGANIZED CRIMINALS ENGAGING IN MONEY LAUNDERING.  BECAUSE IF
21 THERE EVER WAS A LARGE CRIMINAL ORGANIZATION ENGAGING IN MONEY
22 LAUNDERING, THIS IS IT.

23         THE COURT:  YOU NEEDN'T WORRY ABOUT THAT.  THE ISSUE
24 IS NOT WHETHER THIS IS INTENDED TO BE OR NOT.  THE ISSUE IS
25 HOW DO YOU APPLY THIS.  IT'S NOT CLEAR UNDER THE CASE LAW.

1           MS. HUNT:  IF WE'RE STILL TALKING ABOUT THE
2    GROUPING, THAT'S ONE ISSUE.  OF COURSE, MR. KUKEC WAS ARGUING
3    HIS HEARTLAND MOTION, WHICH I, IF THE COURT -- I WANT TO
4    RESPOND TO THE HEARTLAND MOTION IF THAT'S NOW ON THE TABLE.
5    IF WE'RE STILL TALKING ABOUT THE GROUPING ONLY, I STILL THINK
6    THAT IT'S CONTROLLED BY THIS STATEMENT THAT THE ELEVENTH
7    CIRCUIT TOLD ME I WAS WRONG, WHERE IT SAID, THAT PUTTING, JUST
8    BECAUSE THE FRAUD MONEY IS WHAT'S BEING LAUNDERED, IS NOT
9    SUFFICIENT TO GROUP THEM, PERIOD.  AND THAT'S WHAT THE
10   ELEVENTH CIRCUIT SAYS IN THE MCCLENTON CASE ON PAGE 601.
11          SO THE ELEVENTH CIRCUIT REJECTS COMPLETELY
12   MR. KUKEC'S ARGUMENT WHEN THEY'RE SO INTERTWINED, THAT ALONE
13   CONTROLS.  THE CASES, INSTEAD, GO INTO THIS, WHAT I PERCEIVED
14   TO BE RATHER BIZARRE ANALYSIS RELATED TO, WAS IT USED TO
15   PROMOTE OR WAS IT USED TO CONCEAL.  AND YOUR HONOR IS THE ONE,
16   I BELIEVE, WHO HAS THE HONOR OF MAKING SOME SENSE OUT OF THESE
17   ANALYSES, WHICH REALLY DON'T MEET WHAT THE ULTIMATE PURPOSE OF
18   THE GUIDELINES IS.  WHICH IS HERE, THAT THEY ARE TWO SEPARATE
19   CRIMES.
20          THE MONEY LAUNDERING IS CONSIDERED A CRIME AGAINST
21   SOCIETY.  IT IS THE CONCEALMENT OF ILLEGAL PROCEEDS.  IT IS A
22   THREAT TO OUR FINANCIAL INSTITUTIONS AND OUR ECONOMIC BASE
23   WHERE THIS CRIMINAL MONEY IS, IS USED IN THIS LAUNDERED
24   FASHION.  WHICH IS CONDUCT THESE DEFENDANTS ALL ENGAGED IN IN
25   SHOCKINGLY LARGE NUMBERS.  SO THE ISSUE IS, DO THEY, IN THEIR

1   CONDUCT HERE, SOMEHOW END UP BEING GROUPED BECAUSE SOME OF
2   THEIR MONEY WAS USED TO FACILITATE OTHER CRIMES?
3         AND I POINT OUT, IS THIS ANY DIFFERENT THAN THE DRUG
4   ORGANIZATION WHICH THEN TAKES THE PROCEEDS AND FUNNELS IT INTO
5   PROSTITUTION, AND THEN TAKES THE PROCEEDS OF PROSTITUTION AND
6   FUNNELS IT INTO BOOKMAKING?  IS THE FACT THAT ALL OF THESE
7   HAPPENED TO BE FRAUDS AS OPPOSED TO DIFFERENT STATUTES,
8   SOMEHOW MAKE THAT DIFFERENT?
9         IF THIS WAS A CASE WHERE THESE DEFENDANTS TOOK DRUG
10  MONEY AND FUNNELED IT INTO PROSTITUTION, TOOK THAT MONEY AND
11  FUNNELED IT INTO BOOKMAKING, WE WOULDN'T BE EVEN HAVING THIS
12  DISCUSSION.  AND THAT IS REALLY MORE LIKE WHAT THESE
13  DEFENDANTS DID, BECAUSE NONE OF THIS MONEY WAS EVER INTENDED
14  TO GO BACK TO THE VICTIM.  AT THE END, EVEN THE MORTGAGES WERE
15  GOING TO BE STOLEN.  NOTHING, EXCEPT A SMALL TRICKLE OF
16  INTEREST OUT OF RAM TO KEEP DELAWARE PACIFIED, WAS EVER
17  INTENDED TO BE RETURNED.  IT WAS ALL INTENDED TO BE STOLEN AND
18  IT WAS JUST ONE THING AFTER ANOTHER.
19        IT WAS NOT A PONZI SCHEME.  THEY WERE DIFFERENT
20  CRIMES, WITH DIFFERENT PARTICIPANTS, WITH DIFFERENT MOTIVES,
21  WITH DIFFERENT GOALS.  AND I THINK IT'S MORE LIKE THE, THE
22  DRUG TO PROSTITUTION TO BOOKKEEPING CASE THAN LIKE THE PONZI
23  SCHEME WHERE THE SAME MONEY IS PUT BACK IN, THE TELEMARKETING
24  CASE OR PUT BACK INTO THE SAME FRAUD, GOING ON AND ON.  THESE
25  WERE DIFFERENT FRAUDS, AND THE FACT THAT THEY'RE ALL CHARGED

1  AS FRAUDS, I DON'T THINK MAKES ANY DIFFERENCE.

2          I'M ASSUMING THAT THE COURT'S GOING TO GIVE ME A

3  LATER OPPORTUNITY TO ADDRESS THE HEARTLAND ARGUMENT.

4          THE COURT:  YES, I AM.  AND YOU KNOW, THERE'S A

5  LITTLE BIT OF DANGER IN MAKING A BLANKET RULING, BUT I THINK

6  IT WILL HELP AND I, YOU KNOW, I WANT TO HAVE, TO THE EXTENT

7  THAT THE FACTS SUPPORT IT, THE SAME RULING ON THESE ISSUES FOR

8  EACH OF THE DEFENDANTS.  TO THE EXTENT A DEFENDANT THEN RAISES

9  ADDITIONAL ISSUES, WE'LL HEAR THAT IN THE SENTENCING OF THAT

10  PARTICULAR DEFENDANT --

11          MS. HUNT:  OKAY.

12          THE COURT:  -- AS I STARTED THIS PROCEEDING SAYING

13  THERE'S PRECIOUS LITTLE GUIDANCE ON THIS ISSUE AND I DON'T

14  KNOW THE ANSWER TO THIS QUESTION.

15          I'M GOING TO RULE AS A GENERAL MATTER, AND THEN HEAR

16  THE SPECIFIC ARGUMENTS, THAT THIS CASE, THE USE OF THIS MONEY

17  TO CONCEAL THE FRAUD, APPEARS TO PREDOMINATE.  ALTHOUGH THE

18  FRAUD WAS SO MASSIVE, THE AMOUNTS OF MONEY THAT WERE LAUNDERED

19  IN -- EXCUSE ME.  I'VE SAID THIS INCORRECTLY.

20          IT WAS TO PROMOTE THE FRAUD.  THE MAIN

21  CHARACTERISTIC IS TO PROMOTE THE FRAUD, ALTHOUGH THERE WERE

22  MASSIVE AMOUNTS OF MONEY THAT WERE USED TO TAKE OUT AND

23  CONCEAL THE FRAUD.  THE SEVENTH CIRCUIT WOULD THROW THAT INTO

24  ONE POT.  THE ELEVENTH CIRCUIT, IT APPEARS TO ME FROM THE

25  ANALYSIS AND THE CASES, INCLUDING THE MOST RECENT ONE IN

1  OCTOBER, MAKE A DISTINCTION.  I COULD BE WRONG ON THIS AND IF

2  I AM, WE'LL COME BACK AND DO IT AGAIN.  BUT THAT IS THE WAY I

3  SEE IT.  SO I'M GOING TO RULE THAT WAY ON THAT PARTICULAR

4  ISSUE, RESERVING THE RIGHT TO ADDRESS ANY PARTICULAR FACTUAL

5  MATTER AS TO ANY PARTICULAR DEFENDANT.

6         MS. HUNT:  YOUR HONOR, MAY I JUST ASK FOR

7  CLARIFICATION THEN?  THE RULING IS THAT THEY ARE TO BE

8  GROUPED?

9         THE COURT:  IT WOULD BE GROUPED.

10         MS. HUNT:  THEY WILL BE GROUPED.

11         THE COURT:  THE OBJECTIONS OF WEISS AND SCHNEIDERMAN

12  WOULD BE SUSTAINED.  POUND IS JOINING IN AT THIS TIME.  BUT I

13  WANT TO DEAL WITH THOSE OBJECTIONS, AGAIN, INDIVIDUALLY IN

14  TERMS OF WHAT OCCURRED.

15         MR. KUKEC, I DON'T AGREE THAT YOUR CLIENT DID NOT

16  ALSO LAUNDER TO CONCEAL AS WELL AS LAUNDER TO PROMOTE, BUT IF

17  THE GUIDELINES REQUIRE MONEY LAUNDERING TO BE GROUPED, THEN

18  THAT DISTINCTION MAY MAKE NO DIFFERENCE IN TERMS OF THE WAY

19  THE GUIDELINES ARE WRITTEN.

20         THERE'S AN ISSUE ON AMOUNT OF LOSS THAT MR. STARR,

21  MR. POUND AND MS. SCHNEIDERMAN HAVE RAISED.  IS THAT SOMETHING

22  THAT CAN BE HEARD AT ONE TIME OR DOES IT HAVE TO BE HEARD

23  SEPARATELY, FROM THE GOVERNMENT'S POINT OF VIEW?

24         MS. HUNT:  I BELIEVE THAT THE LOSS IS ESSENTIALLY

25  THE SAME FOR EACH TRANSACTION.  NOT NECESSARILY FOR EACH

27

1  DEFENDANT, BUT EACH TRANSACTION HAS AN IDENTIFIABLE LOSS WHICH
2  WOULD BE THE SAME, DEFENDANT TO DEFENDANT.
3          THE COURT:  IS THE GOVERNMENT GOING TO PRESENT
4  ADDITIONAL EVIDENCE OR IS THAT --
5          MS. HUNT:  I'M PREPARED TO, IF THE COURT WANTS, OR I
6  CAN PROFFER FROM THE RECORD HOW WE DERIVED THE LOSS.  I'M
7  PREPARED TO PROCEED EITHER WAY.
8          THE COURT:  ALL RIGHT.  MR. MERVIS, IS THIS A MATTER
9  THAT YOU INTEND TO PRESENT EVIDENCE?
10         MR. MERVIS:  NOT ADDITIONAL EVIDENCE, JUDGE.  I
11 MIGHT ADD, AS I DON'T HAVE, I HAVEN'T READ THE OTHER
12 PRE-SENTENCE REPORTS, BUT MY UNDERSTANDING IS AS TO STARR,
13 THIS AMOUNT OF LOSS IS DIFFERENT.
14         THE COURT:  MM-HMM.  IT IS DIFFERENT; NEEDS TO BE
15 ARGUED DIFFERENTLY.
16         MR. MERVIS: WE DO NOT INTEND TO PRESENT ADDITIONAL
17 EVIDENCE ON THE AMOUNTS OF LOSS, HOWEVER.
18         THE COURT:  AND THEN MR. DALE AND MR. KUKEC, IS YOUR
19 ARGUMENT GOING TO ENTAIL EVIDENCE PRESENTATION?
20         MR. KUKEC:  NO, YOUR HONOR.
21         MR. DALE:  PROBABLY NOT, YOUR HONOR.
22         THE COURT:  OKAY.  THEN I WILL HEAR THIS
23 INDIVIDUALLY INSTEAD OF DOING IT AT ONE TIME.
24         NOW, PERHAPS THE SAME MATTER OR THE SAME MANNER OF
25 HEARING THIS IN TERMS OF INDIVIDUAL CONSIDERATION WOULD GO TO

1  THE JEOPARDIZING THE FINANCIAL INSTITUTION.

2          MR. STARR, MR. POUND AND MS. SCHNEIDERMAN RAISED

3  THAT, ALTHOUGH I THINK THAT THERE IS AN ISSUE JUST AS A MATTER

4  OF LAW AS TO WHETHER OR NOT THE INSTITUTION, AS THE DEFENDANTS

5  HAVE CONTENDED, WAS INSOLVENT OR NOT AT THE TIME AND THAT IS

6  SOMETHING THAT WOULD APPLY TO ALL.

7          DID THE GOVERNMENT INTEND TO PRESENT EVIDENCE ON

8  THAT ISSUE?

9          MS. HUNT:  NOT EVIDENCE.  ONLY ARGUMENT, YOUR HONOR.

10  I WOULD POINT OUT THAT WE DO NOT BELIEVE INSOLVENCY IS THE

11  DICTATING POINT UNDER THE GUIDELINES.

12          THE COURT:  IS THE GOVERNMENT CONTENDING A MILLION

13  DOLLARS WAS TAKEN OUT BY ANY INDIVIDUAL, STARR, POUND OR JRS?

14  IS THAT PRONG BEING ARGUED BY THE GOVERNMENT?

15          MS. HUNT:  YES, WITH A QUALIFICATION.  MR. TURNER

16  AND I HAVE ATTEMPTED TO RESEARCH THE VARIOUS CASES INVOLVING

17  THAT MILLION DOLLARS DERIVED.  AND WE THINK THE CASE LAW IS

18  UNCLEAR AS TO WHETHER OR NOT THE MILLION DOLLARS HAS TO BE FOR

19  THE PERSONAL BENEFIT OF THE DEFENDANTS.  AND THAT'S AN ISSUE I

20  THINK THE COURT'S GOING TO HAVE TO LOOK AT.

21          IF THE COURT FINDS IT'S FOR THE PERSONAL BENEFIT OF

22  THE DEFENDANTS, THEN IN THE CASE OF MS. SCHNEIDERMAN AND

23  MR. STARR, THE GOVERNMENT WOULD SAY THAT THAT PRONG IS NOT

24  CORRECT.  IF, HOWEVER, BOTH OF THOSE DEFENDANTS, HOWEVER, DID

25  RECEIVE GROSS PROCEEDS, WHICH IS THE LANGUAGE USED IN THE

1   GUIDELINES, IN EXCESS OF A MILLION DOLLARS, AND IF -- AND

2   THERE'S CASE LAW THAT SAYS IT DOESN'T MATTER WHAT THEY DO WITH

3   THE MONEY AFTER THEY RECEIVE IT -- IF THE VERY FACT THEY

4   RECEIVED IT IS WHAT THE GUIDELINE INTENDS, THEN WE BELIEVE

5   THAT IT DOES APPLY.  AND WE HAVE NOT BEEN ABLE TO FIND A CLEAR

6   ANSWER IN THE CASES AS TO HOW THAT'S TO BE INTERPRETED.

7           THE COURT:  WHAT IS THAT CASE?  I ASKED MY OFFICE TO

8   RESEARCH THIS ISSUE.  IT WASN'T REALLY ADDRESSED IN ANY --

9   WELL, IT WAS.  I THINK MR. STARR'S MEMORANDUM DID ADDRESS

10  THIS.  BUT UNITED STATES VERSUS STOLEE, THE EIGHTH CIRCUIT

11  CASE AT 172 F.3D. 630, WAS THE ONLY CASE THAT WE WERE ABLE TO

12  FIND ON THE MATTER WHICH ALLOWED CREDIT TOWARD THE ONE MILLION

13  IF THE MONEY WENT TO A WHOLLY-OWNED CORPORATION, EVEN THOUGH

14  IT DIDN'T GO TO THE DEFENDANT PERSONALLY, BUT I DON'T KNOW

15  THAT THAT IS GOING TO BE DISPOSITIVE OF THE ISSUE HERE.

16          WHAT IS THE GOVERNMENT'S POSITION ON THE INSOLVENCY

17  OF THE FINANCIAL INSTITUTION AS PRECLUDING THIS, THE FIRST

18  PRONG OF THAT?

19          MS. HUNT:  YOUR HONOR, THE APPLICATION STATES IN

20  APPLICATION NOTE 17 IN THE 1998 VERSION, THAT'S ON PAGE 150,

21  IT INDICATES AN OFFENSE SHALL BE DEEMED TO HAVE SUBSTANTIALLY

22  JEOPARDIZED THE SAFETY AND SOUNDNESS OF A FINANCIAL

23  INSTITUTION IF, AS A CONSEQUENCE OF THE OFFENSE, THE

24  INSTITUTION BECAME INSOLVENT, SUBSTANTIALLY REDUCED BENEFITS

25  TO PENSIONERS OR INSUREDS, WAS UNABLE TO DEMAND, TO REFUND

1  FULLY ANY DEPOSIT, PAYMENT OR INVESTMENT, ET CETERA.  AND I
2  THINK THE DEFENDANTS HAVE FOCUSED ONLY ON THE FIRST PRONG OF
3  THAT.

4       IT DOESN'T MATTER IF THE CORPORATION WAS ALREADY
5  INSOLVENT.  WHAT MATTERS IS DID THEIR CONDUCT SUBSTANTIALLY
6  REDUCE BENEFITS TO PENSIONERS OR INSUREDS.  CERTAINLY A
7  HUNDRED MILLION DOLLARS BEING TAKEN OUT OF NATIONAL HERITAGE
8  TO SOUTH STAR AND NEVER RETURNED UNTIL THE COMMISSIONER,
9  ULTIMATELY THROUGH COURT ACTION IN CHICAGO, GOT THE MORTGAGES
10 BACK, HAS NEVER RECOVERED ANY OF THE REST OF THE CASH, TO THE
11 TUNE OF $100 MILLION, SUBSTANTIALLY REDUCED THE BENEFITS
12 AVAILABLE TO THOSE PENSIONERS OR INSUREDS.  SO I THINK THAT
13 THE FOCUS ON THE INSOLVENCY IS A RED HERRING AND IGNORES THE
14 TRUE INTENT OF JEOPARDIZING THE SOUNDNESS OF THE FINANCIAL
15 INSTITUTION.

16      THERE'S NO QUESTION THAT $100 MILLION OR IN
17 MR. STARR'S CASE, THE $65 MILLION OF MORTGAGES SUBSTANTIALLY
18 REDUCED NATIONAL HERITAGE'S ABILITY TO MEET ITS OBLIGATIONS TO
19 ITS INSUREDS.

20      THE COURT:  WHAT, IN THE RECORD, DO YOU CONTEND
21 SHOWS THE SUBSTANTIAL REDUCTION OF BENEFITS IN THE --

22      MS. HUNT:  UNAVAILABILITY OF THAT $100 MILLION TO
23 NATIONAL HERITAGE.

24      THE COURT:  WHOSE TESTIMONY?  WHOSE TESTIMONY ARE
25 YOU RELYING ON IN THE RECORD?

1          MS. HUNT:  IT WOULD BE CUMULATIVE.  THE FACT THAT
2   THAT MONEY NEVER CAME BACK TO NATIONAL HERITAGE.
3          THE COURT:  I'M NOT MAKING MYSELF CLEAR.
4          MS. HUNT:  YEAH.  WE HAD THE ANNUITANTS, THE THREE
5   VICTIMS TESTIFY THEY WERE UNABLE TO RECOVER THEIR MONEY.  WE
6   HAD THE REPRESENTATIVES OF NATIONAL HERITAGE TESTIFY ABOUT THE
7   $400 MILLION LOSS.  AND GALE KASMIR ALSO TESTIFIED ABOUT THE
8   INABILITY TO MAKE THE OBLIGATIONS.
9          THE COURT:  MISS MULHOLLAND.
10          MS. HUNT:  I DON'T RECALL IF WE SPECIFICALLY
11   ADDRESSED THAT WITH MISS MULHOLLAND, BUT I KNOW WE DID --
12   MR. WAYNE KAUTH, WHO WAS THE EXPERT WHO WENT THROUGH THE
13   VARIOUS FINANCIALS, TESTIFIED ABOUT THE REDUCTION IN THE
14   ASSETS.
15          THE COURT:  TELL ME THE NAME AGAIN.
16          MS. HUNT:  KAUTH, K-A-U-T-H.  HE WAS THE EXPERT
17   ACCOUNTANT THAT ANALYZED THE EXTENT OF THE DEPRIVATION OF THE
18   ASSETS.  AND I THINK THAT THERE'S SIMPLY A CLEAR INFERENCE
19   FROM THE FACT THAT HAVING $100 MILLION LESS MAKES THE
20   INSURANCE COMPANY UNABLE TO MEET ITS OBLIGATIONS.
21          THERE'S ANOTHER TENET HERE WHICH ALSO SAYS UNABLE TO
22   REFUND FULLY ANY DEPOSIT, PAYMENT OR INVESTMENT.  AND SO THAT
23   WOULD BE ALSO THE INABILITY TO REFUND PREMIUMS TO THE
24   INSUREDS.
25          BUT I DON'T THINK THE INSOLVENCY CONTROLS.  THE

1  ISSUE IS DOES THE $100 MILLION THEFT, DID THE $100 MILLION

2  THEFT SUBSTANTIALLY JEOPARDIZE THE SAFETY AND SOUNDNESS OF

3  NATIONAL HERITAGE.  AND I THINK THE QUESTION, ITSELF, ANSWERS

4  ITSELF.  $100 MILLION IN A COMPANY THAT ONLY HAD GROSS ASSETS

5  OF $450 MILLION, THAT'S 25 PERCENT OF ITS ASSETS.

6         THE COURT:  ALL RIGHT.  THANK YOU.  WHO FOR

7  MR. STARR, MR. POUND OR MS. SCHNEIDERMAN, WISHES TO ARGUE?

8  MR. MERVIS?

9         MR. MERVIS:  JUDGE, I'M ASSUMING FROM THE ARGUMENT,

10  THAT WHAT WE'RE REALLY TALKING ABOUT NOW IS THE PRONG (A), AT

11  THIS POINT IN THIS ARGUMENT.  WE HAVE ADDRESSED, AS TO PRONG

12  (B), SOME OF THE CASES WHICH DEAL WITH THE PERSONALLY DERIVED

13  ONE MILLION DOLLARS, AND I DON'T KNOW IF THE COURT --

14         THE COURT:  WELL, I DON'T KNOW IF I HAVE TO GET TO

15  THAT IS WHY I'M APPROACHING IT THIS WAY.

16         MR. MERVIS:  LET ME GO TO PRONG (A) THEN.

17         FIRST, WE THINK MR. STARR IS IN A DIFFERENT POSTURE

18  THAN OTHER DEFENDANTS IN THE CASE BECAUSE AS THE COURT KNOWS,

19  WE CONTEST HIS, HOLDING MR. STARR RESPONSIBLE FOR THE $65

20  MILLION TO BEGIN WITH.  $65 MILLION IN HIS CASE REPRESENTING

21  THE PURCHASE PRICE OF THE UNDERLYING MORTGAGES, SO THAT BY THE

22  TIME MR. STARR ENTERED INTO THIS CONSPIRACY IN A CRIMINAL WAY,

23  WHICH IS IN 1994, WE BELIEVE THAT THE INSURANCE COMPANY WAS,

24  ONE, ALREADY INSOLVENT AND WE THINK THE GOVERNMENT, AS A

25  FACTUAL MATTER, CONCEDED THAT POINT IN THE LANGER PLEA

1 AGREEMENT.  AND WE HAVE TO DIRECT THE COURT TO IT BECAUSE I

2 CAN'T PUT MY HANDS ON IT ANY LONGER.

3           IN OTHER WORDS, IT WAS STATED AS A MATTER OF FACT,

4 THAT BY DECEMBER OF 1993, WHEN THE NHE CLOSING OCCURRED, THAT

5 NATIONAL HERITAGE WAS, IN FACT, INSOLVENT.  MR. STARR DOESN'T

6 BEGIN CRIMINAL CONDUCT UNTIL SOME TIME IN 1994.  AND THE DATE

7 IS IN DISPUTE, EVEN THOUGH WE PUT JUNE OF '94.  BY THAT TIME,

8 MR. STARR'S OFFENSE CONDUCT DID NOT SUBSTANTIALLY JEOPARDIZE A

9 FINANCIAL INSTITUTION.  NOW, IT COULD HAVE AFFECTED A

10 FINANCIAL INSTITUTION, PRONG (B), BUT THEN WE SUBMIT, HE DID

11 NOT DERIVE THE ONE MILLION NECESSARY TO TRIGGER THAT PRONG.

12           BUT THE POINT AS TO MR. STARR IS THAT BY LATE '94,

13 WE SAY JUNE '94, THE MEETING, THE TESTIMONY AS TO THE HARVEST

14 MEETING, THERE'S A DISPUTE ABOUT THAT BECAUSE OF WHAT DATE

15 MR. STARR BECOMES AWARE OF UNDERLYING CRIMINAL CONDUCT.  HE

16 CERTAINLY WAS NEVER CHARGED AND HAS NEVER BEEN HELD

17 ACCOUNTABLE IN AUGUST OF '93, WHEN SOUTH STAR BEGAN PURCHASING

18 THE MORTGAGES.  IT'S THE PURCHASE OF THE MORTGAGES WHICH LEADS

19 TO THE FINANCIAL INSOLVENCY; THE SUBSTANTIAL JEOPARDIZATION OF

20 THE FINANCIAL INTUITION.  AND THAT CONDUCT, MR. STARR WAS

21 NEITHER CHARGED WITH, NOR CONVICTED OF.

22           HIS ENTRY LATER INTO THE CONSPIRACY COMES AT A TIME

23 WHEN THE FINANCIAL INSTITUTION HAS ALREADY BEEN SUBSTANTIALLY,

24 SUBSTANTIALLY HARMED; AND THEREFORE, THE (A) PRONG CANNOT BE

25 USED AGAINST MR. STARR AND IT'S IN PART BECAUSE OF THE OFFENSE

1  CONDUCT ITSELF, JUDGE.  AND WE DON'T THINK THE GOVERNMENT --

2  THIS WASN'T JUST A PLEA NEGOTIATION AS TO LANGER.  HE SITS AT

3  THE CLOSING, HE EXECUTES ASSIGNMENTS.  IF THE FINANCIAL

4  INSTITUTION WAS ALREADY IN RUIN THEN, THAT'S IN DECEMBER OF

5  '93, IT CERTAINLY WAS IN RUIN WHEN MR. STARR BECAME CRIMINALLY

6  RESPONSIBLE.  SO THEREFORE, PRONG (A) JUST DOES NOT APPLY TO

7  MR. STARR AND PRONG (B), THE ELEMENTS ARE NOT MET.

8          THE COURT:  ALL RIGHT.  LET ME SEE IF WE CAN LOCATE

9  MR. LANGER'S PLEA AGREEMENT.  LOU?

10         THE DEPUTY CLERK:  I'M LOOKING FOR IT.

11         THE COURT:  WHEN HE FINDS IT, HE'LL GIVE IT TO ME.

12 ALL RIGHT.  THANK YOU.

13         MR. MERVIS, I'LL LET YOU ARGUE ON PRONG (B) AT A

14 LATER TIME IF I GET, IF I GET THERE.

15         MR. MERVIS:  YES, JUDGE.

16         THE COURT:  THIS IS AT DOCKET ENTRY 626.

17         MR. MERVIS:  I'M SORRY, JUDGE?

18         THE COURT:  DOCKET ENTRY 626 IS MR. LANGER'S PLEA

19 AGREEMENT.  JANUARY 27, 1999 FILING DATE.

20         (COURT STOOD AT EASE)

21         THE COURT:  MR. MERVIS, WHAT PART OF THIS ARE YOU

22 ARGUING?

23         MR. MERVIS:  MAY I SEE THE DOCUMENT?

24         THE COURT:  YOU HAVEN'T SEEN IT?

25         MR. MERVIS:  MY PROBLEM IS I HAVEN'T BEEN ABLE TO

1  SEE IT IN A LONG TIME.  MAY I JUST HAVE A MOMENT?

2          THE COURT:  YES.

3          MR. MERVIS:  ALL RIGHT, JUDGE.

4          THE COURT:  THAT'S OKAY.  I WAS LOOKING UP

5  MR. KAUTH'S TESTIMONY.

6          MR. MERVIS:  DID YOUR HONOR WANT ME TO GO BACK TO

7  THIS NOW?

8          THE COURT:  MM-HMM.

9          MR. MERVIS:  HERE IT IS, JUDGE.  I GUESS IT'S

10  IMPLICIT AT PAGE THREE, PARAGRAPH SIX.  THE ADJUSTED OFFENSE

11  LEVEL AS TO MR. LANGER DOES NOT CONTAIN A FOUR-LEVEL INCREASE,

12  PURSUANT TO THE SENTENCING GUIDELINES, FOR SUBSTANTIALLY

13  AFFECTING A FINANCIAL INSTITUTION.

14          THE COURT:  ALL RIGHT.  MR. MERVIS, THAT ARGUMENT IS

15  NOT GOING TO BE PERSUASIVE TO ME BECAUSE IT'S NOT WHAT'S IN

16  THE -- WHEN THEY WRITE THESE, THEY DON'T PUT ALL THE

17  ADJUSTMENTS.  IN FACT, WHEN YOU GO THROUGH THE SENTENCING

18  PROCEEDING, THE DEFENDANT IS TOLD THIS ISN'T BINDING IN ANY

19  WAY ON THE COURT.

20          MR. MERVIS:  JUDGE, THE LANGER PLEA AGREEMENT WASN'T

21  THE BASIS.  I MEAN IT WAS EVIDENCE OF.  IN OTHER WORDS, IF

22  LANGER'S CONDUCT DOES NOT SUBSTANTIALLY AFFECT THE FINANCIAL

23  INSTITUTION IN DECEMBER OF 1993, THEN STARR'S CANNOT.  IT'S

24  NOT THE SOLE BASIS OF OUR ARGUMENT.  I UNDERSTAND WHAT THE

25  COURT IS SAYING.

1    THE COURT:  IF DON'T UNDERSTAND IT, THEN I WON'T

2  PROLONG IT.  MY POINT, THOUGH, JUST TO MAKE SURE THAT I'M

3  COMMUNICATING WITH YOU, IS THAT JUST BECAUSE THE GOVERNMENT

4  SAYS WE WON'T ASK TO BUMP YOU UP FOR THE GUN, WE WON'T ASK TO

5  DO THIS, WE WON'T ASK TO DO THAT, DOESN'T MEAN THAT THEY ARE

6  THEREFORE SAYING THERE WAS NO GUN IN A DRUG CASE, FOR

7  INSTANCE, IN A PLEA AGREEMENT.

8    THE FACT THAT THEY DON'T ASK IN THE PLEA AGREEMENT

9  FOR ALL THE ADJUSTMENTS IS NOT DISPOSITIVE IN TERMS OF

10  COLLATERAL ESTOPPEL OR RES JUDICATA OR WHATEVER ARGUMENTS

11  YOU'RE TRYING TO MAKE TO THE GOVERNMENT'S POSITION.

12    MR. MERVIS:  I'M NOT MAKING COLLATERAL ESTOPPEL OR

13  RES JUDICATA.  IT'S EVIDENCE OF, JUDGE --

14    THE COURT:  CIVIL CONCEPTS, MR. MERVIS.

15    MR. MERVIS:  I KNOW CIVIL CONCEPTS, JUDGE,

16  OCCASIONALLY, BUT IT'S EVIDENCE OF.  BECAUSE STARR'S ENTRY

17  INTO THE CONSPIRACY ON A CRIMINAL LEVEL OCCURS MUCH LATER, AND

18  AFTER THE NHE TRANSACTION HAS ALREADY BEEN CONSUMMATED.

19    THE COURT:  YOUR OTHER ARGUMENTS I'M ENTERTAINING,

20  BUT THE ONE ABOUT LANGER I DON'T THINK IS A WELL-TAKEN

21  ARGUMENT, IF THAT IS WHAT IT'S BASED ON.  THE FAILURE TO GIVE

22  A --

23    MR. MERVIS:  BASED UPON MY REVIEW, THAT'S WHAT IT

24  WAS BASED ON.

25    THE COURT:  ALL RIGHT.  THANK YOU.  AND MR. DALE?

1      MR. DALE:  THANK YOU, YOUR HONOR.  YOUR HONOR, JUST
2  TWO BRIEF POINTS.  THE SOLVENCY ISSUE STRIKES ME AS SOMEWHAT
3  LIKE THE, AKIN TO THE FIRST YEAR LAW EXAM THAT ENDS UP WITH
4  THE, WITH THE, THE EXAMPLE OF BUT FOR THE FACT THE VICTIM WAS
5  ALREADY DEAD, THE LAST SHOT WOULD'VE KILLED HIM.
6      THE GOVERNMENT IS SAYING WHAT HAPPENED WAS HORRIBLE
7  HERE, IGNORING THE FACT IT WAS ALREADY DOWN THE TUBE BEFORE
8  ANY OF THIS HAPPENED.  I THINK THE LANGUAGE IS PLAIN IN THE
9  STATUTE, AND THAT'S THE POINT I'D MAKE.
10     SECONDLY, WE WILL, AS I UNDERSTAND THE COURT IS
11 PERMITTING US, FUTURE IN THE PROCEEDING, TO RAISE THE ISSUE AS
12 TO WHETHER OR NOT MR. POUND OR WHOMEVER, TOOK PERSONAL
13 POSSESSION OF THE REQUISITE FUNDS.
14     THE COURT:  THE ONE-MILLION PRONG.  THAT'S SEPARATE
15 BECAUSE THAT'S INDIVIDUALIZED.
16     MR. DALE:  ALL RIGHT.  THANK YOU, YOUR HONOR.
17     THE COURT:  THANK YOU, MR. DALE.
18     AND MR. KUKEC?
19     MR. KUKEC:  THANK YOU, JUDGE.  YOUR HONOR, I THINK
20 YOU'VE ASKED THE MOST APT QUESTION, WHICH IS, HAS THE
21 GOVERNMENT SHOWN ANY SPECIFIC EVIDENCE THAT SHOWS ANY ONE OF
22 THE PRONGS UNDER SUBDIVISION (A).
23     THE COURT:  YOU CONTEST THAT THOSE PERSONS NAMED --
24 I WAS TRYING TO FIND MR. KAUTH'S TESTIMONY.  YOU CONTEST HE
25 EVEN MADE STATEMENTS OF THAT NATURE?

1          MR. KUKEC:  I DO NOT BELIEVE THAT THAT INDIVIDUAL

2   TIED ANY OFFENSE CONDUCT FROM MS. SCHNEIDERMAN TO ANY ONE OF

3   THOSE SITUATIONS.

4          THE COURT:  ALL RIGHT.  I'M GOING TO GO AHEAD AND

5   HEAR YOUR ARGUMENT, THEN I'M GOING TO PULL SOME OF MY NOTES

6   OUT AND LOOK AT THE TESTIMONY.  GO AHEAD.

7          MR. KUKEC:  I'LL RELY ON THE RECORD, JUDGE.

8          THE COURT:  MAKE YOUR ARGUMENT.  YOUR FIRST ONE IS

9   THE GOVERNMENT HASN'T SHOWN THIS IN THE RECORD.  THE EVIDENCE

10  ISN'T THERE.

11         MR. KUKEC:  CORRECT.  AND THAT IT REQUIRES EITHER

12  THAT THE DEFENDANTS' OFFENSE CONDUCT RESULTED IN THE FINANCIAL

13  INSTITUTION BEING INSOLVENT, WHICH IS A SEPARATE ISSUE,

14  BECAUSE OF THE PRIOR INSOLVENCY OR ONE OF THE OTHER PRONGS AND

15  THEY HAVEN'T SHOWN THE OTHER PRONG.

16         AS I UNDERSTAND IT, THE COURT RIGHT NOW DOESN'T WANT

17  TO HEAR ARGUMENTS ON PRONG (B) IN TERMS OF THE ONE MILLION

18  DOLLARS.

19         THE COURT:  I'M GOING TO HEAR THAT INDIVIDUALLY.

20  ALL RIGHT.

21         MR. MERVIS:  EXCUSE ME, JUDGE.  MAY I ADD ONE THING

22  I OMITTED?

23         THE COURT:  YOU MAY.

24         MR. MERVIS:  ALTHOUGH I SPECIFICALLY CITED IT, NOW

25  THAT THE COURT IS GOING TO GO TO IT, PARAGRAPH 52 OF THE STARR

39

1  PRE-SENTENCE REPORT.

2            THE COURT:  BACK TO STARR NOW?

3            MR. MERVIS:  YES, I'M SORRY.  PAGE 24, PARAGRAPH 52,

4  THE PROBATION OFFICE FINDS AS FOLLOWS:  BY THE END OF 1993, IN

5  THE ORDINARY COURSE OF BUSINESS, NHLIC WOULD'VE BEEN REQUIRED

6  TO REFLECT A REDUCTION IN ASSETS AND NET WORTH OF $116 MILLION

7  IN ITS BOOKS AND RECORDS, WHICH WOULD'VE RENDERED NHLIC

8  INSOLVENT.

9            THAT'S THE FINDING OF PROBATION AND THAT'S THE

10 FINDING UPON WHICH STARR RELIES IN HIS ARGUMENT AS TO

11 AFFECTING A FINANCIAL INSTITUTION.

12           THE COURT:  ALL RIGHT.

13           MR. MERVIS:  THEN WE THINK THAT IS THE FINDING

14 SUPPORTED BY THE RECORD.

15           THE COURT:  ALL RIGHT.  LET ME LOOK AT SOME OF THE

16 EVIDENCE HERE.

17           MS. HUNT:  YOUR HONOR, I THINK IT MAY BE EASIER IF

18 WE SIMPLY PUT ON THE EVIDENCE NOW.

19           THE COURT:  YOU MAY.

20           MR. TURNER:  MAY WE HAVE ONE MOMENT?

21           THE COURT:  YES.  IS ANYONE GOING TO INVOKE THE RULE

22 BEFORE WE START THIS?

23           (NO RESPONSE)

24           MS. HUNT:  MAY I STEP OUTSIDE, YOUR HONOR?

25           (COURT STOOD AT EASE)

40

```
1            MS. HUNT:  YOUR HONOR, THE GOVERNMENT CALLS TERRY
2   CRAIG.
3            (WITNESS SWORN BY THE DEPUTY CLERK)
4            THE COURT:  THE RULE HAS NOT BEEN INVOKED.  WOULD
5   YOU STATE YOUR NAME, PLEASE, AND SPELL YOUR LAST NAME FOR THE
6   RECORD?
7            THE WITNESS:  TERRY ALLEN CRAIG, C-R-A-I-G.
8                         TERRY ALLEN CRAIG,
9   WHO WAS FIRST DULY SWORN, WAS EXAMINED AND TESTIFIED AS
10  FOLLOWS:
11                      DIRECT EXAMINATION
12  BY MS. HUNT:
13  Q.   MR. CRAIG, WHAT IS YOUR POSITION AT THE NATIONAL
14  HERITAGE LIFE INSURANCE COMPANY IN RECEIVERSHIP?
15  A.   ASSISTANT TO THE DEPUTY RECEIVER.
16  Q.   AND WHAT ARE YOUR DUTIES AND OBLIGATIONS IN THAT ROLE?
17  A.   PRIMARILY TO MARTIAL ASSETS AND OVERSEE THE LIQUIDATION
18  OF NATIONAL HERITAGE LIFE INSURANCE COMPANY.
19  Q.   I HAVE VERY BRIEF AND HOPEFULLY SIMPLE QUESTIONS I WANT
20  TO ASK YOU.
21            THE GOVERNMENT'S EVIDENCE AT THE TRIAL IN THIS CASE
22  ESTABLISHED THAT OVER $100 MILLION WAS TRANSFERRED UNDER THE
23  CONTROL OF THE COMPANY CALLED SOUTH STAR MANAGEMENT COMPANY,
24  INC..  AND NONE OF THAT CASH HAS, EXCEPT FOR $2 MILLION AS
25  PART OF A LIFECO MORTGAGE COMMISSION FRAUD, WAS EVER RETURNED
```

1   TO NATIONAL HERITAGE.  THE REMOVAL OF $100 MILLION OF CASH,

2   CAN YOU TELL THE JUDGE WHAT, IF ANY, IMPACT THAT HAD ON

3   NATIONAL HERITAGE'S ABILITY TO MEET ITS OBLIGATIONS TO ITS

4   INSUREDS AND ITS PENSIONERS?

5   A.    YES.  IT CAUSED A SUBSTANTIAL HINDRANCE IN ORDER TO PAY

6   BACK THE POLICY HOLDERS TO WHICH THE MONEY WAS TAKEN FROM.

7   Q.    SOME OF THAT MONEY, APPROXIMATELY $65 MILLION OF IT, WAS

8   USED TO PURCHASE MORTGAGES WHICH ENDED UP BEING ALLEGEDLY

9   PLEDGED AS SECURITY FOR A BOND WHICH WAS SOLD NATIONAL

10  HERITAGE.  ARE YOU SOMEWHAT FAMILIAR WITH THE UNDERLYING FACTS

11  RELATING TO THAT TRANSACTION?

12  A.    YES, SIR.

13  Q.    ULTIMATELY, THE RECEIVER RECOVERED THOSE MORTGAGES AFTER

14  FAIRLY CONTENTIOUS LITIGATION IN CHICAGO; IS THAT CORRECT?

15  A.    THAT'S CORRECT.

16  Q.    I DON'T WANT TO DISCUSS THE FACT THAT THEY WERE

17  ULTIMATELY RECOVERED BECAUSE FOR THESE PURPOSES, WE'RE LOOKING

18  AT THE DEFENDANTS' ATTEMPTED CONDUCT.  THOSE $65 MILLION IN

19  ASSETS -- FROM THE PERIOD OF 1994 THROUGH 1996, WERE YOU AT

20  NATIONAL HERITAGE?

21  A.    YES, I WAS.

22  Q.    AND CAN YOU, VERY BRIEFLY, DESCRIBE HOW IMPORTANT IT WAS

23  FOR NATIONAL HERITAGE TO RECOVER THAT $65 MILLION IN ASSETS,

24  AND WHY, AS THAT RELATES TO THE SAFETY AND SOUNDNESS OF

25  NATIONAL HERITAGE?

1  A.   WELL, IT WAS APPROXIMATELY $65 TO 70 MILLION THAT WENT

2  OUT OF THE COMPANY.   THEY WERE ASSETS THAT WE HAD TO GO OUT

3  AND RECOVER IN ORDER TO MEET THE OBLIGATIONS TO THE POLICY

4  HOLDERS.

5  Q.   NOW, NATIONAL HERITAGE, EVEN IF THEY HAD RECOVERED THE

6  ENTIRE $100 MILLION AND THE -- WHICH ACTUALLY, WE JUST HAVE TO

7  TALK ABOUT THE 100 MILLION BECAUSE THE 65 IS IN THERE -- IF

8  NATIONAL HERITAGE HAD RECOVERED THE ENTIRE $100 MILLION, WOULD

9  THAT HAVE MADE NATIONAL HERITAGE ABLE TO MEET ALL OF ITS

10 OBLIGATIONS?

11 A.   PROBABLY NOT.

12 Q.   ALL RIGHT.   WHAT EFFECT, IN TERMS OF THE EXTENT OR THE

13 LESSENING OF ITS OBLIGATIONS TO ITS PENSIONERS, WOULD THAT

14 RECOVERY OF $100 MILLION HAVE HAD?

15 A.   IT WOULD'VE PUT US A LOT CLOSER TO MEETING OUR

16 OBLIGATIONS.   $100 MILLION CLOSER.

17 Q.   AND TO THIS DAY, HAS NATIONAL HERITAGE BEEN ABLE TO MEET

18 ALL OF ITS OBLIGATIONS?

19 A.   NO.

20      MS. HUNT: YOUR HONOR, I BELIEVE THAT'S SUFFICIENT TO

21 SHOW THAT THE MONIES THAT WERE TAKEN OUT, BOTH OF THE SOUTH

22 STAR AND THE NATIONAL HOUSING EXCHANGE, OF WHICH EACH OF THE

23 DEFENDANTS WERE FOUND GUILTY, MR. STARR ONLY ON THE SECOND

24 PRONG OF THAT, DID SUBSTANTIALLY JEOPARDIZE THE SOUNDNESS OF

25 THE FINANCIAL INSTITUTION.

1            THE COURT:  THE WITNESS'S TESTIMONY IS THE REMOVAL

2  OF THE 100 MILLION CAUSED A SUBSTANTIAL HINDRANCE OF PAYING

3  BACK POLICY HOLDERS.  THE LANGUAGE OF NOTE 17 UNDER 2(F)(1.1)

4  IS THE INSTITUTION SUBSTANTIALLY REDUCED BENEFITS TO

5  PENSIONERS OR INSUREDS; WAS UNABLE, ON DEMAND, TO REFUND FULLY

6  ANY DEPOSIT, PAYMENT OR INVESTMENT.

7  Q.    WHAT WERE THE BENEFITS OWED TO THE NATIONAL HERITAGE

8  INSUREDS?

9  A.    WHAT WERE THE BENEFITS?

10  Q.    YES.

11  A.    PAYMENT OBLIGATIONS UNDER THE CONTRACTS OF INSURANCE AND

12  THE ANNUITIES THEY PURCHASED.

13  Q.    CAN YOU BRIEFLY EXPLAIN HOW THE PAYMENT OBLIGATIONS

14  WOULD HAVE ARISEN?

15  A.    DEPENDS ON THE CONTRACT OF INSURANCE THEY BOUGHT.  BUT

16  IF IT'S ANNUITIES, THAT'S PAID OUT OVER A SERIES OF PAYMENTS

17  TO PEOPLE WHO ARE SUBSTANTIALLY RETIRED, THEY WERE LOOKING AT

18  AS THEIR PENSION MONEY.  MONEY THEY LIVED ON.

19  Q.    AND ARE THE OBLIGATIONS OF AN INSURANCE COMPANY TO PAY

20  ON ITS ANNUITIES AND ITS LIFE INSURANCE POLICIES,

21  TRADITIONALLY CALLED BENEFITS?

22  A.    YES.

23  Q.    AND WAS NATIONAL HERITAGE'S ABILITY TO PAY THESE

24  BENEFITS TO ITS INSUREDS, SUBSTANTIALLY AFFECTED BY THE

25  REMOVAL OF THE $100 MILLION?

1  A.    YES, IT WAS.

2  Q.    AND SIMILARLY, BY THE DEFENDANTS' ATTEMPTS TO KEEP TITLE

3  AND MAINTAIN THE POWER AND CONTROL OVER THE $65 MILLION OF THE

4  MORTGAGES, WHAT IMPACT, IF ANY, DID THAT HAVE ON THE ABILITY

5  OF NATIONAL HERITAGE TO PAY ITS BENEFITS TO ITS PENSIONERS?

6  A.    IT REDUCED, IT SUBSTANTIALLY REDUCED OUR ABILITY TO PAY

7  THOSE BENEFITS.

8  Q.    AND HOW MUCH TODAY DOES NATIONAL HERITAGE, IN BALL PARK

9  FIGURES, STILL OWE IN TERMS OF BENEFITS TO ITS INSURED AND

10 PENSIONERS, IF YOU KNOW?

11 A.    WELL, IT DEPENDS ON WHAT YOU'RE TALKING ABOUT.  BECAUSE

12 SOME OF THAT WAS PICKED UP BY THE GUARANTY ASSOCIATIONS.  TO

13 THE UNCOVERED POLICY HOLDERS, WE PROBABLY HAVE 15 TO $20

14 MILLION LEFT TO BE PAID TO PEOPLE THAT WERE COVERED.

15 Q.    AND THE BALANCE OF THAT WAS NOT ACTUALLY PAID BY

16 NATIONAL HERITAGE, IT WAS ACTUALLY PAID BY AN INSURANCE FUND;

17 IS THAT CORRECT?

18 A.    THAT'S CORRECT.

19 Q.    AND BUT FOR THE EXISTENCE OF THE INSURANCE FUND,

20 NATIONAL HERITAGE WOULD HAVE OWED HOW MUCH MONEY IF THAT

21 INSURANCE HAD NOT BEEN AVAILABLE TO THE INSURED?

22 A.    $400 MILLION.  IN EXCESS OF 400 MILLION.

23        MS. HUNT:  YOUR HONOR, I BELIEVE THAT, THAT DIRECTLY

24 MEETS THE --

25        THE COURT:  I'LL HEAR CROSS-EXAMINATION.

```
 1              MR. MERVIS:  MAY I INQUIRE?
 2              THE COURT:  YOU MAY, MR. MERVIS.
 3                        CROSS-EXAMINATION
 4   BY MR. MERVIS:
 5   Q.    SIR, I'M CLARK MERVIS.  I REPRESENT JAN STARR.
 6              MR. CRAIG, DO YOU AGREE THAT BY THE END OF 1993, IN
 7   THE ORDINARY COURSE OF BUSINESS, NHLIC SHOULD HAVE BEEN
 8   REQUIRED TO REFLECT A REDUCTION IN ASSETS AND NET WORTH OF
 9   $116 MILLION IN ITS BOOKS AND RECORDS, WHICH WOULD'VE TENDERED
10   NHLIC INSOLVENT?
11   A.    I DON'T KNOW.  BACK AT THAT POINT IN TIME, WHAT
12   TRANSACTION ARE YOU REFERRING TO?
13   Q.    ALL RIGHT.  I'M REFERRING TO A SENTENCE IN THE
14   PRE-SENTENCE REPORT THAT YOU HAVEN'T SEEN.  MY QUESTION TO
15   YOU, SIR, BASED UPON YOUR WORK WITH THE RECEIVER, WASN'T IT A
16   FACT THAT IN DECEMBER OF 1993, HAD NATIONAL HERITAGE CORRECTLY
17   REPORTED ITS FINANCIAL CONDITION TO THE DELAWARE DEPARTMENT OF
18   INSURANCE, IT WOULD, IN FACT, HAVE BEEN STATUTORILY INSOLVENT?
19   A.    THAT'S A FAIR STATEMENT.
20   Q.    THAT'S THE END OF 1993, YES?
21   A.    IF ALL THE FACTS HAD BEEN LAID ON THE TABLE, KNOWING
22   WHAT, WHAT HAD TRANSPIRED, YES.
23   Q.    ALL RIGHT.  NOW, ULTIMATELY, DID NATIONAL HERITAGE LIFE
24   RECOVER THE UNDERLYING MORTGAGES THAT HAD BEEN PURCHASED WITH
25   NATIONAL HERITAGE MONEY?
```

```
 1  A.    THROUGH LEGAL ACTION IN CHICAGO, YES.
 2  Q.    WHAT WAS THE VALUE OF THE UNDERLYING MORTGAGES
 3  ULTIMATELY RECOVERED?
 4  A.    STILL WORKING THEM OUT.  I DON'T KNOW.
 5  Q.    BUT ISN'T IT IN THE $65 TO $70 MILLION RANGE?
 6  A.    PROBABLY.  I MEAN, I CAN'T GIVE YOU A NUMBER BECAUSE I
 7  DON'T, I DON'T KNOW WHAT THE --
 8  Q.    SOME REASONABLE RANGE, SIR.  ISN'T IT IN THE 65 TO $70
 9  MILLION RANGE AT LEAST?
10  A.    POSSIBLY.
11  Q.    AND ISN'T THAT MONEY NOW BEING USED TO PAY PENSIONERS,
12  ANNUITANTS AND OTHER PEOPLE WHO HAVE, WHO NATIONAL HERITAGE IS
13  OBLIGED TO PAY MONEY TO?
14  A.    IT'S GOING TO COVER A LOT OF THINGS.
15          MR. MERVIS: NOTHING FURTHER, JUDGE.
16          THE COURT:  ALL RIGHT.  THANK YOU.
17          MR. DALE, DO YOU WISH TO INQUIRE?
18          MR. DALE:  JUST A BRIEF QUESTION.
19                  CROSS-EXAMINATION
20  BY MR. DALE:
21  Q.    MR. CRAIG, I'M TOM DALE.  I REPRESENT KEITH POUND.
22          LOOKING BACK WITH THE KNOWLEDGE THAT YOU NOW HAVE,
23  WHEN WAS NATIONAL HERITAGE INSOLVENT?  WHEN DID IT FIRST
24  BECOME INSOLVENT?
25  A.    I DON'T KNOW.  I DON'T KNOW THE EXACT DATE WHEN IT
```

1  BECAME INSOLVENT.

2  Q.    YOUR TESTIMONY INDICATED THAT APART FROM THIS EXCHANGE

3  OF ASSETS, THE 100 MILLION, 65 MILLION, WHAT HAVE YOU, THE

4  MORTGAGES THAT IT PURCHASED AND SO FORTH, THAT NATIONAL

5  HERITAGE WAS STILL IN TROUBLE?

6  A.    YES.

7  Q.    IS THAT CORRECT?

8  A.    YES, SIR.

9  Q.    WHY IS THAT?

10  A.    WELL, BASICALLY, YOU KNOW, YOU HAD ASSETS THAT WERE PUT

11  ON THE BOOKS THAT WE DIDN'T HAVE.  WAS OUT OF CONTROL.  THAT

12  REFLECTED OVERSTATED VALUES.

13  Q.    WHEN DID THIS START?

14  A.    I DON'T KNOW THE EXACT DATE.  I MEAN, I'D HAVE TO LOOK

15  AT RECORDS.

16  Q.    BEFORE 1993?

17  A.    I DON'T KNOW.  I'D HAVE TO LOOK AT RECORDS.

18  Q.    HAVE YOU LOOKED AT THOSE RECORDS?

19  A.    SOME TIME IN THE PAST.  NOT, YOU KNOW, NOT RECENTLY.

20  PROBABLY A COUPLE YEARS AGO.

21  Q.    WHEN DID -- WHEN, IF EVER, DID ANY ANNUITANT OR CONTRACT

22  HOLDER FIRST NOT BE PAID WHAT THEY WERE DUE FROM NATIONAL

23  HERITAGE?

24  A.    UM, PROBABLY RIGHT, RIGHT WHEN IT WENT INTO

25  REHABILITATION, WE PUT A MORATORIUM ON BENEFITS PAYMENTS.

48

1   SHORTLY AFTER MAY OF '94.

2   Q.    AFTER IT WENT INTO RECEIVERSHIP IS THE FIRST TIME

3   SOMEONE WAS NOT GIVEN WHAT THEY WERE ENTITLED TO?

4   A.    THAT'S CORRECT.

5   Q.    THANK YOU.

6           THE COURT:  ALL RIGHT.  THANK YOU, MR. DALE.

7           AND MR. KUKEC, INQUIRY?

8           MR. KUKEC:  NO QUESTIONS, JUDGE.

9           THE COURT:  ANY REDIRECT EXAMINATION?

10          MS. HUNT:  NO, YOUR HONOR.

11          THE COURT:  THANK YOU, MR. CRAIG.  YOU MAY STEP

12  DOWN.

13          ANY FURTHER EVIDENCE BY THE GOVERNMENT?

14          MS. HUNT:  NO, YOUR HONOR.

15          THE COURT:  ANY EVIDENCE, MR. MERVIS, YOU WISH TO

16  PRESENT ON THIS ISSUE?

17          MR. MERVIS:  NO, JUDGE.

18          THE COURT:  ANY EVIDENCE, MR. DALE, THAT YOU WISH

19  TO --

20          MR. DALE:  NO, YOUR HONOR.

21          THE COURT:  MR. KUKEC, DO YOU WISH TO PRESENT

22  ANYTHING?

23          MR. KUKEC:  NO, JUDGE.

24          MR. MERVIS:  YES, JUDGE, SORRY.  WE FOUND IT.

25          THE COURT:  ARE YOU BACK TO MR. LANGER'S PSI?

1          MR. MERVIS:  NO, I'M SORRY.  NO, IT ISN'T.  NO, IT

2    WAS NOT IN THE PSI.  I KNOW I HAD SEEN IT.

3          THE COURT:  I MEAN THE PLEA AGREEMENT.

4          MR. MERVIS:  YES.  I ASK THE COURT TO --

5          THE COURT:  WHAT IS IT YOU WANT ME TO LOOK AT?

6          MR. MERVIS:  SURE.  A LETTER DATED AUGUST 28, 1999.

7    FOR THE RECORD, CONTAINED AT -- I DON'T KNOW THE FILE NOTE

8    HERE.  IT'S NOT MARKED.  AND IT'S, THE GOVERNMENT WILL TAKE

9    THE POSITION THAT MR. LANGER, THAT HE DID NOT ENDANGER THE

10   FINANCIAL CONDITION OF THE COMPANY.  IT'S THE THIRD PARAGRAPH

11   OF --

12         THE COURT:  LET ME SEE WHAT YOU'RE TALKING ABOUT SO

13   WE CAN GET THE RECORD STRAIGHT HERE.

14         MR. MERVIS:  I CAN'T SEE THE EXHIBIT NUMBER.  I'M

15   SORRY FOR THE INEFFICIENCY, JUDGE.  ALL THESE MATERIALS WERE

16   JUST MISSING.  THAT'S THE PROBLEM.

17         THE COURT:  THIS IS A COPY OF A LETTER ON BEHALF OF

18   THE UNITED STATE'S ATTORNEY FOR THIS DISTRICT TO MR. WOLFE, ON

19   BEHALF OF MR. LANGER.  IT IS FILED AT DOCKET NUMBER 631 ON

20   1-7-99.  IT STATES IN OPEN COURT, BUT I CAN'T DISCERN WHAT

21   PROCEEDING WAS GOING ON AT THAT TIME.

22         DOES THE GOVERNMENT HAVE THIS ALREADY?

23         MS. HUNT:  I WROTE IT, BUT I DON'T HAVE IT WITH ME.

24         THE COURT:  MR. PIRONE, SHOW THAT TO MS. HUNT,

25   PLEASE.

1          MS. HUNT:  YES, YOUR HONOR.  THIS IS WHAT I WROTE.
2     I WOULD BE HAPPY TO ADDRESS MR. MERVIS' ARGUMENT, IF THE COURT
3     BELIEVES THIS IS THE APPROPRIATE TIME.
4          THE COURT:  ALL RIGHT.
5          MS. HUNT:  PROBATION SENT ME A NOTE, WHICH I WANT TO
6     POINT OUT TO THE COURT THAT NOW THAT THEY ARE GROUPED, THIS
7     FINANCIAL AND THE JEOPARDIZING THE SAFETY OF THE FINANCIAL
8     INSTITUTION REMAINS ONLY AN ISSUE AS TO MR. STARR.  BECAUSE
9     NOW, THE MONEY LAUNDERING GUIDELINES EXCLUSIVELY WILL CONTROL
10    THE OFFENSE LEVEL ON THE OTHER DEFENDANTS.  AS THE HIGHER
11    OFFENSE LEVEL.
12         THE COURT:  IS THAT TRUE?
13         THE PROBATION OFFICER:  THAT'S CORRECT, YOUR HONOR.
14    BECAUSE MONEY LAUNDERING GUIDELINES WILL BE THE HIGHER OF THE
15    TWO POSSIBLE GROUPS THAT WOULD'VE BEEN THERE; THEREFORE, THE
16    MONEY LAUNDERING GUIDELINES ARE NOW GOING TO BE APPLYING.
17         THE COURT:  WE'LL HAVE TO DEAL WITH THAT WITH EACH
18    INDIVIDUAL.  WHEN WE GO THROUGH THE CORRECTIONS TO THE
19    PRE-SENTENCE REPORT, THAT'S SOMETHING THAT'LL HAVE TO BE
20    BROUGHT UP.
21         MS. HUNT:  RIGHT.  BUT IT STILL DOES IMPACT
22    MR. STARR'S COMPUTATION.
23         YOUR HONOR, THE STATEMENT THAT I WROTE IN
24    MR. LANGER'S LETTER IS THE SAME POSITION THAT WE TAKE HERE
25    TODAY.  THAT IS THAT THE SOUTH STAR THEFTS, AT THAT POINT IN

1  TIME, WERE ACCOMPLISHED AND WHAT MR. LANGER'S ROLE WAS, WAS

2  DIFFERENT THAN THEIRS.  THIS ANALYSIS IS VERY MUCH A

3  CONDUCT-BASED ANALYSIS IN TERMS OF WHETHER EACH INDIVIDUAL

4  DEFENDANT'S ACTS AS THEY ACTED, SUBSTANTIALLY AFFECTED THE

5  FINANCIAL INSTITUTION.

6         WHEN WE LOOK AT WHAT MR. LANGER DID, THAT BOND

7  CLOSING ON DECEMBER 28, 1993, TAKEN IN ISOLATION, WHICH WE

8  HAVE TO DO IN MR. LANGER'S PART, BECAUSE THAT, EXCEPT WHEN HE

9  CAME BACK IN MARCH TO SIGN SOME ADDITIONAL DOCUMENT, WAS THE

10 TOTAL PARTICIPATION HE HAD.  THAT ONE DAY'S EVENT WAS A COVER

11 UP.  IT WAS NOT AN ADDITIONAL THEFT OF ASSETS.  THAT BOND

12 TRANSACTION, IN ITSELF, TOOK NO MONEY FROM NATIONAL HERITAGE.

13 THE MONEY WAS GONE, HAVING ALREADY BEEN STOLEN BY THE OTHER

14 CO-CONSPIRATORS.  AND THAT BOND WAS AN EFFORT TO COVER THAT

15 UP.

16         NOW, THERE WAS ANOTHER CONSPIRACY GOING ON THAT

17 MR. LANGER WAS NOT PART OF, BUT MR. STARR WAS.  AND THAT WAS,

18 LET'S NOW STEAL THE MORTGAGES.  WE NOW HAVE THIS BOND CLOSING

19 AND THE BOND SAYS THE MORTGAGES ARE SUPPOSED TO BE TRANSFERRED

20 TO THIS ENTITY CALLED CONTINENTAL.  AND ALL OF THESE ASSETS

21 ARE NOW FOR THE BENEFIT OF NATIONAL HERITAGE, BUT LET'S NOT

22 LET THAT HAPPEN.  LET'S, INSTEAD, STEAL THOSE.  WE ALREADY

23 HAVE THEM.  IN FACT, LET'S JUST KEEP THEM.

24         AND THAT WAS, TO ME, THE GRAVAMEN OF WHAT

25 MR. STARR'S CONDUCT INVOLVED.  MR. STARR WAS, IN FACT, THE

1  MOST MATERIAL PLAYER IN THE DEFENDANTS' EFFORTS TO KEEP AND
2  STEAL THOSE $65 MILLION OF MORTGAGES.  MR. LANGER PLAYED NO
3  ROLE IN THAT.  IN FACT, WHEN MR. LANGER CAME BACK IN MARCH OF
4  1994, THE DOCUMENTS HE SIGNED WERE ACTUALLY ASSIGNING THE
5  MORTGAGES TO CONTINENTAL.  THOSE WERE THE 800 DOCUMENTS
6  MR. LANGER SIGNED.
7          MR. MERVIS, IN HIS VARIOUS PLEADINGS, ON SEVERAL
8  OCCASIONS, REFERENCED MR. STARR SIGNING SOMETHING SENDING
9  ASSETS TO NATIONAL HERITAGE.  TO THE CONTRARY, EVERY DOCUMENT
10 MR. STARR SIGNED, FROM THE LIMITED POWER OF ATTORNEY, HIS
11 CORRESPONDENCE WITH MIDWEST INDEPENDENT BANK, ALL OF THE LEGAL
12 DOCUMENTS FILED, IN ALL OF THE FORECLOSURE ACTIONS, 100
13 PERCENT OF THEM, THROUGH HIS LETTER TO JUDGE BEHR IN CHICAGO,
14 SAID, I OWN THOSE MORTGAGES.  THEY ARE MINE.  AND I, ALONE,
15 HAVE THE POWER AND AUTHORITY AND CONTROL TO DICTATE WHAT
16 HAPPENS TO THE MONEY AND WHAT HAPPENS TO THE MORTGAGES.
17          NOW, MR. CRAIG TESTIFIED THAT THEIR ATTEMPTS TO KEEP
18 THOSE STOLEN ASSETS, WHICH WERE NOT RECOVERED UNTIL THE
19 CONCLUSION OF THAT VERY CONTENTIOUS LITIGATION IN FRONT OF
20 JUDGE BEHR IN CHICAGO, AND THE FACT THAT THEY WERE ULTIMATELY
21 RECOVERED AFTER A HUGE EXPENDITURE OF FEES, DOES NOT TAKE AWAY
22 MR. STARR'S MOST RELEVANT CONDUCT.  AND THAT WAS, TO STEAL $65
23 MILLION WORTH OF ASSETS.
24          MR. STARR'S LOSS COMPUTATION IS DIFFERENT IN THAT
25 REGARD FROM THE OTHER DEFENDANTS, BECAUSE WE DO NOT HOLD HIM

1  RESPONSIBLE FOR THE CASH THAT WAS STOLEN, ONLY FOR THE
2  ATTEMPTED AND ALMOST SUCCESSFUL THEFT OF THOSE $65 MILLION.
3  MR. LANGER HAD NOTHING TO DO WITH THAT CONDUCT WHATSOEVER.
4         SO THAT'S WHY, BECAUSE THIS IS A CONDUCT-BASED
5  ANALYSIS, WE CERTAINLY BELIEVE THAT THE FACTS COMPEL A FINDING
6  MR. STARR'S ACTS SUBSTANTIALLY JEOPARDIZED THE INSTITUTION AND
7  WE WILL NOT BE MAKING A SIMILAR ARGUMENT WHEN HERE IN
8  MR. LANGER'S SENTENCING.
9         THE COURT:  I NOTE MR. LANGER HAS NOT YET BEEN
10 SENTENCED, AND THIS IS A MATTER THAT I MAY ADDRESS AT THAT
11 TIME.  SO YOU CAN GIVE HIS ATTORNEY NOTICE.
12        MS. HUNT:  HE MAY WANT TO GET THE TRANSCRIPT.
13        THE COURT:  RIGHT.  AT THIS TIME, I MAKE THE
14 FOLLOWING FINDING:  AND THAT IS, THAT SECTION
15 2(F)(1.1)(B)(7)(A) APPLIES.  THE EVIDENCE REFLECTS THE
16 GOVERNMENT HAS CARRIED ITS BURDEN OF PROOF TO SHOW THAT THE
17 BENEFITS TO THE INSUREDS WERE SUBSTANTIALLY REDUCED BY THE
18 ACTIONS OF THE DEFENDANTS.  IF MS. SCHNEIDERMAN AND
19 MR. POUND'S PRE-SENTENCE REPORT CALCULATIONS NO LONGER INCLUDE
20 THIS, I, NEVERTHELESS, BECAUSE THEY MADE THESE OBJECTIONS,
21 MAKE THE FINDING AS TO THEM AND AS TO MR. STARR.
22        THE INSTITUTION, NATIONAL HERITAGE LIFE INSURANCE
23 COMPANY, AND ITS RECEIVERSHIP, WAS UNABLE ON DEMAND TO REFUND
24 FULLY ANY (A), DEPOSIT, PAYMENT OR INVESTMENT.  THERE WAS
25 TESTIMONY FROM POLICY HOLDERS AT THE TRIAL AS TO THIS.  AND

1    THE LAST CLAUSE IN NOTE 17 THAT THE INSTITUTION WAS PLACED IN
2    SUBSTANTIAL JEOPARDY OF ANY OF THE ABOVE WOULD APPLY TO THE
3    FACTORS I'VE JUST ENUMERATED.
4            THE OTHER OBJECTIONS, MR. STARR AND
5    MS. SCHNEIDERMAN, TO THEIR ROLE IN THE OFFENSES, THE AMOUNT OF
6    THE LOSS, AS TO MR. STARR, MR. POUND AND MS. SCHNEIDERMAN AND
7    MR. POUND AND MS. SCHNEIDERMAN AS TO OBSTRUCTION OF JUSTICE, I
8    THINK ARE INDIVIDUAL CONSIDERATIONS AND SO AT THIS TIME,
9    MR. HIRSCHHORN, I WILL BEGIN WITH THE SENTENCING AND
10   MR. WEISS, IF YOU'LL TAKE THE PODIUM.
11           WE WILL BREAK FOR LUNCH AT 12 O'CLOCK TO ONE.  I
12   HAVE A MEETING, BUT I WANT EVERYONE TO BE IN THE ROOM, THE
13   ATTORNEYS AND THE DEFENDANTS IN THIS CASE, IN CASE THERE'S A
14   MATTER THAT MAY AFFECT YOU OR THERE'S AN OBJECTION THAT MAY
15   AFFECT YOU, SO THAT I CAN DO WHATEVER IS APPROPRIATE IN THAT
16   REGARD, WHILE EVERYONE IS PRESENT.
17           MR. WEISS IS NOT PRESENT?
18           MR. HIRSCHHORN:  CORRECT, YOUR HONOR.
19           THE COURT:  ON NOVEMBER 1, 1999, SHOLAM WEISS WAS
20   FOUND GUILTY BY A JURY TRIAL OF COUNT ONE OF THE INDICTMENT,
21   CHARGING HIM WITH RACKETEERING IN VIOLATION OF TITLE 18,
22   UNITED STATES CODE SECTION 1962(C); COUNT TWO OF THE
23   INDICTMENT, CHARGING HIM WITH RACKETEERING CONSPIRACY IN
24   VIOLATION OF TITLE 18, UNITED STATES CODE SECTION 1962(D);
25   COUNTS 3 THROUGH 10, 32 THROUGH 36, 72 THROUGH 80 AND 86

1  THROUGH 90 OF THE INDICTMENT CHARGING HIM WITH WIRE FRAUD, IN

2  VIOLATION OF TITLE 18, UNITED STATES CODE SECTIONS 1343 AND

3  1346; COUNTS 11 AND 12, 14 THROUGH 31 AND 37 THROUGH 39 OF THE

4  INDICTMENT, CHARGING HIM WITH INTERSTATE TRANSPORTATION OF

5  STOLEN PROPERTY, IN VIOLATION OF TITLE 18, UNITED STATES CODE

6  SECTION 2314; COUNTS 40 THROUGH 49, 64 THROUGH 71, AND 83 OF

7  THE INDICTMENT, CHARGING HIM WITH MONEY LAUNDERING, IN

8  VIOLATION OF TITLE 18, UNITED STATES CODE SECTION 1956; COUNTS

9  84 AND 85 OF THE INDICTMENT, CHARGING HIM WITH MONEY

10  LAUNDERING, IN VIOLATION OF TITLE 18, UNITED STATES CODE

11  SECTION 1957; COUNTS 91 AND 92 OF THE INDICTMENT, CHARGING HIM

12  WITH MAKING FALSE STATEMENTS IN VIOLATION OF TITLE 18, UNITED

13  STATES CODE SECTION 1000, AND COUNT 93 OF THE INDICTMENT,

14  CHARGING HIM WITH OBSTRUCTION OF JUSTICE, IN VIOLATION OF

15  TITLE 18, UNITED STATES CODE SECTION 1503.

16          MR. HIRSCHHORN, HAVE YOU READ MR. WEISS'

17  PRE-SENTENCE REPORT?

18          MR. HIRSCHHORN:  YES, I HAVE, YOUR HONOR.

19          THE COURT:  AND HAVE YOU HAD THE OPPORTUNITY TO

20  DISCUSS IT WITH YOUR CLIENT?

21          MR. HIRSCHHORN:  NO, I HAVE NOT, YOUR HONOR.

22          THE COURT:  DID YOU FORWARD THE PRE-SENTENCE REPORT?

23          MR. HIRSCHHORN:  I DID FORWARD THE PRE-SENTENCE

24  REPORT AND THE ADDENDUM TO THE PRE-SENTENCE REPORT TO THE LAST

25  KNOWN ADDRESS I HAD FOR MR. WEISS, WHICH WAS CARE OF HIS HOME

1   IN MUNSEE, NEW YORK.

2           THE COURT:  YOU HAD MADE OBJECTIONS TO THE

3   PRE-SENTENCE REPORT.

4           MR. HIRSCHHORN:  I HAVE, YOUR HONOR.  I ALSO HAD

5   OBJECTED TO THE SENTENCING PROCEEDING IN ABSENTIA, WHICH THE

6   COURT PREVIOUSLY OVERRULED.

7           THE COURT:  I RULED AGAINST YOU ON THAT.

8           MR. HIRSCHHORN:  I JUST WANT TO RENEW THAT.

9           THE COURT:  I'LL RULE AGAINST YOU AGAIN ON THAT.

10          MR. HIRSCHHORN:  GREAT.

11          THE COURT:  ALL RIGHT.  TELL ME THE OBJECTIONS.

12          MR. HIRSCHHORN:  YOUR HONOR, PARAGRAPH 81, WE

13  CONTENDED THAT THERE WAS NO LOSS AS A RESULT OF THE CERTIFIED

14  LUMBER BANKRUPTCY FRAUD, BASED ON MY UNDERSTANDING OF THE

15  ISACK ROSENBERG PLEA AGREEMENT WHICH WAS ENTERED INTO BY THE

16  GOVERNMENT IN PARAGRAPH 81.  THE PROBATION DEPARTMENT

17  INDICATED A LOSS.

18          THE COURT:  IS THIS BECAUSE OF THE LAST SENTENCE IN

19  THAT PARAGRAPH?

20          MR. HIRSCHHORN:  YOUR HONOR, ARE YOU READING THE

21  LAST SENTENCE IN PARAGRAPH 81?

22          THE COURT:  YES.

23          MR. HIRSCHHORN:  THE LAST SENTENCE.

24          THE COURT:  A REQUEST IS THEREFORE MADE FOR THE

25  COURT?  DO YOU HAVE THE AMENDED?

1          MR. HIRSCHHORN:  I HAVE THAT, YES.  RIGHT.  NO, IT

2   WAS BECAUSE THE GOVERNMENT HAD AGREED WITH MR. ROSENBERG,

3   THERE WAS NO LOSS ATTRIBUTED TO HIS CONDUCT.  WE WERE CHARGED

4   AS A CO-CONSPIRATOR WITH MR. ROSENBERG IN THE CERTIFIED LUMBER

5   MATTER.  AND NOW IN THIS PROCEEDING, THE GOVERNMENT CONTENDS

6   THAT THERE, THERE WAS A LOSS.

7          THE COURT:  THIS PARAGRAPH, MS. HUNT, APPEARS TO ME

8   TO BE INCONSISTENT WITH THE POSITION THAT WAS TAKEN IN THE

9   ROSENBERG SENTENCING.

10          MS. HUNT:  YOUR HONOR, AS I READ THE PARAGRAPH,

11   PROBATION IS SIMPLY SETTING FORTH THE POSITION OF THE VICTIM.

12   THERE'S NOTHING IN HERE -- I DON'T BELIEVE THAT THE GOVERNMENT

13   HAS TAKEN THIS POSITION.

14          THE COURT:  WELL, THE LAST SENTENCE IS MY CONCERN.

15          MS. HUNT:  YOUR HONOR, I BELIEVE THAT PROBATION WAS

16   SIMPLY PRESENTING TO THE COURT THE SAME ISSUE THAT WAS AT THE

17   ROSENBERG SENTENCE, AND THAT IS THAT THE VICTIMS WERE TAKING A

18   CONTRARY POSITION TO THE GOVERNMENT.  IN THE LOSS COMPUTATIONS

19   THAT WERE USED TO COMPUTE THE OFFENSE LEVELS, THERE IS NO LOSS

20   INCLUDED FOR THE CERTIFIED LUMBER BANKRUPTCY.

21          THE COURT:  THEN THERE'S NO CALCULATION.

22          MS. HUNT:  RIGHT.

23          MR. HIRSCHHORN:  WELL --

24          THE COURT:  WHAT IS THE OBJECTION THEN?

25          MR. HIRSCHHORN:  I OBJECTED TO THE INCONSISTENCY IN

58

1   THE GOVERNMENT'S POSITION, YOUR HONOR.  AND I PRESUME THAT IF

2   THERE'S GOING TO BE AN ORDER OF RESTITUTION, IT WILL NOT

3   INCLUDE EVEN THE VICTIMS.

4           THE COURT:  THE GOVERNMENT HAS STATED THAT THAT IS

5   THE GOVERNMENT'S POSITION IN THIS SENTENCING.

6           MR. HIRSCHHORN:  ALL RIGHT.

7           THE COURT: LET ME WRITE IN THE MARGIN, DEFENDANT

8   OBJECTS TO RESTITUTION.  THE DEFENDANT OBJECTS TO RESTITUTION.

9   THE GOVERNMENT'S RESTITUTION CALCULATIONS DO NOT INCLUDE THIS

10  MATTER, REFERRING TO PARAGRAPH 81; IS THAT CORRECT, MS. HUNT?

11          MS. HUNT:  YOUR HONOR, THE RESTITUTION FIGURE

12  INCLUDED IN THE PSI WAS NOT OBTAINED FROM THE GOVERNMENT.

13  THAT CAME FROM THE VICTIMS.  THERE HAS NOT BEEN AN OBJECTION,

14  AS I UNDERSTAND IT, TO THE RESTITUTION PARAGRAPH MADE BY ANY

15  OF THE DEFENDANTS, BUT I'M PREPARED TO PRESENT RESTITUTION

16  EVIDENCE.  BUT THE GOVERNMENT, I WAS CAUGHT IN AN UNUSUAL

17  SITUATION WHERE THE RESTITUTION FIGURES CLAIMED BY THE

18  DEFENDANT, BY THE VICTIM WERE NOT OBJECTED TO BY ANY OF THE

19  DEFENDANTS AND I DID NOT OBJECT TO THEM.  BUT IF WE WERE PUT

20  TO TASK TO COMPUTE THE RESTITUTION, I DON'T BELIEVE THE

21  GOVERNMENT WOULD NECESSARILY AGREE WITH WHAT THE VICTIMS'

22  POSITION HERE IS ON THE RESTITUTION AS SET FORTH BY PROBATION.

23          THE COURT:  WELL, I UNDERSTOOD, AM I CORRECT --

24          MS. HUNT:  I'M TALKING ABOUT THE FRAUD LOSS.

25          THE COURT:  -- THAT IS NOT INCLUDED IN THE

1  RESTITUTION FIGURE THAT PROBATION PUT IN HERE.

2          THE PROBATION OFFICER:  THE AMOUNTS REQUESTED, AS A

3  RESULT OF THE CERTIFIED LUMBER FRAUD, WERE NOT INCLUDED AS THE

4  TOTAL LOSSES IN THIS CASE.  WHEN I CONTACTED THE VICTIMS, I

5  ASKED THEM WHAT THE RESTITUTION SHOULD BE.  THEY BASICALLY

6  AGREED THAT IT WAS WHATEVER THE LOSS WAS.  SO WE WENT WITH

7  WHAT THE FIGURE WAS FOR LOSS.  SO THEREFORE --

8          THE COURT:  INSTEAD OF GOVERNMENT'S RESTITUTION

9  CALCULATIONS, I SHOULD PUT PROBATION'S CALCULATIONS.  I'VE

10  WRITTEN IN THE MARGIN BY PARAGRAPH 81, DEFENDANT OBJECTS TO

11  THE RESTITUTION AND THE PROBATION OFFICER'S RESTITUTION

12  CALCULATIONS DO NOT INCLUDE THIS MATTER, SO IT REALLY IS A

13  MOOT ISSUE HERE.  BUT PARAGRAPH 89, I THINK, DOVETAILS WHAT

14  YOU'RE ARGUING.

15          MR. HIRSCHHORN:  ALL RIGHT.  PARAGRAPH 89.

16          THE COURT:  THAT'S THE ADMINISTRATIVE AND JUDICIAL

17  ORDER.  YOU WERE OBJECTING TO THAT.

18          MR. HIRSCHHORN:  YES, JUDGE.  AND I DON'T RECALL A

19  SPECIFIC --

20          THE PROBATION OFFICER:  I MIGHT POINT OUT, YOUR

21  HONOR, MR. WEISS FALLS, IS ONE OF THE DEFENDANTS WHERE THE

22  MONEY LAUNDERING GUIDELINES WILL BE MUCH HIGHER NOW;

23  THEREFORE, THE ISSUE OF ANY ADJUSTMENTS UNDER 2(F)(1.1) WILL

24  HAVE NO EFFECT ON THE OUTCOME.  THAT ENTIRE GROUP.

25          THE COURT:  ARE YOU JUST OBJECTING THEN?

1    MR. HIRSCHHORN:  YOUR HONOR, I'M WITHOUT A CLIENT.

2  I'VE HAD NO CONSULTATION.

3    THE COURT:  GO AHEAD.  YOU NEED TO DO --

4    MR. HIRSCHHORN:  I NEED TO DO SOMETHING.

5    THE COURT:  -- ADDRESS THIS THOROUGHLY.

6    MR. HIRSCHHORN:  I NEED TO DO SOMETHING, I GUESS.

7  YOUR HONOR, I DON'T RECALL A SPECIFIC COURT ORDER.  I KNOW

8  THAT WHEN THE CERTIFIED LUMBER BANKRUPTCY WAS FILED,

9  MR. ROSENBERG WAS UNDER A REQUIREMENT TO PROVIDE TRUTHFUL

10  INFORMATION JUST BY VIRTUE OF THE FORMS THAT ONE FILLS OUT IN

11  BANKRUPTCY COURT.  I DON'T KNOW WHAT JUDICIAL OR

12  ADMINISTRATIVE ORDER THE PROBATION DEPARTMENT IS REFERENCING.

13  I DO NOT RECALL ANY SUCH ORDER BEING --

14    THE COURT:  THIS SHOULD NOT BE 2(F)(1.1)(B)(3).

15  SHOULDN'T IT BE (B)(4)?

16    THE PROBATION OFFICER:  YOUR HONOR, THERE'S A

17  DIFFERENCE IN NUMBERING BECAUSE THESE OFFENSES ALL OCCURRED

18  BEFORE NOVEMBER 1ST, 1998.  THE GUIDELINES --

19    THE COURT:  I NEED A DIFFERENT GUIDELINE BOOK.

20    THE PROBATION OFFICER:  WE USED 1997 GUIDELINES.

21    THE COURT:  DO YOU HAVE THAT WITH YOU?

22    THE PROBATION OFFICER:  I HAVE A COPY OF A PORTION

23  OF IT.

24    THE COURT:  WOULD YOU CHECK THE NUMBER?  IS THAT THE

25  SAME AS THE PRESENT (4) UNDER 2(F)(1.1)?  IF NOT, I NEED TO

1   READ WHAT IT IS.

2           THE PROBATION OFFICER:  AS I LOOK AT IT, YOUR HONOR,

3   IT'S THE SAME.

4           THE COURT:  THEY'RE THE SAME?  SO YOUR ARGUMENT IS

5   THERE WAS NO ORDER VIOLATED?

6           MR. HIRSCHHORN:  CORRECT, JUDGE.  THERE WAS NO

7   SPECIFIC COURT ORDER VIOLATED AS TO MR. WEISS.  THERE'S NONE

8   IN THE RECORD.  I'VE NOT BEEN PROVIDED A COPY WITH ANY SUCH

9   ORDER.

10          MR. ROSENBERG, WHEN MR. ROSENBERG FILED THE

11  CERTIFIED LUMBER AND BUREAU PARK'S PETITIONS FOR BANKRUPTCY,

12  WAS UNDER AN OBLIGATION UNDER PENALTY OF PERJURY, TO FILE

13  TRUTHFUL STATEMENTS, BUT THAT'S A STANDARD FORM.  THAT'S, I

14  THINK, A LITTLE DIFFERENT THAN WHAT WE HAVE HERE.  AND THERE

15  WAS NO EVIDENCE PRESENTED OF A VIOLATION OF A JUDICIAL ORDER

16  AS TO MR. WEISS.

17          THE COURT:  LET ME CUT TO THE CHASE HERE.  I DON'T

18  THINK THAT YOU HAVE TO HAVE AN ORDER REQUIRING TRUTHFUL

19  INFORMATION.  THE CASE LAW SAYS THAT IN A BANKRUPTCY

20  PROCEEDING, TRUTHFUL INFORMATION IS TO BE PROVIDED.  I DON'T

21  HAVE THOSE CASES WITH ME, BUT THERE ARE, IS A BODY OF LAW ON

22  THAT.

23          MY CONCERN IS MORE THAT MR. WEISS, ALTHOUGH THE

24  EVIDENCE PRESENTED SHOWED THAT HE WAS INTIMATELY INVOLVED WITH

25  THE CERTIFIED LUMBER AND BUREAU PARK BANKRUPTCIES AND THE

1  FRAUD THAT WENT, ACCOMPANIED THAT, DID NOT, HIMSELF, SIGN

2  ANYTHING --

3          MR. HIRSCHHORN:  THAT'S CORRECT.

4          THE COURT:  -- OR PARTICIPATE.  SO I DON'T KNOW HOW

5  THIS CAN BE ATTRIBUTED TO HIM, UNLESS THERE'S SOME ARGUMENT

6  ABOUT AIDING AND ABETTING.

7          MS. HUNT:  HE GAVE FALSE DEPOSITION TESTIMONY, YOUR

8  HONOR.

9          THE COURT:  THAT IS CORRECT.

10         MR. HIRSCHHORN:  YOUR HONOR, I SUSPECT, I HAVEN'T

11 SEEN THE ROSENBERG PRE-SENTENCE INVESTIGATION, BUT I SUSPECT

12 MR. ROSENBERG WASN'T TAGGED WITH THOSE TWO POINTS.

13         THE COURT:  NO, HE WASN'T, BECAUSE OF THE WAY HE

14 PLED.  NOT BECAUSE OF THE ARGUMENT YOU'RE MAKING.

15         MS. HUNT:  HE.  WAS, MR. ROSENBERG WAS TAGGED WITH

16 THOSE TWO POINTS, YOUR HONOR.

17         THE COURT:  WITH THE TWO POINTS, NOT FOR THE

18 DEPOSITION, THOUGH.

19         MS. HUNT:  BUT FOR THIS, THIS PROVISION HE WAS.

20         THE COURT:  HE PLED TO THE FALSE STATEMENT.  THAT

21 WAS AN EARLIER FALSE STATEMENT IN THE BANKRUPTCY.  I DON'T

22 HAVE HIS PRE-SENTENCE REPORT.  BUT IT WAS LISTING NATIONAL

23 HERITAGE LIFE INSURANCE COMPANY AS AN UNSECURED CREDITOR.

24         MR. HIRSCHHORN:  JUDGE, I'M WELL AWARE --

25         THE COURT:  -- EARLIER TIME.

63

1    MR. HIRSCHHORN:  I REMEMBER THE FACTS.  I MADE MY
2 ARGUMENT.
3    THE COURT:  OKAY.  HE DID, TO THE EXTENT YOU'RE
4 MAKING AN ARGUMENT THAT HE DIDN'T GET THE TWO LEVELS FOR
5 MAKING A FALSE STATEMENT, HE DID GET THE TWO POINTS.
6    MR. HIRSCHHORN:  I SAID I SUSPECT THAT.  I DIDN'T
7 SAY AFFIRMATIVELY.
8    THE COURT:  I'M GOING TO OVERRULE YOUR OBJECTION TO
9 PARAGRAPH 89.
10    MR. HIRSCHHORN:  THEN I PRESUME YOUR HONOR IS, BASED
11 ON THE GOVERNMENT'S POSITION, THAT THEY CONSTRUE HIS
12 DEPOSITION AS BEING CONSISTENT WITH HIS OBLIGATION.
13    THE COURT:  THE GOVERNMENT CONSTRUES IT AND SO DO I
14 IN THAT REGARD.
15    MR. HIRSCHHORN:  OKAY.
16    THE COURT:  OKAY.
17    MR. HIRSCHHORN:  YOUR HONOR, THE THIRD OBJECTION I
18 RAISED DEALT WITH THE FAILURE TO GROUP THE MONEY LAUNDERING
19 AND THE FRAUD COUNTS.
20    THE COURT:  AND WE NEED TO CHANGE THAT.  LET'S SEE.
21 LET'S GO TO THE OTHER ONES BEFORE WE DEAL WITH THAT.  THAT WAS
22 PARAGRAPH 101 AND 10, TO 106.
23    MR. HIRSCHHORN:  RIGHT.
24    THE COURT:  YOU HAD AN OBJECTION TO PARAGRAPH 113
25 AND 114.

1          MR. HIRSCHHORN:   YOUR HONOR, IT IS IMPOSSIBLE FOR

2    SOMEONE WHO COMMITS A CRIME, GETS CONVICTED AND SENTENCED

3    UNDER OUR FEDERAL, FEDERAL CRIME, TO AVOID BEING PLACED ON

4    SUPERVISED RELEASE FOR ANY PERIOD LESS THAN THE TWO TO THREE

5    YEARS.   THAT'S MANDATED BY FELONIES.   AND THE CRIMINAL HISTORY

6    TAGGING THE DEFENDANT WITH FIVE POINTS OVERSTATES, I SUGGEST,

7    THE CRIMINAL HISTORY, ALTHOUGH IT IS LITERALLY, IT IS A

8    LITERAL AND CORRECT APPLICATION, UNFORTUNATELY, OF THE

9    SENTENCING GUIDELINES.   GIVING MR. WEISS TWO POINTS FOR THE

10   CONVICTION, TWO ADDITIONAL CRIMINAL HISTORY POINTS FOR

11   COMMITTING THE CRIME WHILE ON SUPERVISED RELEASE, AND

12   COMMITTING IT WITHIN TWO YEARS OF RELEASE FROM PRISON, AN

13   ADDITIONAL ONE POINT.

14          I'D ACTUALLY ARGUE, I OBJECT ON THE GROUNDS IT WAS

15   DOUBLE DIPPING, BUT IT SEEMS TO ME IT'S ALMOST TRIPLE DIPPING

16   BECAUSE MR. WEISS WAS ON THREE YEARS SUPERVISED RELEASE AND SO

17   UNLESS HE HAD COMMITTED THAT CRIME AFTER SUPERVISED RELEASE,

18   IT'S ALMOST, I SUGGEST, EXCESSIVE PUNISHMENT IN TERMS OF

19   WHAT'S BEING IMPOSED ON HIM.   AND I SUGGEST, YOUR HONOR, THAT

20   THE CORRECT CRIMINAL HISTORY WOULD BE TWO POINTS FOR THE

21   CONVICTION AND ONE POINT FOR THE COMMISSION OF THE CRIME

22   WITHIN TWO YEARS OF RELEASE FROM PRISON.   BECAUSE OF THE

23   NECESSITY HE WOULD HAVE TO HAVE BEEN ON SUPERVISED RELEASE AT

24   THE SAME TIME, SO HIS CORRECT CRIMINAL HISTORY SHOULD BE

25   THREE, NOT FIVE.

1          THE COURT:  I'M GOING TO OVERRULE THAT OBJECTION.  I

2   THINK THE SENTENCING GUIDELINES ARE STATING A POLICY THAT A

3   DEFENDANT SHOULD LEARN THE LESSON FROM BEING IN PRISON AND

4   THEN ON SUPERVISED RELEASE, AND THAT IF A CRIME COMMITTED

5   WITHIN A SPECIFIED PERIOD OF YEARS, WHICH THE COMMISSION HAS

6   PUT AT TWO, THAT THERE SHOULD BE PUNISHMENT.  A DEFENDANT WHO

7   COMMITS A CRIME WHILE ON SUPERVISED RELEASE, SAY, IN HIS THIRD

8   YEAR AND NOT IN HIS SECOND, WOULD NOT GET THE ADDITIONAL,

9   ADDITIONAL POINTS.  AND I THINK THAT THE SENTENCING GUIDELINES

10  HAVE THOUGHT THAT THROUGH.  IT IS NOT DOUBLE DIPPING, BUT IT

11  IS CERTAINLY ENHANCING FOR BEHAVIOR THAT IS VIEWED AS, AS

12  IMPROPER AND THAT SHOULD BE PUNISHED.  SO I WILL OVERRULE THE

13  OBJECTIONS TO PARAGRAPHS 113 AND 114 OF THE SCORING.

14          MR. HIRSCHHORN:  YOUR HONOR, I WOULD LIKE TO JUST

15  RAISE ONE ADDITIONAL OBJECTION THAT I DID NOT RAISE IN

16  WRITING, BUT IT'S SOMETHING YOU'VE HEARD BEFORE.  AND I WON'T

17  ARGUE IT LONG AND IT DOESN'T REQUIRE ANY EVIDENCE.  I THINK

18  THE COURT CAN DEAL WITH IT.

19          THE AMENDED PRE-SENTENCE INVESTIGATION REDUCED THE

20  LOSS ATTRIBUTED TO MR. WEISS IN PARAGRAPH 75 FROM, I THINK 139

21  MILLION OR 137 MILLION DOWN TO $125,016,656.  AND I CAN'T TELL

22  YOUR HONOR, FROM LOOKING AT THAT, WHETHER THAT PURPORTS TO

23  INCLUDE THE $35 MILLION HOLE, WHICH IS HOW NATIONAL HERITAGE

24  CAME TO MR. WEISS.  WE ALL KNOW FROM THE EVIDENCE IN THE

25  RECORD, HE HAD NOTHING TO DO WITH THE CREATION OF THAT INITIAL

1   HOLE.  AND SO IF THE $125 MILLION LOSS CALCULATION SET OUT IN
2   PARAGRAPH 75 IS INTENDED TO INCLUDE THE $35 MILLION HOLE, AND
3   WE BELIEVE THAT $35 MILLION SHOULD BE SUBTRACTED, AND THE
4   CORRECT LOSS ATTRIBUTED TO MR. WEISS SHOULD BE $90,016,656.
5        AND I'D FURTHER POINT OUT THAT WHILE I'M NOT MAKING
6   THE ARGUMENT ABOUT ANYTHING THAT OCCURRED AFTER MR. WEISS
7   BECAME INVOLVED, AT THE TIME NATIONAL HERITAGE WAS FIRST
8   PRESENTED TO MR. WEISS, AND THE $35 MILLION WAS NOT REVEALED,
9   $35 MILLION HOLE WAS NOT REVEALED TO HIM, WE BELIEVE NATIONAL
10  HERITAGE, BASED ON PATRICK SMYTHE'S TESTIMONY AND EVEN GALE
11  KASMIR'S TESTIMONY WAS, THE FINANCIAL CONDITION OF NATIONAL
12  HERITAGE WAS SEVERELY IMPAIRED.  AND WHILE IT MAY NOT HAVE
13  BEEN INSOLVENT, CERTAINLY ITS CONDITION WAS SEVERELY IMPAIRED
14  AND WE'D NEVER SUGGEST THAT THE INCREASE FOR IMPAIRING THE
15  FINANCIAL STABILITY OF A --
16       THE COURT:  YOU'RE ADOPTING THE OBJECTIONS THAT WERE
17  MADE EARLIER.
18       MR. HIRSCHHORN:  YES, BUT FOR SLIGHTLY DIFFERENT
19  REASONS, JUDGE.  BECAUSE OBVIOUSLY, I HAVE TO, MY OBJECTION
20  HAS TO BE BASED ON WHAT OCCURRED PRIOR TO MR. WEISS'
21  INVOLVEMENT, AND HIS INVOLVEMENT STARTED AFTER THE $35 MILLION
22  HOLE.  SO TO THE EXTENT --
23       THE COURT:  WHAT PARAGRAPH ARE YOU ADDRESSING RIGHT
24  NOW?
25       MR. HIRSCHHORN:  I'M ACTUALLY TALKING ABOUT THE

1  FOUR-LEVEL BUMP FOR --

2           THE COURT:  PARAGRAPH 90.

3           MR. HIRSCHHORN:  YES, JUDGE.

4           THE COURT:  ALL RIGHT.  GOVERNMENT'S RESPONSE?

5  THESE WERE NOT ASSERTED PREVIOUSLY AND FOR THAT REASON, THEY

6  COULD BE DENIED, BUT GO AHEAD.

7           MS. HUNT:  YOUR HONOR, WE TAKE THE SAME POSITION

8  THAT, THE TESTIMONY OF MR. CRAIG HAS ESTABLISHED THAT

9  REGARDLESS OF THE $35 MILLION HOLE, THE SUBSEQUENT CONDUCT OF

10 THESE DEFENDANTS, IN ADDITION TO THE PRIOR CONDUCT, IN ITSELF,

11 JEOPARDIZED THE FINANCIAL INSTITUTION.

12          THE COURT:  THE OBJECTION IS ALSO TO PARAGRAPH 75?

13 TO THE TOTAL LOSS OF $125 MILLION?

14          MR. HIRSCHHORN:  YES, JUDGE.

15          THE COURT:  MS. HUNT?

16          MS. HUNT:  I HAVE THE METHOD, THE GOVERNMENT'S

17 METHOD OF COMPUTATION OF EACH OF THE LOSSES THAT WAS PROVIDED

18 TO PROBATION AND THE COURT, IF YOU WOULD, YOU CAN EITHER MARK

19 THAT AS A GOVERNMENT SENTENCING EXHIBIT OR COURT EXHIBIT, BUT

20 THIS REVEALS IN EACH CASE, PRECISELY HOW WE COMPUTED, WITH THE

21 CITATION TO THE VARIOUS EXHIBITS THAT THE GOVERNMENT RELIES

22 ON.

23          IF THE COURT WANTS, I CAN HAVE MR. HEINEMANN TESTIFY

24 ABOUT HOW THESE FIGURES CAME ABOUT, BUT I THINK WITH THE

25 CITATION TO THE RECORD EXHIBITS, IT'S PRETTY CLEAR HOW.

68

1      THE COURT:  THIS SHOULD BE GOVERNMENT'S ONE.

2      MS. HUNT:  OKAY.

3      THE COURT:  AND IS A COPY IN THE HANDS OF MR. DALE

4  AND --

5      MS. HUNT:  YES.  WE JUST SERVED IT, YOUR HONOR.  I

6  HAVE A STICKER HERE.

7      THE DEPUTY CLERK:  I'VE GOT IT.

8      THE COURT:  SO NOW, THE $35 MILLION YOU'RE, IS

9  THAT --

10     MR. HIRSCHHORN:  MY ONLY QUESTION --

11     THE COURT:  AND THE 89 MILLION.

12     MR. HIRSCHHORN:  IS WHETHER THE 35 MILLION IS

13  INCLUDED IN THE 89 MILLION.

14     MS. HUNT:  THE $89 MILLION IS THE AMOUNTS THAT WERE

15  SENT TO MS. SCHNEIDERMAN IN 1993 AND THE $6,400,000 I BELIEVE

16  IS ALSO INCLUDED THAT WAS SENT FOR THE TUDOR CITY PURCHASE AND

17  THAT IS THE, HOW THE 89 --

18     THE COURT:  35 MILLION IS NOT INCLUDED.

19     MS. HUNT:  RIGHT.

20     MR. HIRSCHHORN:  OKAY.

21     THE COURT:  ALL RIGHT.  IT APPEARS THAT THE

22  OBJECTION TO PARAGRAPH 75 IS MOOT, AND I WILL OVERRULE THE

23  OBJECTION TO PARAGRAPH 90.

24     WE NEED, THEN, TO DEAL WITH THE GROUPING IN

25  PARAGRAPHS 101 TO 106.

1    MR. HIRSCHHORN:  YES, JUDGE.

2    THE COURT:  IS PROBATION READY TO DO THAT OR DO YOU

3 NEED A BREAK?

4    THE PROBATION OFFICER:  YOUR HONOR, I BELIEVE BASED

5 ON YOUR RULING, THAT THE COUNTS ARE TO BE GROUPED TOGETHER.

6 THE FIRST CHANGE WOULD BE TO PARAGRAPH 85.  THIRD SENTENCE

7 THERE, I BELIEVE, SHOULD BE DELETED.  THE UNDERLYING FRAUD AND

8 THEFT OFFENSES AND THE MONEY LAUNDERING OFFENSES REPRESENT

9 SEPARATE CRIMES AND DIFFERENT VICTIMS.  THAT SHOULD BE

10 DELETED.

11    THE COURT:  I WILL JUST STATE THERE THAT THEY ARE

12 GROUPED.  AND THEN WOULD THE LAST SENTENCE BE DELETED?

13    THE PROBATION OFFICER:  THE LAST SENTENCE IS STILL

14 CORRECT, YOUR HONOR, BECAUSE THE GUIDELINE PRODUCING THE

15 HIGHEST OFFENSE LEVEL WAS APPLIED TO THE OFFENSES OF THE SAME

16 TYPE, MEANING I APPLIED 2(S)(1.1) AS OPPOSED TO 2(S)(1.2) TO

17 THE MONEY LAUNDERING COUNTS.

18    THE COURT:  ALL RIGHT.

19    THE PROBATION OFFICER:  THEN PARAGRAPHS 86 THROUGH

20 94 WOULD BE DELETED, BECAUSE THOSE ARE FRAUD GUIDELINES, AND

21 FRAUD GUIDELINES WOULD NOT APPLY.

22    THE COURT:  ALL RIGHT.

23    THE PROBATION OFFICER:  THE CAPTION STATING "GROUP

24 TWO" IS NO LONGER APPROPRIATE, SO THAT COULD BE DELETED ALSO.

25    THE COURT:  SO ALL OF PAGE 38 IS DELETED.

1    THE PROBATION OFFICER:  NO, YOUR HONOR.  PARAGRAPHS

2  95 THROUGH 100 ARE CORRECT.  THEY SIMPLY DO NOT NEED THE

3  HEADING "GROUP TWO" BECAUSE THERE'S ONLY ONE GROUP NOW.

4    THE COURT:  JUST DELETE "GROUP TWO."

5    THE PROBATION OFFICER:  YES.  JUST THE HEADING THAT

6  SAYS "GROUP TWO."

7    THE COURT:  ALL RIGHT.

8    THE PROBATION OFFICER:  WHICH LEAVES US WITH AN

9  ADJUSTED OFFENSE LEVEL OF 42 AT THE BOTTOM OF PAGE 38.  THEN

10  PARAGRAPHS 101 THROUGH 106 WOULD BE DELETED.

11    THE COURT:  JUST A MOMENT.  I NEED WHITEOUT.

12  MISTAKEN LINE I PUT IN HERE.  OKAY.  PARAGRAPH 101 TO WHAT?

13    THE PROBATION OFFICER:  106.

14    THE COURT:  ARE DELETED?

15    THE PROBATION OFFICER:  DELETED.

16    THE COURT:  DELETED?

17    THE PROBATION OFFICER:  YES.

18    THE COURT:  ALL RIGHT.

19    THE PROBATION OFFICER:  PARAGRAPH 108 WOULD BE

20  DELETED.

21    THE COURT:  PARDON ME?

22    THE PROBATION OFFICER:  108 WOULD BE DELETED.

23  PARAGRAPH 109 IS NOW 42.

24    THE COURT:  ALL RIGHT.

25    THE PROBATION OFFICER:  PARAGRAPH 147, ON PAGE 46

1  SHOULD NOW READ, "BASED UPON A TOTAL OFFENSE LEVEL OF 42 AND A
2  CRIMINAL HISTORY CATEGORY OF ROMAN NUMERAL THREE, THE
3  GUIDELINE IMPRISONMENT RANGE IS 360 MONTHS TO LIFE."
4           THE COURT:  ALL RIGHT.
5           THE PROBATION OFFICER:  I BELIEVE THAT'S THE ONLY
6  CHANGE.
7           THE COURT:  ANY OTHER OBJECTIONS, MR. HIRSCHHORN?
8           MR. HIRSCHHORN:  NO, YOUR HONOR.  EXCEPT I WANT TO
9  PUT ON THE RECORD, OBVIOUSLY, I HAVE BEEN HAMPERED BY MY
10  ABILITY TO MAKE MORE EXTENSIVE OBJECTIONS BY MY CLIENT'S
11  ABSENCE.
12           THE COURT:  YES, YOUR CLIENT SHOULD BE HERE.  HE
13  SHOULD HAVE FILED THAT.  THERE'S NO PROVISION UNDER THE LAW
14  THAT, WHAT LIFE IS, IS THERE?
15           THE PROBATION OFFICER:  NOT THAT I'M AWARE OF, YOUR
16  HONOR.  IT WOULD SIMPLY BE A TOTAL OF --
17           THE COURT:  EXCUSE ME?
18           THE PROBATION OFFICER:  WE'VE BEEN INFORMED THAT THE
19  BEST TERMINATION IS TO SIMPLY RUN ALL OF THE MAXIMUM TERMS
20  TOGETHER, TO COME UP WITH WHAT THE MAXIMUM SENTENCE COULD
21  POSSIBLY BE.
22           THE COURT:  WHO TOLD YOU THAT?  THE PROBATION, THE
23  GUIDELINE?
24           THE PROBATION OFFICER:  YES.  MY CONTACTING THE
25  SENTENCING COMMISSION.

72

1        THE COURT:  HAVE YOU FOUND ANY LAW ON WHAT LIFE IS

2  IN PRISON?

3        MR. HIRSCHHORN:  ON WHAT LIFE IS?

4        THE COURT:  UNDER A CALCULATION WHEN THE GUIDELINES

5  END AT LIFE.

6        MR. HIRSCHHORN:  NO.  IT'S BEEN AN ISSUE THAT HAS

7  BEEN DISCUSSED WITH ME BY SEVERAL OF MY COLLEAGUES WHOSE

8  OPINIONS I RESPECT AND NO ONE SEEMS TO KNOW WHAT THE ANSWER TO

9  THAT IS.  ESPECIALLY IN VIEW OF THE FACT THE GOVERNMENT HAS

10  FILED A MOTION FOR UPWARD DEPARTURE.

11        THE COURT:  WE SHALL DEAL WITH THAT IN A MOMENT.

12        MS. HUNT, HAVE YOU FOUND ANY LAW ON THAT POINT?

13        MS. HUNT:  NO, I DIDN'T RESEARCH THE LAW BECAUSE I

14  THOUGHT THAT A LIFE SENTENCE WAS SIMPLY A LIFE SENTENCE.  THAT

15  THAT MEANT FOR THE REST OF LIFE.  NOW, THAT IS WHAT I

16  BELIEVED, BUT MAYBE I'M WRONG.

17        MR. HIRSCHHORN:  THERE'S NO SINGLE --

18        THE COURT:  I THINK IT'S IMPROPER TO SAY LIFE IN

19  PRISON, WHEN YOU HAVE ANYTHING LESS THAN THE FINAL 43 FOR THE

20  GUIDELINE.  YOU NEED TO DO A CALCULATION.

21        MS. HUNT:  WHEN THE UPPER END OF THE GUIDELINE AT 42

22  SAYS LIFE?

23        THE COURT:  RIGHT.  YOU NEED TO DO A CALCULATION.

24  BECAUSE I MEAN, THEORETICALLY, THIS IS AN IMPOSSIBILITY --

25  THERE'S A MAXIMUM AMOUNT OF YEARS FOR EACH COUNT, BUT THERE IS

1  A MAXIMUM --

2          MS. HUNT:  YOU'RE SAYING IF WE SHOULD TAKE ALL THE

3  STATUTORY MAXIMUMS AND ADD THEM UP, AND MAKE THEM ALL

4  CONSECUTIVE, AS PROBATION WAS SAYING.

5          THE COURT:  THAT IS WHAT I'M SAYING YOU WOULD HAVE

6  TO DO, ABSENT SOME LAW THAT TELLS YOU WHAT LIFE IS.  YOU WOULD

7  HAVE TO TAKE THE STATUTORY MAXIMUMS AND NOT EXCEED THAT, AS

8  OPPOSED TO SAYING LIFE IN PRISON.

9          MR. HIRSCHHORN:  YOUR HONOR, CLEARLY, WHERE THERE'S

10 NO INDIVIDUAL CRIMINAL STATUTE THAT THE DEFENDANT HAS BEEN

11 CONVICTED OF WHICH CARRIES A MAXIMUM PENALTY OF LIFE

12 IMPRISONMENT --

13         THE COURT:  THAT'S MY POINT.

14         MR. HIRSCHHORN:  THE COURT HAS, I PRESUME, FASHIONED

15 SOME ALTERNATIVE TO WHICH I'M GOING TO OBJECT.

16         THE COURT:  I WOULD EXPECT YOU TO, MR. HIRSCHHORN.

17         ALL RIGHT.  IF THERE ARE NO OTHER OBJECTIONS, I WILL

18 DEAL WITH THE GOVERNMENT'S MOTION FOR UPWARD DEPARTURE AT

19 DOCKET ENTRY 1340.

20         MS. HUNT?

21         MR. HIRSCHHORN:  BEFORE THE GOVERNMENT ARGUES IT,

22 CAN I OBJECT ON THE GROUNDS OF TOO MUCH TO LATE?  I DIDN'T GET

23 THIS MOTION.  IT WAS MAILED TO MY OFFICE AND RECEIVED ON

24 FEBRUARY 11TH WITH MY AFTERNOON MAIL.  I DIDN'T FILE A

25 RESPONSE TO IT.  I THINK THAT THE GOVERNMENT HAS HAD MONTHS TO

1  THINK ABOUT THIS, AND THEY CERTAINLY HAVE HAD A SUFFICIENT

2  TIME, SINCE THE PRE-SENTENCE INVESTIGATION WAS COMPLETED, TO

3  PRESENT IT.  AND MY OBJECTIONS WERE RAISED AND ALL DENIED BY

4  THE PROBATION DEPARTMENT TO DO THIS.  TO WAIT UNTIL FOUR DAYS

5  BEFORE SENTENCING, INCLUDING THE WEEKEND, AN INTERVENING

6  WEEKEND, I THINK IS INHERENTLY UNFAIR AND UNSEEMINGLY OF THE

7  GOVERNMENT.

8          THE COURT:  ALL RIGHT.  MR. HIRSCHHORN, I'M GOING TO

9  GO AHEAD AND HEAR THE MOTION.  IT COULD BE DENIED ON THE

10 GROUNDS OF BEING UNTIMELY, BUT I LISTENED TO YOUR OBJECTIONS

11 TO PARAGRAPH 75 AND 90 --

12          MR. HIRSCHHORN:  DIFFERENT --

13          THE COURT:  -- THOUGH DEFINITELY UNTIMELY.

14          MR. HIRSCHHORN:  DIFFERENT REASONS, THOUGH, JUDGE.

15 AND ALSO DIFFERENT STANDARDS AND ALSO, I'M BURDENED BY

16 SOMETHING THAT THE GOVERNMENT IS NOT --

17          THE COURT:  MS. HUNT, I REVIEWED THE MOTION.  IS

18 THERE ANYTHING IN ADDITION YOU WANT TO PRESENT?

19          MS. HUNT:  JUST BRIEFLY, YOUR HONOR, I WOULD LIKE TO

20 ADDRESS IT.

21          IN THE FIRST PLACE, THE CERTIFICATE OF SERVICE SHOWS

22 IT WAS SERVED ON FEBRUARY 7TH.  IF IT TOOK FOUR DAYS TO GET TO

23 MIAMI, AGAIN, I'M NOT RESPONSIBLE FOR THE UNITED STATES MAIL.

24 BUT THIS WAS NOT UNTIL AFTER THE AMENDED PSI WAS DONE THAT,

25 THAT IT WAS CLEAR AS TO WHETHER THE FILING OF THIS MOTION

1  WOULD BE NECESSARY.

2          YOUR HONOR, I BELIEVE THAT WE HAVE SET FORTH IN

3  HERE, AND OF COURSE, THE COURT HEARD THE EVIDENCE ABOUT A

4  SHOCKING --

5          THE COURT:  YOU DON'T NEED TO REPEAT WHAT'S IN THE

6  MOTION.

7          MS. HUNT:  ALL RIGHT.  BECAUSE THE GUIDELINE ENDED

8  UP AT 42, IT WILL NOT BE NECESSARY FOR THE COURT TO DEPART

9  UPWARD TO GIVE THE GOVERNMENT THE RELIEF IT SOUGHT.  SO I

10  DON'T KNOW THAT, I BELIEVE ACTUALLY I COULD WITHDRAW THE

11  MOTION FOR AN UPWARD DEPARTURE AT THIS POINT, AND MAKE IT

12  INSTEAD, A REQUEST THAT THE COURT SENTENCE AT THE HIGHEST END

13  OF THE GUIDELINE THAT'S BEEN FOUND APPLICABLE, WHICH AS I

14  UNDERSTAND WE'RE GOING TO HAVE TO CALCULATE WHAT THE MAXIMUM

15  STATUTORY PENALTIES ARE FOR EACH OF THE COUNTS.  AND SO LET ME

16  AMEND IT AND PUT IT IN THAT NOW, INSTEAD OF --

17          THE COURT:  THAT GETS INTO MATTERS OF MITIGATION AND

18  AGGRAVATION.  I'M GOING TO MAKE SHORT SHRIFT OF THIS.  I WILL

19  DENY THE MOTION FOR UPWARD DEPARTURE.

20          NOW, IS THERE ANY REASON I SHOULD NOT IMPOSE

21  SENTENCE AT THIS TIME, OTHER THAN THE ABSENCE OF YOUR CLIENT?

22          MR. HIRSCHHORN:  THAT'S THE ONLY LEGAL REASON I

23  KNOW, JUDGE.

24          THE COURT:  DO YOU WISH TO MAKE A STATEMENT IN

25  MITIGATION?

1        MR. HIRSCHHORN:  YOUR HONOR, I NOTICE THERE ARE MANY
2    PEOPLE IN THIS COURTROOM.  I HAVE NO IDEA IF ANYONE IS A
3    REPRESENTATIVE OF MR. WEISS' FAMILY OR NOT.  I'VE NOT BEEN
4    CONTACTED BY ANY MEMBERS WHO ARE REPRESENTATIVE OF MR. WEISS'
5    FAMILY FOR, TO ENABLE ME TO PRESENT INFORMATION IN MITIGATION,
6    SO I'M SEVERELY HAMPERED IN MY ABILITY TO DO SO.
7        IN 33 YEARS OF PRACTICING LAW, I'VE NEVER HAD THIS
8    SITUATION.  I'VE NEVER NOT ALLOCUTED ON BEHALF OF ANY CLIENT.
9    AND I'M ALSO RELUCTANT TO ALLOCUTE BECAUSE THROUGHOUT THE
10   TRIAL, MR. WEISS DROVE THE STRATEGY, EITHER AS A RESULT OF HIS
11   OWN IDEAS OR IN CONSULTATION WITH OTHERS; MOST FREQUENTLY NOT
12   IN CONSULTATION WITH ME.  CONSEQUENTLY, THE ONLY POINT I CAN
13   MAKE IN MITIGATION, EVEN IN MR. WEISS' ABSENCE, IS THAT WHILE
14   THE AMOUNT OF THE LOSS IS TREMENDOUS AND THE AMOUNT OF VICTIMS
15   WHO HAVE SUFFERED AND THE AMOUNT THAT THESE VICTIMS WILL
16   SUFFER IS REALLY DIFFICULT TO DEFINE, BUT WE RECOGNIZE
17   CONSIDERABLE.
18       TO IMPOSE, IN ESSENCE, CONSECUTIVE SENTENCES WHICH
19   WOULD AMOUNT TO 30, 40, MORE THAN 30 YEARS IN PRISON, 40, 50,
20   60 YEARS IN PRISON FOR A CRIME OF THIS NATURE, I RESPECTFULLY
21   SUGGEST, OVERSTATES WHAT WE'RE TRYING TO DO IN THIS COUNTRY.
22   I KNOW WE'RE TRYING TO ELIMINATE CRIME, BUT WE'LL NEVER
23   ELIMINATE GREED.  THIS IS A MATTER OF HUMAN NATURE AND YOU
24   CANNOT LEGISLATE GREED OUT BY SENTENCING.
25       MR. WEISS' CONDUCT AS A BUSINESSMAN IS NOT ONE THAT

1  WOULD BE HELD UP TO THE HARVARD BUSINESS SCHOOL MODEL, BUT BY
2  THE SAME TOKEN, HIS CONDUCT DID INVOLVE MONEY, NOT MURDER.
3  THE WEAPON WAS THE PEN, YES, AND I CAN SEE THAT WEAPON CAN
4  OFTENTIMES BE A VERY DANGEROUS WEAPON.  BUT FORTUNATELY, NO
5  ONE DIRECTLY LOST THEIR LIVES AS A RESULT OF MR. WEISS'
6  CONDUCT OF WHICH HE HAS BEEN CONVICTED.
7          I DO CONCEDE THAT THE GOVERNMENT'S EVIDENCE SUPPORTS
8  THE PROPOSITION THAT MR. WEISS HAD A TREMENDOUS INFLUENCE OVER
9  A NUMBER OF PEOPLE, FOR WHATEVER THOSE REASONS WERE.  I ASK
10 THE COURT THAT WHEN THE COURT IMPOSES ITS SENTENCE, THAT YOU
11 CONSIDER IMPOSING A SENTENCE TO SOMETHING LESS THAN WHAT WOULD
12 AMOUNT TO A LIFE IN PRISON FOR MR. WEISS.  HE WAS, I THINK, 45
13 YEARS OLD THE LAST TIME I SAW HIM.
14         I'M NOT ASKING TO REWARD HIM FOR HIS HAVING
15 ABSCONDED.  I'M SIMPLY ASKING YOU TO IMPOSE A SENTENCE THAT
16 DOES NOT LITERALLY MEAN LIFE.  I THINK MR. WEISS PROBABLY HAS
17 A LIFE EXPECTANCY, IF HE'S IN GOOD HEALTH, OF SOME ADDITIONAL
18 40 YEARS.  MAYBE A LITTLE LESS.  SO I SUGGEST ANY SENTENCE IN
19 EXCESS OF THE 360 MONTHS WOULD BE PUSHING THE BEGINNING OF A
20 LIFE SENTENCE FOR HIM.  THANK YOU.
21         THE COURT:  ALL RIGHT.  THANK YOU.  AND FROM THE
22 GOVERNMENT?
23         MS. HUNT:  YOUR HONOR, IN THIS CASE, OVER THE LAST
24 FOUR OR FIVE YEARS, THE VERY TALENTED AGENTS AND CO-COUNSEL
25 I'VE WORKED WITH, WE'VE HAD THE EXPERIENCE OF DEALING WITH A

78

1 HUGE NUMBER OF SCOUNDRELS.  THERE ARE MANY PEOPLE WHO WERE
2 INVOLVED IN THIS CASE WHO WERE CORRUPT AND WHO WERE GREEDY.
3 BUT IN ALL OF OUR INVESTIGATION, IN TALKING TO OUR WITNESSES,
4 CONSISTENTLY, THE ONLY ONE WHO HAS BEEN REPEATEDLY DESCRIBED
5 AS EVIL IS SHOLAM WEISS.
6          THE MAN'S CORRUPTION TRULY KNEW NO END.  HE
7 CORRUPTED -- AS MR. BLUTRICH AND MR. PFEFFER SOUGHT OUT
8 LIKE-MINDED CRIMINALS TO JOIN, MR. WEISS INDUCED PEOPLE WHO
9 REALLY HAD NO PRE-DISPOSITION TO CRIMINAL ACTIVITY TO JOIN HIS
10 CRIMINAL CONSPIRACY.  LAWYERS, FRIENDS, COLLEAGUES.  PEOPLE,
11 WHO FOR WHATEVER INEXPLICABLE REASON, ADMIRED THIS MAN AND HE
12 CORRUPTED THEM.  MR. SHAFFRON TOLD ME THE MAN STEALS SOULS.
13          YOUR HONOR, TO THE EVERY END, MR. WEISS, KNOWING OF
14 HIS MASSIVE INVOLVEMENT IN THESE HUGE CRIMES, PUT THE
15 GOVERNMENT TO A NINE-MONTH TEST.  ARROGANTLY LYING -- HE
16 REPEATEDLY GAVE HIS ATTORNEY BOGUS STORIES ABOUT TAPES,
17 CAUSING HIM TO CREATE DISCOVERY ISSUES WHEN MR. WEISS HELD
18 THEM.  HE PERJURED HIMSELF.  HE BROUGHT PERJURED TESTIMONY IN
19 THE FACE OF TWO OF HIS BOUGHT WITNESSES.  HIS DISPLAY OF
20 ATTEMPTING TO OBSTRUCT JUSTICE IN THIS CASE IS BEYOND
21 ANYTHING, I BELIEVE ANYONE IN THIS COURT, INCLUDING YOUR
22 HONOR, HAS OR WILL EVER SEE IN OUR LIVES.
23          IF THERE IS ANYONE WHO DESERVES THE MAXIMUM PENALTY
24 FOR THE NATIONAL HERITAGE FRAUD, IT IS SHOLAM WEISS AND WE ASK
25 THE COURT TO IMPOSE IT.

1    THE COURT:  THE COURT WILL ADOPT THE FACTUAL
2  STATEMENTS CONTAINED IN THE PRE-SENTENCE REPORT AS TO WHICH
3  THERE'S NO OBJECTION, AND AS TO CONTROVERTED FACTUAL
4  STATEMENTS, THE COURT WILL ADOPT THE POSITION OF THE PROBATION
5  OFFICE AS STATED IN THE ADDENDUM OR AS NOTED BY THE COURT ON
6  THE PRE-SENTENCE REPORT.
7    AND TO MAKE CLEAR, THE OBJECTION TO PARAGRAPH 81 I
8  VIEW AS A MOOT ISSUE.  THEREFORE, THE APPLICABLE GUIDELINES
9  ARE TOTAL OFFENSE LEVEL 42, CRIMINAL HISTORY CATEGORY THREE,
10  WHICH PROVIDES FOR 360 MONTHS TO LIFE IMPRISONMENT.  HOWEVER,
11  THE STATUTORY MAXIMUM FOR THE COUNTS IS 865 YEARS; IS THAT
12  CORRECT?
13    THE PROBATION OFFICER:  THAT'S CORRECT, YOUR HONOR.
14    THE COURT:  THAT IS TO BE FOLLOWED BY TWO TO THREE
15  YEARS OF SUPERVISED RELEASE; RESTITUTION OF $125,016,656; A
16  FINE RANGE OF 25 -- I CAN'T UNDERSTAND WHAT THAT IS.  IT'S 25,
17  COMMA, AND FOUR ZEROS.
18    THE PROBATION OFFICER:  25,000.
19    THE COURT:  25,000.  FINE RANGE OF $25,000 TO
20  $123,399,910 AND A SPECIAL ASSESSMENT OF $4 MILLION -- EXCUSE
21  ME.  OF $4,050.  THAT'S 4,050.
22    THE COURT HAVING ASKED DEFENDANT WHY JUDGMENT SHOULD
23  NOT NOW BE PRONOUNCED, AND NO CAUSE TO THE CONTRARY APPEARING
24  TO THE COURT, AND THE DEFENDANT AND HIS ATTORNEY HAVING BEEN
25  GIVEN AN OPPORTUNITY TO MAKE A STATEMENT ON HIS BEHALF -- AND

1  I NOTE HERE THAT HAD MR. WEISS APPEARED, HE WOULD'VE BEEN
2  GIVEN THAT OPPORTUNITY -- THE COURT HAVING REVIEWED THE
3  PRE-SENTENCE REPORT, AND PURSUANT TO THE SENTENCING REFORM ACT
4  OF 1984, IT IS THE JUDGMENT OF THE COURT THAT THE DEFENDANT,
5  SHOLAM WEISS, IS HEREBY COMMITTED TO THE CUSTODY OF THE BUREAU
6  OF PRISONS TO BE IMPRISONED FOR A TERM OF 845 YEARS.
7          THIS TERM SHALL CONSIST OF TERMS OF 20 YEARS AS TO
8  EACH OF COUNTS ONE AND TWO, WHICH TERMS WILL RUN CONCURRENT
9  WITH ONE ANOTHER BUT CONSECUTIVE TO ALL OTHER COUNTS.  AND
10 TERMS OF TWENTY YEARS AS TO EACH OF COUNTS 40 THROUGH 49, 64
11 TO 71 AND 81 TO 83; TERMS OF TEN YEARS AS TO EACH OF COUNTS
12 11, 12, 14 THROUGH 31, 37 THROUGH 39, 84 TO 35 AND 93; AND
13 TERMS OF FIVE YEARS AS TO EACH OF COUNT 3 THROUGH 10, 32
14 THROUGH 36, 72 THROUGH 80, 86 THROUGH 90 AND 91 THROUGH 92.
15 ALL SUCH TERMS TO RUN CONSECUTIVE TO ONE ANOTHER AND
16 CONSECUTIVE TO COUNT ONE AND TWO.
17          IN OTHER WORDS, THE TWO COUNTS THAT WOULD BE
18 CONCURRENT ARE ONLY COUNT ONE AND TWO, AND THE REST ARE
19 CONSECUTIVE.
20          IF THERE IS RELEASE FROM IMPRISONMENT, WHICH BY THIS
21 SENTENCE THE COURT DOES NOT INTEND, DEFENDANT WILL BE PLACED
22 ON SUPERVISED RELEASE FOR A TERM OF THREE YEARS, DURING WHICH
23 TIME HE SHALL COMPLY WITH THE STANDARD CONDITIONS ADOPTED BY
24 THE COURT IN THE MIDDLE DISTRICT OF FLORIDA.
25          AND HE SHALL REFRAIN FROM ANY UNLAWFUL USE OF A

 1  CONTROLLED SUBSTANCE.  DEFENDANT SHALL SUBMIT TO ONE DRUG TEST
 2  WITHIN 15 DAYS OF PLACEMENT ON SUPERVISED RELEASE AND AT LEAST
 3  TWO PERIODIC DRUG TESTS THEREAFTER AS DIRECTED BY HIS
 4  PROBATION OFFICER.
 5          IT IS FURTHER ORDERED THAT DEFENDANT SHALL PAY TO
 6  THE UNITED STATES A FINE OF $123,399,910 WHICH IS DUE
 7  IMMEDIATELY.
 8          DEFENDANT SHALL PAY TO THE UNITED STATES A SPECIAL
 9  ASSESSMENT OF $4,050, WHICH IS DUE IMMEDIATELY.
10          THE MANDATORY RESTITUTION PROVISIONS OF 18, UNITED
11  STATES CODE SECTION 3663(A) APPLY IN THIS CASE.  DEFENDANT
12  SHALL MAKE RESTITUTION TO DONNA LEE WILLIAMS, COMMISSIONER OF
13  INSURANCE FOR THE STATE OF DELAWARE, AS A RECEIVER FOR
14  NATIONAL HERITAGE LIFE INSURANCE COMPANY IN LIQUIDATION, 950
15  SOUTH WINTER PARK DRIVE, SUITE 200, CASSELBERRY, FLORIDA,
16  32707.  ATTENTION TERRY CRAIG, IN THE AMOUNT OF $125 --
17  $125,000.
18          MR. HIRSCHHORN:  MILLION.
19          THE COURT:  $125,016,656 WHICH IS DUE IMMEDIATELY.
20          RESTITUTION SHALL BE PAID JOINTLY AND SEVERALLY.
21          DEFENDANT SHALL FORFEIT TO THE UNITED STATES THOSE
22  ASSETS PREVIOUSLY IDENTIFIED AS SUBJECT TO FORFEITURE.
23          TO THE EXTENT THE LAW VIEWS THE GUIDELINE RANGE AS
24  EXCEEDING 24 MONTHS, THE REASON OR REASONS FOR IMPOSING THE
25  SENTENCE ARE THE MAGNITUDE AND REPEATED FRAUDULENT ACTS OF

1  THIS DEFENDANT FOR WHICH HE SHOULD BE REMOVED PERMANENTLY FROM
2  SOCIETY.   THE COURT FEELS THE SENTENCE MEETS THE GOALS OF
3  TITLE 18, UNITED STATES CODE SECTION 3553.
4         I HAVE SOME CONCERN ABOUT IMPOSING A SENTENCE IN
5  YEARS AT THE RANGE THAT I HAVE IMPOSED IT, THAT THAT WOULD
6  BRING DISRESPECT TO THE LAW, BUT IN THE ABSENCE OF SOME
7  DEFINITION OF WHAT LIFE IN PRISON MEANS, AND BECAUSE THERE IS
8  A LIMIT ON THE AMOUNT OF TIME THE DEFENDANT, TO WHICH THE
9  DEFENDANT CAN BE SENTENCED AND LIFE IS NOT, LIFE IN PRISON IS
10 NOT ONE OF THE OPTIONS, I FEEL THAT THAT IS THE APPROPRIATE
11 WAY TO PRONOUNCE THIS SENTENCE.   THE INTENT OF THE COURT WOULD
12 BE THAT THE DEFENDANT NOT BE RELEASED FROM INCARCERATION
13 DURING HIS NATURAL LIFE.
14         THERE'S NO REASON TO DEPART FROM THE SENTENCE CALLED
15 FOR BY APPLICATION OF THE GUIDELINES, AS THE FACTS AS FOUND
16 ARE OF THE KIND CONTEMPLATED BY THE SENTENCING COMMISSION.
17         THE DEFENDANT IS A FUGITIVE.   ON HIS CAPTURE, HE
18 SHALL BE REMANDED TO THE CUSTODY OF THE UNITED STATES MARSHAL
19 TO AWAIT DESIGNATION BY THE BUREAU OF PRISONS.
20         IS THERE OBJECTION TO THE SENTENCE OR TO THE MANNER
21 IN WHICH IT WAS PRONOUNCED?
22         MR. HIRSCHHORN:   YOUR HONOR, I OBJECT TO THE
23 SENTENCE.   I OBJECT TO BEING SENTENCED IN ABSENTIA; I OBJECT
24 TO THE LENGTH OF THE SENTENCE.   I DO NOT OBJECT TO THE
25 PROCEEDINGS AS, I DON'T KNOW WHAT EXACTLY IS MEANT BY THE

1  MANNER IN WHICH IT WAS -- YOU PRONOUNCED IT VERY PLEASANTLY,

2  BUT I DON'T KNOW WHAT YOU MEAN BY THE MANNER.  I DIDN'T THINK

3  IT WAS --

4          THE COURT:  I DID THIS BEFORE THE APPELLATE COURT

5  STARTED SUGGESTING DOING IT, AND IT IS SO THAT IF THERE'S AN

6  ERROR THAT I CAN CORRECT HERE, THAT YOU BRING IT TO MY

7  ATTENTION.

8          MR. HIRSCHHORN:  WELL, I --

9          THE COURT:  SO IF THERE IS SOME, FOR INSTANCE, I

10  DIDN'T GIVE YOU THE OPPORTUNITY TO MAKE AN OBJECTION, OR THERE

11  WAS SOME MATTER YOU WANTED TO PRESENT THAT I DIDN'T LET YOU DO

12  IT, YOU SHOULD TELL ME NOW OR ANYTHING ELSE.

13          MR. HIRSCHHORN:  I DID CORRECT, I THOUGHT YOU WERE

14  TRYING TO IMPOSE $125,000 IN RESTITUTION.

15          THE COURT:  YES.  YOU HELPED ME THERE.  THANK YOU.

16          MR. HIRSCHHORN:  I'M SURE I'LL PAY FOR THAT IN THE

17  FUTURE.

18          THE COURT:  EVENTUALLY WOULD'VE GOTTEN IT CORRECTLY.

19          MR. HIRSCHHORN:  YOUR HONOR, I REQUEST THAT THE

20  COURT CONSIDER DESIGNATING THE DEFENDANT TO, RECOMMENDING TO

21  THE BUREAU OF PRISONS HE BE DESIGNATED TO A FACILITY

22  CONSISTENT WITH YOUR SENTENCE THAT'S CLOSEST TO THE HOME OF

23  HIS RESIDENCE, THE STATE OF HIS RESIDENCE, WHICH IS NEW YORK.

24          THE COURT:  I'VE STOPPED MAKING THOSE DESIGNATIONS.

25  IS THERE ANY OTHER OBJECTION?

84

1          MR. HIRSCHHORN:  NO, YOUR HONOR.

2          THE COURT:  DOES THE GOVERNMENT HAVE AN OBJECTION?

3          MS. HUNT:  YOUR HONOR, FOR THE RECORD, I BELIEVE WE,

4   UNTIL OUR APPELLATE DIVISION DECIDES WHAT WE SHOULD DO, NEED

5   TO OBJECT TO THE GROUPING DECISION.

6          THE COURT:  ALL RIGHT.

7          MR. HIRSCHHORN:  YOUR HONOR, BEFORE THE COURT, I

8   HAVE, I HAVE A MOTION TO WITHDRAW AS COUNSEL OF RECORD IN THIS

9   CASE IN THIS COURT.

10         THE COURT:  WELL, IT WOULD BE HANDLED BY THE

11  MAGISTRATE JUDGE, NOT BY ME.  SO IF YOU FILE IT, THAT'S,

12  THAT'S WHERE YOU SHOULD GO.  LET ME FINISH WITH THE

13  SENTENCING.

14         MR. HIRSCHHORN, DID YOU RECEIVE THE ACKNOWLEDGMENT

15  OF RIGHT TO APPEAL FORM?

16         MR. HIRSCHHORN:  NO.

17         THE COURT:  YOU DID NOT?

18         MR. HIRSCHHORN:  I'M FAMILIAR WITH IT.

19         THE COURT:  I'LL GIVE YOU A MINUTE TO READ IT.

20         MR. HIRSCHHORN:  YES, JUDGE, I'VE READ IT.

21         THE COURT:  I THINK THERE'S A SIGNATURE LINE FOR YOU

22  TO SIGN, IS THERE NOT?  IF YOU WILL SIGN THAT YOU HAVE

23  ACKNOWLEDGED IT, I WILL SPARE YOU THE ORDEAL OF EXPLAINING TO

24  YOU, AN ACCOMPLISHED CRIMINAL LAW PRACTITIONER, THAT YOU HAVE

25  TO FILE YOUR NOTICE OF APPEAL TIMELY.  YOU SAT THROUGH THE

1 | OTHER EXPLANATIONS, DID YOU NOT, IN HERE?

2 |          MR. HIRSCHHORN:  YES, JUDGE.  ACTUALLY, I HAVE A

3 | NOTICE OF APPEAL WITH ME, BECAUSE I RECOGNIZE MY OBLIGATION IS

4 | TO FILE A NOTICE OF APPEAL.  WHAT HAPPENS AFTER THAT, I CAN'T

5 | ADDRESS.  I THINK THAT CONSIDERING THE, CONSIDERING THE STATUS

6 | OF THE DEFENDANT, IF I DON'T FILE A NOTICE OF APPEAL WITHIN

7 | 10, 11 DAYS --

8 |          THE COURT:  TEN DAYS WE SAY.  TEN DAYS FROM THE

9 | ENTRY OF THE JUDGMENT AND COMMITMENT ORDER, WHICH SHOULD BE

10 | DONE VERY QUICKLY.

11 |          MR. HIRSCHHORN:  WITHIN TEN DAYS, BUT I DON'T -- THE

12 | POINT IS THAT HE'LL BE FOREVER BARRED FROM BEING ABLE TO TAKE

13 | AN APPEAL.  NOW, WHAT THE GOVERNMENT DOES WITH RESPECT TO

14 | MOVING TO DISMISS BECAUSE HE HAS, HE HAS ABSCONDED, IS ANOTHER

15 | ISSUE.

16 |          THE COURT:  THAT'S RIGHT, AND I'M NOT GOING TO

17 | HANDLE THAT HERE.  THIS IS JUST FOR THE SENTENCING.  BUT IF

18 | YOU HAVE IT, THEN IT SHOULD BE FILED TIMELY WITHIN TEN DAYS

19 | AFTER THE FILING OF THE JUDGMENT AND COMMITMENT ORDER.  IN

20 | THIS CASE, THE GOVERNMENT MAY TAKE AN APPEAL.  AND SO THE

21 | DEFENDANT WOULD HAVE TEN DAYS, FOLLOWING THE FILING OF A

22 | TIMELY NOTICE OF APPEAL BY THE GOVERNMENT, IN WHICH TO FILE

23 | HIS NOTICE OF APPEAL IF HE WISHED TO APPEAL.

24 |          AND AS TO WITHDRAWAL, I'LL LEAVE THAT UP TO THE

25 | MAGISTRATE TO DECIDE.  AND IF THERE'S ANY OBJECTION TO WHAT

86

1   OCCURS, OF COURSE, IT WILL END UP IN MY COURTROOM.

2          MR. HIRSCHHORN:  YOUR HONOR, I WANT THE COURT, THE

3   RECORD TO BE CLEAR THAT I'M FILING A NOTICE OF APPEAL AS A

4   MATTER OF PROFESSIONAL RESPONSIBILITY, NOT BECAUSE I'VE BEEN

5   DIRECTED TO DO SO.

6          THE COURT:  ALL RIGHT.  THE CLERK SHOULD ATTACH THE

7   SENTENCING STATEMENT TO THE JUDGMENT AND COMMITMENT ORDER.  I

8   DON'T THINK THERE'S ANYTHING ELSE THAT NEEDS TO BE DONE.  ANY

9   OTHER MATTER THAT NEEDS TO BE ADDRESSED?

10          MR. HIRSCHHORN:  NO, YOUR HONOR.

11          MS. HUNT:  NO, YOUR HONOR.

12          THE COURT:  FROM THE GOVERNMENT?

13          MR. HIRSCHHORN:  MAY I BE EXCUSED?

14          THE COURT:  THE CASE IS CONCLUDED AND WE'LL

15   RECOMMENCE TODAY AT 1 O'CLOCK.

16          (PROCEEDINGS RECESSED AT 11:55 A.M.)

17

18                C E R T I F I C A T E

19   I HEREBY CERTIFY THAT THE FOREGOING IS AN ACCURATE

20   TRANSCRIPTION OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

21

22   DATE  12-15-00          OFFICIAL COURT REPORTER

23

24

25

1              I N D E X
2                              DIRECT  CROSS
3   TERRY ALLEN CRAIG ..................... 40      45
4   TERRY ALLEN CRAIG .......................... 46
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25