**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA**

**-vs-**                                                    **Case No.  6:98-cr-99-Orl-19KRS**

**SHOLAM WEISS**

                    **Defendant.**

**In the Claim of the Stonewell Corporation**
_____

# ORDER

This case comes before the Court on the following:

1.      Petition of Innocent Owner of Claim to Property by the Stonewell Corporation.  (Doc. No. 2066, filed on August 18, 2004).

2.      United States of America's Motion for Summary Judgment and Memorandum of Law. (Doc. No. 2081, filed on March 11, 2005).  United States of America's Statement of Uncontested Material Facts in Support of Motion for Summary Judgment.  (Doc. No. 2082, filed on March 11, 2005).

3.      Stonewell Corporation's Memorandum in Opposition to United States of America's Motion for Summary Judgment.  (Doc. No. 2090, filed on April 8, 2005).  Stonewell Corporation's Response to United States of America's Statement of Uncontested Facts in Support of Motion for Summary Judgment.  (Doc. No. 2091, filed on April 8, 2005). Affirmation of Matthew Dollinger.  (Doc. No. 2092, filed on April 8, 2005).

**Background**

Lyle Pfeffer, Michael Blutrich, and Sholam Weiss were partners in crime with an express

verbal agreement that money advanced by one would be repaid first and then profits from their frauds

would be divided.  (Doc. No. 1955, "Order as to Sholam Weiss, Keith Pound Adopting and Approving

the Report and Recommendations in Accordance with this Order," filed on October 29, 2002, pp. 5-6).

Through the scheme concocted by Weiss, Pfeffer, and Blutrich, millions of dollars were stolen from

the National Heritage Life Insurance Company (NHLIC), and these funds were used to perpetuate

further frauds.  (*Id.* at 6).  The Stonewell Corporation, through its officer, director, and shareholder

Richard Gladstone, was a late invitee to the frauds, but Gladstone knowingly became involved in the

scheme as a cover for Weiss and his money laundering.  (*Id.*)

After a nine month trial, a jury convicted Weiss and others of multiple counts of fraud.  (Doc.

No. 1276, filed on November 2, 1999).  The jury also rendered a special verdict of forfeiture for

several items of property, including a money judgment of $3,100,000.  (*Id.* at 15).  The jury forfeited

Weiss' interest in several companies, including Center Mall, Inc., Center Point Mall, Inc., Jasper

Properties, Corporation, and the Stonewell Corporation  (*Id.* at 3,4,7,12).

A Preliminary Order of Forfeiture was entered (Doc. No. 1339, filed on February 4, 2000) and

amended (Doc. No. 1445, filed on May 12, 2000).  The Court found that by virtue of the Special

Verdict of Forfeiture rendered by the jury, the Government was entitled to possession of the Stonewell

Corporation and $3,100,000.  (Doc. No. 1445, p. 2).  The Court also found that all right, title, and

interest of Defendant Weiss in the Stonewell Corporation was forfeited to the United States.  (*Id.*)

On April 5, 2000, Richard Gladstone filed a "Petition of Innocent Owner–Claim to Property"

under 18 U.S.C. section 1963(l).  (Doc. No. 1406).  Gladstone alleged that he had full and complete

ownership of the Stonewell Corporation, that he was the sole shareholder, officer, and director of the Stonewell Corporation, and that the Stonewell Corporation owned a mortgage on the Center Mall.  (*Id.* at ¶¶ 2, 23, 27).  Gladstone further alleged that a mortgage on the Center Mall property had originally been placed on the property to evidence a loan in the amount of $4,300,000 from the United Jersey Bank, as mortgagee, to Center Mall, Inc., as mortgagor, that the mortgage was transferred by United Jersey Bank to Jasper Properties, Corp. by assignment dated September 7, 1993 and recorded September 13, 1993, and that Jasper Properties, Corp. transferred the mortgage to the Stonewell Corporation by assignment dated March 20, 1997.  (*Id.* at ¶¶ 20, 21, 22, 23).

On April 27, 2001, Gladstone filed a Motion for Summary Judgment.  (Doc. No. 1761, "Motion by Richard Gladstone for Summary Judgment").  In the Motion for Summary Judgment, Gladstone argued that Stonewell was a bona fide purchaser of the assignment of the Center Mall Mortgage.  (Doc. No. 1762, "Memorandum by Richard Gladstone in Support of Motion for Summary Judgment," filed on April 27, 2001, p. 12).

In opposing Gladstone's Motion for Summary Judgment, the Government argued that the Center Mall mortgage was subject to forfeiture because it was the Stonewell asset having a nexus to Defendant Weiss' racketeering activities.  (Doc. No. 1775, "United States of America's Memorandum of Law in Opposition to Richard Gladstone's Motion for Summary Judgment," filed on May 25, 2001, pp. 8-9).

Extensive evidentiary proceedings were held before the Magistrate Judge from August 20-23, 2001 (Doc. Nos. 1839, 1840, 1842, 1843), and November 13-14, 2001 (Doc. Nos. 1880, 1883) on Gladstone's Petition of Innocent Owner.  Gladstone's opening statement to the Magistrate Judge focused on the circumstances surrounding the acquisition of the Center Mall Mortgage.  (Doc. No.

1851, "Transcript of Evidentiary Hearing on Gladstone Forfeiture held on August 20, 2001 before Magistrate Judge Spaulding," filed on October 18, 2001, pp. 11-44).  Gladstone explained that the evidence would show that he owned the Stonewell Corporation and was entitled to all of the benefits of ownership of the Stonewell Corporation.  (*Id.* at 44).  Gladstone also testified that he was the sole officer and shareholder of the Stonewell Corporation.  (Doc. No. 1852, "Transcript of Evidentiary Hearing on Gladstone Forfeiture held on August 21, 2001 before Magistrate Judge Spaulding," filed on October 18, 2001, p. 252).

On October 29, 2002, the Court declared that the Government was entitled to possession, title, and control of the Center Mall mortgage.  (Doc. No. 1955, p. 29).  The Court found that the circumstantial evidence showed that Gladstone, through the Stonewell Corporation, was Weiss' nominee with reference to the Center Mall mortgage acquisition.  (*Id.* at 18).  The Court also found that the Center Mall mortgage was not an asset owned by Stonewell.  (*Id.* at 25).  Gladstone, using the Stonewell Corporation, acted as Weiss' nominee to hide Weiss' interest in the mortgage.  (*Id.*)  Because the mortgage was never owned by the Stonewell Corporation in its own right, it had no standing to contest the finding that the mortgage should be forfeited to the Government.  (*Id.*)

On December 17, 2003, Gladstone appealed the Court's October 29, 2002 Order.  (Doc. No. 1977).  The Eleventh Circuit reversed, finding that the Court overstepped the bounds of its jurisdiction under 18 U.S.C. section 1963(l) by awarding possession of the Center Mall mortgage to the Government.  *United States v. Gladstone*, No. 02-16844, slip op. at 10 (11th Cir. Apr. 14, 2003).  The Eleventh Circuit held that the Court had no jurisdiction to determine the ownership rights to the mortgage because the jury did not find the mortgage to be forfeit.  *Id.*  The appellate court explained that a district court has no power to give the Government title to a defendant's interest in forfeited

-4-

property unless forfeiture has been made part of the defendant's sentence.  *Id.* at 8 (citing *United States v. Pease*, 331 F.3d 809, 813 (11th Cir. 2003)).  However, the appellate court expressed no opinion on the Government's ability to pursue the Center Mall mortgage based on the forfeiture of the $3,100,000.  *Id.* at 5 n.2.  The Eleventh Circuit also held that the Court's conclusion that the mortgage was not, and had never been, an asset of the Stonewell Corporation was not clearly erroneous.  *Id.* at 10.

On July 20, 2004, on application of the Government, the Court issued a Second Amended Preliminary Order of Forfeiture.  (Doc. No. 2065).  The Court ordered that all right, title, and interest of Defendant, Sholam Weiss, in the proceeds of the sale of the Center Mall located in Monmouth County, New Jersey was forfeited to the Government for disposition subject to the provisions of 18 U.S.C. section 1963.  (*Id.* at ¶ 1).  The Court further ordered that any person, other than Sholam Weiss, who has any right, title, or interest in the proceeds of the sale of the Center Mall must file a petition with the Clerk of the United States District Court within thirty days of the final publication of the notice or receipt of the actual notice, whichever is earlier.  (*Id.* at ¶ 2).

On August 18, 2004, the Stonewell Corporation ("Stonewell") filed a "Petition of Innocent Owner–Claim to Property," claiming that proceeds of the sale of the Center Mall mortgage are not forfeit and requesting an evidentiary hearing as to whether it had a vested legal right, title, and ownership interest in the proceeds of the sale of the mortgage at the time of the commission of any acts by Defendant Weiss which gave rise to the claim of forfeiture under 18 U.S.C. section 1963.  (Doc. No. 2066).

In its Petition, Stonewell raised the same allegations that Gladstone raised in his Petition, including that a mortgage on the Center Mall property had originally been placed on the property to evidence a loan in the amount of $4,300,000 from the United Jersey Bank, as mortgagee, to Center

Mall, Inc., as mortgagor, that the mortgage was transferred by United Jersey Bank to Jasper Properties, Corp. by assignment dated September 7, 1993 and recorded September 13, 1993, and that Jasper Properties, Corp. transferred the mortgage to Stonewell by assignment dated March 20, 1997.  (Doc. No. 2066, ¶¶ 54, 63, 67, 70, 82).  Stonewell contends that it purchased an assignment of the Center Mall mortgage from Jasper Properties, Corp. for valid and sufficient consideration and without any participation or knowledge by Defendant Weiss.  (*Id.* at ¶ 108).

On March 11, 2005 the Government moved for summary judgment on the Second Amended Preliminary Order of Forfeiture, arguing that the Order was valid because the Center Mall mortgage is an asset directly traceable to the offense pursuant to 18 U.S.C. section1963(a) or, alternatively, the mortgage is a substitute asset under 18 U.S.C. section 1963(m).  The Government also argues that Stonewell lacks standing to contest the forfeiture of Defendant Weiss' interest in the proceeds of the sale of the Center Mall.  Stonewell counters that the Court lacks jurisdiction to adjudicate this claim due to a civil action pending in the United States District Court for the Southern District of New York and the Eleventh Circuit's opinion in this case and that the findings of fact that the Court previously made in this proceeding are "dicta."[1]

_____

[1] In opposition to the Government's Motion for Summary Judgment, Stonewell has included the statement of Matthew Dollinger, attorney for Stonewell, the deposition testimony of Isaac Nussen in the Williams action, a civil action in the United States District Court in the Southern District of New York, and a transcript from a Sixty Minutes Interview.  (Doc. No. 2092).  Dollinger's statement purports to detail alleged facts that occurred in the procurement and assignment of the Center Mall mortgage.  Dollinger contends that Gladstone was acting on behalf of Stonewell and was not acting as a nominee for Defendant Weiss.  (*Id.* at ¶ 59).  Dollinger's statement is not admissible because he is Stonewell's attorney, lacks personal knowledge of the facts asserted in the statement, and was merely reciting what was in the public record.  Dollinger's affidavit and argument are based on what an innocent person would find in the public record.  They belie the fraud in which the Stonewell Corporation participated as a nominee of Defendant Weiss and are an attempt by Stonewell to disagree with the earlier-made factual findings of the Court.  At the hearing on the Government's Motion for Summary

This Order analyzes the issues raises in Stonewell's Petition of Innocent Owner and the Government's Motion for Summary Judgment.

## Standard of Review

Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party." *Id.* The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether the moving party has satisfied the burden, the Court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The Court may not weigh conflicting evidence or weigh the credibility of the parties. *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993) (citation omitted). If a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material fact, then the Court must not grant summary judgment. Id. (citation omitted)

## Analysis

The Court will first address Stonewell's arguments that the findings of fact previously made by

---

Judgment, Dollinger stipulated that Nussen's deposition testimony in the Williams action was substantially the same as Nussen's testimony at the criminal trial which the Magistrate Judge considered when analyzing Gladstone's Petition. The Sixty Minutes interview is not admissible evidence and will not be considered by the Court.

the Court are dicta, that the Eleventh Circuit's opinion in this case prevents the Government from pursuing the Center Mall mortgage, that the Government abandoned the ability to pursue the mortgage under 18 U.S.C. section 1963(m), and that the Court lacks jurisdiction to adjudicate this dispute. The Court will then analyze whether Stonewell is collaterally estopped from relitigating the issue of the ownership of the Center Mall mortgage and whether Stonewell lacks standing to file the Petition based on the law of the case doctrine. Finally, the Court will determine whether the Center Mall mortgage is forfeit as an asset derived from the proceeds of racketeering activity under 18 U.S.C. section 1963(a) or as a substitute asset under section 1963(m).

Stonewell claims that the evidentiary slate has been wiped clean by its Petition and the Eleventh Circuit's opinion in this case. Stonewell argues that the facts that formed the basis of the Court's October 29, 2002 Order are not applicable to the issues presented in its Petition and that an evidentiary hearing is necessary to collect the facts that form the basis of Stonewell's arguments.

The facts that formed the basis of the Court's Order were the result of a nine month jury trial and subsequent extensive evidentiary proceedings held before the Magistrate Judge from August 20-23, 2001, and November 13-14, 2001, on Gladstone's Petition. Stonewell seeks to relitigate several issues including the source of funds used to purchase the Center Mall mortgage, the circumstances of this acquisition by Jasper Properties and the subsequent transfer to Stonewell, Gladstone's role, through Stonewell, as Weiss' nominee in the transaction, and Stonewell's ownership interest in the Center Mall mortgage.

Stonewell's argument is without merit. The Eleventh Circuit reversed the Court on a narrow issue, finding that the Court erred in giving possession and control of the Center Mall mortgage to the Government because the jury did not find the mortgage to be forfeit. Contrary to Stonewell's

-8-

contention, the Eleventh Circuit did not throw out the entire evidentiary record.  Instead, the appellate court reversed one finding and left undisturbed the other findings of the Court.  If accepted by the Court, Stonewell's argument would have the effect of wiping away months of painstaking work on an evidentiary matter that has been presented in Court several times, once to the jury in the criminal case, once to the Magistrate Judge in the forfeiture proceedings, once to the Court in reviewing the Magistrate Judge's Report and Recommendation on Gladstone's Petition, and now again to the Court on Stonewell's Petition and the Government's Motion for Summary Judgment.

Stonewell's argument is also contrary to the public policy reasons behind the law of the case doctrine.  When an issue is once litigated and finally decided, that concludes the matter.  *United States v. U.S. Smelting Refining & Mining Co.*, 339 U.S. 186, 198 (1950).  The purpose of the doctrine is to "bring an end to litigation by foreclosing the possibility of repeatedly litigating an issue already decided." *Murphy v. F.D.I.C.*, 208 F.3d 959, 966 (11th Cir. 2000).  The doctrine is intended to protect traditional ideals such as finality, judicial economy and jurisprudential integrity.  *In re City of Philadelphia Litigation*, 158 F.3d 711, 717-18 (3d Cir. 1998).  While the doctrine does not apply to every possible issue that a party may raise and is limited to issues previously decided, the law of the case encompasses all things "'*decided by necessary implication* as well as those decided explicitly.'" *Wheeler v. City of Pleasant Grove*, 746 F.2d 1437, 1440 (11th Cir. 1984) (per curiam) (emphasis in original).  Findings of fact and conclusions of law by an appellate court are generally binding in subsequent proceedings in the same case.  *Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d 166, 169 (11th Cir. 1994).

Reconsideration of a prior holding is not improper, however, if the Court is convinced that the prior decision is clearly erroneous and would work manifest injustice.  *Murphy*, 208 F.3d at 966.

Given the extensive nine month jury trial, the forfeiture proceedings held before the Magistrate Judge on Gladstone's Petition, the Court's review of the record analyzing the Magistrate Judge's Report and Recommendation, and the Eleventh Circuit's opinion in this case which noted that the factual finding that the Center Mall mortgage was not an asset of Stonewell was not clearly erroneous, it is clear that the law of the case doctrine applies and that the Court's prior decision is neither clearly in error nor the result of manifest injustice.

Stonewell claims that the law of the case doctrine is inapplicable because there is no final decision and because the doctrine only applies to issues of law rather than findings of fact. Contrary to Stonewell's argument, the Eleventh Circuit has clearly stated that the law of the case doctrine applies to findings of fact and conclusions of law. *Burger King Corp.*, 15 F.3d at 169. Stonewell cites *United States v. U.S. Smelting Refining & Min. Co.*, 339 U.S. 186, 199 (1960), in support of its argument that the instant case represents a non-final decision in which the law of case doctrine is not applicable. *Smelting Refining* is inapposite to the instant case because it involved a temporary injunction rather than the final judgment presented by the Court's October 29, 2002 Order.

Stonewell also argues that the law of the case doctrine is inapplicable because the facts that formed the basis of the Court's October 29, 2002 Order constitute "dicta." The Court's finding that the Center Mall mortgage was not an asset of Stonewell was necessarily subsumed within the Court's analysis of Gladstone's Petition and therefore does not constitute dicta to which the law of the case doctrine would not apply.

Next, Stonewell claims that as a result of the Eleventh Circuit's opinion, the Government is no longer able to pursue the Center Mall mortgage. This is not a correct statement of the case. The Eleventh Circuit specifically stated that while the Court had no jurisdiction to give the Government the

mortgage based on the forfeiture of the Stonewell Corporation, the appellate court expressed no opinion on the Government's ability to pursue the mortgage based on the forfeiture of the $3,100,000. *United States v. Gladstone*, No. 02-16844, slip op. at 5 n.2 (11th Cir. Apr. 14, 2003).

Stonewell argues that the Government always claimed that the Center Mall mortgage was forfeit because it was traceable to money Defendant Weiss obtained from racketeering activity. Stonewell contends that the Government was required to seek the Center Mall mortgage's forfeiture in accordance with 18 U.S.C. section 1963(a)(3) and is not entitled to seek the forfeiture of the Center Mall mortgage as a substitute asset under 18 U.S.C. section 1963(m). Because the Government did not initially seek forfeiture of the Center Mall mortgage under 18 U.S.C. section 1963(m) as a substitute asset for the $3,100,000, Stonewell argues that the Government has abandoned the ability to pursue the mortgage under a substitute asset theory. Stonewell cites *United States v. Voigt*, 89 F.3d 1050, 1085 (3d Cir. 1996), and *United States v. Bornfield*, 145 F.3d 1123, 1139 (10th Cir. 1998), in support of its argument. Both are inapposite to the instant case.

In *Voigt*, the defendant was convicted of one count of conspiracy to commit wire fraud, fourteen counts of wire fraud, four counts of money laundering, and two counts of tax evasion. 89 F.3d at 1060. The district court ordered forfeiture of certain pieces of jewelry, reasoning that the jewelry was "traceable to" the proceeds of the money laundering activity. *Id.* at 1060, 1088. The defendant argued that the government failed to prove that the money used to purchase the jewelry was "traceable to" money laundering proceeds, as required by 18 U.S.C. section 982(a)(1). The defendant's argument was based on the fact that the jewelry was purchased with funds drawn from an account in which money laundering proceeds had been commingled with other funds. *Id.* Those funds were diluted by subsequent deposits and withdrawals. *Id.* The defendant claimed that if the jewelry

was subject to forfeiture, it was under 21 U.S.C. section 853(p)(5), the substitute asset provision. The government claimed that the "traceable to" and substitute asset theories merely created alternative paths to forfeiture and argued that criminal forfeiture does not require strict tracing. *Id.* at 1084, 1086.

The Third Circuit held that the substitute asset provision applies only when property cannot be identified as traceable to money laundering. *Id.* at 1086. The appellate court reversed the district court, finding that the government had failed to establish that the jewelry was traceable to the money laundering activity. *Id.* at 1088. The Third Circuit also stated that the government continued to be entitled to $1,600,000 in criminal forfeiture and could pursue the jewelry on the substitute asset theory. *Id.*

Stonewell reads *Voigt* too broadly. Stonewell contends that if the Government seeks forfeiture of property derived from racketeering activity under 18 U.S.C. section 1963(a)(3), then the Government cannot seek forfeiture of that property at a later stage in the proceedings under 18 U.S.C. section 1963(m). However, the Third Circuit in *Voigt* permitted the government to pursue the $1,600,000 on a substitute asset theory. The fact that the district court initially awarded the jewelry on the basis of the "traceable to" theory did not preclude the government from seeking the jewelry on the substitute asset theory.

In *Bornfield*, the jury found that $13,007.42 was involved in the money laundering offense charged in the indictment. 145 F.3d at 1135. The district court entered an order of forfeiture pursuant to 18 U.S.C. section 982(b)(1)(A), 21 U.S.C. section 853(p), and Federal Rule of Criminal Procedure 32(d)(2). *Id.* The Tenth Circuit found that the district court could not grant forfeiture pursuant to the substitute asset provision under 18 U.S.C. section 982(b)(1)(A) and 21 U.S.C. section 853(p). *Id.* at 1138-39. The Tenth Circuit explained that an asset cannot logically be both forfeitable and a substitute

asset.  *Id.* at 1139.  Assets traceable to the offense are forfeitable once the requisite nexus is

established.  *Id.*  The substitute asset provision allows the forfeiture of assets not already forfeitable

when the forfeitable asset is unavailable due to the act or omission of the defendant.  *Id.*  The district

court erred by ordering forfeiture based on the substitute asset provision of the same asset alleged to be

forfeitable.[2]  *Id.*

  *Bornfield* is distinguishable from the instant case.  In *Bornfield*, the jury found that the money

forfeited was involved in the money laundering offense charged in the indictment.  Because of this jury

finding, the district court could not order the forfeiture of the money as a substitute asset.  An asset is

either traceable to the offense or a substitute asset for funds involved in the offense, but it cannot be

both.  In the instant case, the jury did not find that the Center Mall mortgage was an asset derived from

the $3,100,000.  Thus, the Government's pursuit of the Center Mall mortgage under a substitute asset

theory does not create the logical inconsistency described by the Tenth Circuit in *Bornfield*.

Stonewell's argument that the Government abandoned the ability to pursue the mortgage under 18

U.S.C. section 1963(m) is without merit.

  Because of a pending civil action in the United States District Court for the Southern District of

New York and the Eleventh Circuit's opinion in this case, Stonewell argues that the Court lacks

jurisdiction to forfeit Weiss' interest in the Center Mall mortgage to the Government.  Both arguments

---

[2] The Tenth Circuit did not find that the asset alleged to be forfeited was actually forfeitable.  The Tenth Circuit held that the jury's verdict was clear error due to confusion between the defendant's personal and business accounts. 145 F.3d at 1137.  This confusion resulted in either jury instructions that incorrectly identified the defendant's personal account as his business account or an indictment, jury instructions, and special forfeiture order involving the defendant's business account.  *Id.* at 1137-38.  The jury's verdict was clear error because the jury could not legally order the forfeiture of funds contained in the defendant's business account because the funds in the defendant's business account had no connection to the money laundering offense and were not forfeitable assets.  *Id.* at 1138.

-13-

are without merit.

Stonewell contends that the United States District Court in Southern District of New York is the proper court for this action.  In April 1996, Stonewell avers that Donna Lee H. Williams, Insurance Commissioner for the State of Delaware, as Receiver for NHLIC, commenced the "Williams Action." According to Stonewell, neither it nor its assignor, Jasper, were named as defendants in that action.  In that action, Williams alleged that the defendants engaged in a series of fraudulent transactions and conveyances which resulted in the dissipation and diversion of millions of dollars of assets belonging to NHLIC.  Stonewell contends that because the United States District Court for the Southern District of New York has exercised control over the creation of the fund and the distribution of the proceeds of the sale of the Center Mall property, the Court lacks jurisdiction over the forfeiture proceedings in this case.

Stonewell's argument demonstrates a misunderstanding of jurisdictional issues in criminal proceedings.  A criminal forfeiture, unlike a civil forfeiture, is an *in personam* proceeding.  *United States v. Conner*, 752 F.2d 566, 576 (11th Cir. 1985) (quoting *United States v. L'Hoste*, 609 F.2d 796, 813 n. 15 (5th Cir. 1980)).  In an *in rem* proceeding, the forfeiture action is against the property because the property being forfeited is considered the offender.  *Id.*  By enacting 18 U.S.C. section 1963, Congress "'revised the concept of forfeiture as a criminal penalty against the individual, since the proceeding is *in personam* against the defendant and the forfeiture is part of the punishment.'" *Id.* Pursuant to 18 U.S.C. § 1963(j), the Court has jurisdiction to enter orders without regard to the location of any property which may be subject to forfeiture or which has been ordered forfeited.  18 U.S.C. § 1963(j).  Thus, it is clear that the Court has jurisdiction to determine whether the Government could pursue the mortgage based on the forfeiture of the $3,100,000.

-14-

Stonewell also claims that the Court lacks jurisdiction based on the Eleventh Circuit's opinion in this case. The Eleventh Circuit found that the "district court had no jurisdiction to determine the ownership rights to the mortgage because the jury did not find the mortgage to be forfeit, either in its own right or as an asset of the Stonewell Corporation." *United States v. Gladstone*, No. 02-16844, slip op. at 10-11 (11th Cir. Apr. 14, 2003). However, the Eleventh Circuit did not find that the Court lacked jurisdiction to adjudicate whether the Government could pursue the mortgage based on the forfeiture of the $3,100,000. *See id.* at 5, n.2. Thus, the Court now has jurisdiction to determine the ownership of the Center Mall mortgage based on the forfeiture of the $3,100,000.

The doctrine of collateral estoppel prevents Stonewell from relitigating the issue of the ownership of the Center Mall mortgage. The doctrine of collateral estoppel "bars relitigation of an issue previously decided if the party against whom the prior decision is asserted had 'a full and fair opportunity' to litigate that issue in an earlier case." *Blohm v. C.I.R.*, 994 F.2d 1542, 1553 (11th Cir. 1993) (quoting *Allen v. McCurry*, 449 U.S. 90, 94-95 (1980)). In order for a party to be collaterally estopped 1) the issue must be identical in the pending case to that decided in the prior proceeding; 2) the issue must necessarily have been decided in the earlier proceeding; 3) the party to be estopped must have been a party or adequately represented by a party in the prior proceeding; and 4) the precluded issue must actually have been litigated in the first proceeding. *Id.*

The Court must first define the issue that was litigated in the earlier proceeding on Gladstone's Petition. Among the factors to be considered in determining whether the issue in two proceedings is the same are the substantial overlap between evidence and argument and whether new evidence or argument involves application of the same rules of law. RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982); *See David Vincent, Inc. v. Broward County, Fla.*, 200 F.3d 1325, 1330 n.7 (11th Cir. 2000)

-15-

(positively citing the Restatement Second of Judgments for additional definitions of issue preclusion).

While Stonewell argues that the issue in the proceeding on Gladstone's Petition was the ownership of

Stonewell and not the ownership of the Center Mall mortgage, Stonewell's definition of the issue is

too narrow.  The jury forfeited Defendant Weiss' interest in the Stonewell Corporation.  In order to

determine who owned Stonewell and whether Defendant Weiss had an interest in the Stonewell

Corporation, it was necessary to analyze the ownership of the mortgage.  There has been a full

opportunity to litigate the issue of the mortgage ownership because Gladstone's Petition, his Motion

for Summary Judgment, the Government's response to Gladstone's Motion for Summary Judgment,

Gladstone's opening statement to the Magistrate Judge, the evidentiary proceedings before the

Magistrate Judge, and the Court's review of the Magistrate Judge's Report and Recommendation

focused on the circumstances surrounding the Center Mall mortgage acquisition.  Stonewell has not

included any new evidence in response to the Government's Motion for Summary Judgment.  Thus,

the same issue is presented before the Court in this proceeding as in the prior proceeding on

Gladstone's Petition because there is a substantial overlap of evidence and argument and the

application of the same rules of law.

The issue of the ownership of the Center Mall mortgage was necessarily decided and actually

litigated in the proceeding on Gladstone's Petition because it was necessary for the Court to determine

the ownership of the Center Mall mortgage in determining the ownership of the Stonewell Corporation

and the assets of the Stonewell Corporation, and extensive evidence was presented by Gladstone and

the Government on these issues.

Given the close relationship between Gladstone and Stonewell, Stonewell was adequately

represented by Gladstone in the prior proceeding on Gladstone's Petition.  Gladstone both alleged in

-16-

his Petition and testified at the evidentiary proceeding before the Magistrate Judge that he was the sole officer, director, and shareholder of the Stonewell corporation.  The Restatement explains that a judgment in an action involving a party who is an officer, director, or stockholder of a corporation generally has no preclusive effect on the corporation itself.  RESTATEMENT (SECOND) OF JUDGMENTS §59(3)(b) (1982).  However, if the corporation is closely held such that one person holds substantially the entire ownership in it, the judgment in an action against the holder of ownership in the corporation prevents the corporation from relitigating the issue except when relitigation of the issue is justified in order to protect the interest of another owner or a creditor of the corporation.  *Id.* at §59(3)(b).  In the instant case, Stonewell is a closely held corporation because Gladstone owns all the interest in it, and Stonewell has not demonstrated harm to a creditor of the corporation if it were collaterally estopped. Because Stonewell is a closely held corporation, the Court finds that Stonewell was adequately represented by Gladstone in the earlier proceeding and is collaterally estopped from relitigating the issue of the ownership of the mortgage.  *Drier v. Tarpon Oil Co.*, 522 F.2d 199, 200 (5th Cir. 1975) (president and major stockholder was in privity with the corporation because he admitted that he made the ultimate decisions for the corporation and was the only witness for the corporation in a Louisiana suit); *Pacetti v. United States*. 50 Fed. Cl. 239, 246-47 (2001) (plaintiff adequately represented in earlier proceeding where plaintiff was the president and sole owner of the corporation, appeared as a witness on behalf of the corporation, and maintained a significant degree of control over the corporation); *Aetna Cas. and Sur. Co. of Hartford v. Kerr-McGee Chemical Corporation*, 875 F.2d 1252, 1258-60 (7th Cir. 1989) (explaining that the Kerr-McGee subsidiaries were bound by the results of the Oklahoma litigation brought on their behalf by the subsidiaries' sole shareholder, Kerr-McGee Corporation)

The Government also argues that Stonewell has no standing to contest the forfeiture of the Center Mall mortgage based on the law of the case doctrine and cites to the Court's Order analyzing the Magistrate Judge's Report and Recommendation on the Gladstone Petition in support of its argument.  The Court stated:

> "First, the evidence shows that [the Center Mall mortgage] was not an asset owned by Stonewell.  Gladstone, using this corporation, acted as Weiss' nominee to hide Weiss' interest in this mortgage.  The asset, the mortgage, was never owned by Stonewell in its own right.  Therefore, Stonewell has no standing to contest the Magistrate's finding that the mortgage on, and the proceeds of the sale of, the Center Mall Property should be forfeited to the United States."  (Doc. No. 1955, p. 25).

The Eleventh Circuit noted that the Court's finding that the mortgage had never been an asset of Stonewell was not clearly erroneous.  *United States v. Gladstone*, No. 02-16844, slip op. at 10 (11th Cir. Apr. 14, 2003).  Because of the Court's previous finding that Stonewell lacked standing and the Eleventh Circuit's holding that the Court's finding that the mortgage had never been an asset of Stonewell was not clearly erroneous, the Government argues that Stonewell's Petition must be dismissed as a matter of law.

Stonewell argues that the Court found in its October 29, 2002 Order that it had standing to make a claim to the Center Mall mortgage and cites to the Court's Order in support of its argument:

> "The Court notes that Mr. Gladstone brought his claim in his own right.  Stonewell corporation did not file a claim to the mortgage which was the subject of this forfeiture proceeding, although Gladstone claims that Stonewell is a duly formed and existing corporation to which assignment of the mortgage was made.  Under these facts, Gladstone has no standing to sue because under the Federal Rules of Civil Procedure '[e]very action shall be prosecuted in the name of the real party in interest.'  FED. R. CIV. P. 17(a).  It is well established that the assets of a corporation belong to the corporation, even if it has, as in the instant case, only a single shareholder.  See, e.g. Carney v. General Motors Corp., 23 F.3d 1154, 1157 (7th Cir. 1994) (holding that a sole shareholder may not bring an action to recover assets that belong to the corporation).  Corporate formalities exist to prevent individuals from, for example, co-mingling their personal assets with those of the corporation so that the corporate form does not become a vehicle for fraud.  Gladstone's apparent indifference to the requirements of the corporate form reveals much about the nature of Stonewell and Gladstone's relationship to it."

(Doc. No. 1955, p. 27, n. 35).

This portion of the Court's Order does not support Stonewell's argument that the Court found that Stonewell had standing to make a claim to the Center Mall mortgage. Rather, the Court noted that Stonewell should have been the real party in interest in determining whether the Center Mall mortgage was an asset of Stonewell because the assets of a corporation belong to the corporation itself. However, Gladstone pursued title to the mortgage as sole shareholder, officer, and director of Stonewell, showing by implication that Gladstone completely controlled Stonewell. This enabled Gladstone to use Stonewell to conceal the fraudulent schemes of Shalom Weiss. The Court did not object, and the Court subsequently found that the Center Mall mortgage was not an asset of the Stonewell corporation. Thus, Stonewell's argument that the Court found that it had standing is without merit.

In contesting a preliminary order of forfeiture, the filing of third-party claims under 18 U.S.C. section 1963(l)(2) is limited to those parties who have a "legal interest" in the forfeited property. *United States v. Gilbert*, 244 F.3d 888, 910 (11th Cir. 2001). Section 1963(l) limits the grounds upon which a third-party petitioner may rely to establish an interest in property. *Id.* at 911. In order to establish a legitimate entitlement to property, the petitioner must demonstrate that "(1) title to the property was vested in him rather than the defendant at the time of the act which made the property subject to forfeiture; (2) his title to the property was superior to the title held by the defendant at the time of the act which made the property subject to forfeiture; or (3) that he purchased his interest without reasonable cause to know that the property was subject to forfeiture." *Id.* Because of the previous finding that the Center Mall mortgage was not an asset of Stonewell, Stonewell is unable to establish any of the criteria necessary to defeat the Government's entitlement under the Second

Amended Preliminary Order of Forfeiture.  Thus, the Court finds that Stonewell lacks standing to claim an interest in the mortgage.

The Court will now analyze whether the Government is able to pursue the Center Mall mortgage based on the forfeiture of the $3,100,000.

The Government seeks to pursue the Center Mall mortgage under two theories.  First, the Government pursues the mortgage under 18 U.S.C. section 1963(a)(3) as property derived from proceeds which Defendant Weiss obtained from racketeering activity.  Alternatively, the Government pursues the mortgage under 18 U.S.C. section 1963(m) as substitute property for the $3,100,000.

Under 18 U.S.C. section 1963(a)(3), a person convicted of racketeering is required to forfeit any property derived from any proceeds the person obtained, directly or indirectly, as a result of the racketeering activity.  18 U.S.C. § 1963(a)(3).  All right, title, and interest in the property vests in the Government upon the commission of the act giving rise to forfeiture.  18 U.S.C. § 1963(c).  In reviewing the Magistrate Judge's Report and Recommendation on Gladstone's Petition, the Court found that in September of 1993 Weiss used $3,100,000, which he had stolen from National Heritage Life Insurance Company, to pay for the assignment of the Center Mall mortgage from United Jersey Bank to Jasper Properties Corporation, and Isaac Nussen, George Weisz, and Lyle Pfeffer for Jasper acted as Weiss' nominees in the transaction  (Doc. No. 1955, pp. 24-25).  Thus, the Court found that the Center Mall mortgage was purchased with money derived from Weiss' crimes.  The jury, however, did not make a specific finding that the Center Mall mortgage was subject to forfeiture as property derived from proceeds which Defendant Weiss obtained directly or indirectly from racketeering activity.  Because the jury did not make a specific finding that the Center Mall mortgage was forfeit as property derived from proceeds which Defendant Weiss obtained directly or indirectly from

-20-

racketeering activity, 18 U.S.C. section 1963(a)(3) is not available as a basis for the Government to pursue the mortgage under a theory of proceeds derived from the $3,100,000.

Even if the jury did not find that the Center Mall mortgage was directly traceable to the $3,100,000 forfeited by the jury, the Government contends that the mortgage would be forfeit under the substitute asset provision of 18 U.S.C. section 1963(m). The jury has no role in determining whether property has been dissipated and whether the Government may seek the forfeiture of substitute assets. *Candeliara-Silva*, 166 F.3d 19, 43 (1st Cir. 1999). The Government may not know that substitution is even necessary until it attempts to take possession of the property specified in the initial forfeiture order. *Id.* (quoting *United States v. Hurley*, 63 F.3d 1, 23 (1st Cir. 1995)).

According to section 1963(m), if any property or interest that the defendant used or acquired in violation 18 U.S.C. § 1962 cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, then the Court shall order the forfeiture of any other property of the defendant up to the value of the property sought.[3] 18 U.S.C. § 1963(m). In other words, if a defendant has concealed or disposed of "proceeds" of the illegal activity or property "derived from" those proceeds, *any* property of the defendant having an equivalent value is subject to forfeiture whether or

---

[3] Section 1963(m) states: "If any property described in subsection (a), as a result of any act or omission of the defendant–
   (1) cannot be located upon the exercise of due diligence;
   (2) has been transferred to or sold to, or deposited with, a third party;
   (3) has been placed beyond the jurisdiction of the court;
   (4) has been substantially diminished in value; or
   (5) has been commingled with other property which cannot be divided without difficulty;
the court shall order the forfeiture of any other property of the defendant up to the value of any property described in paragraphs (1) through (5)." 18 U.S.C. § 1963.

not it was acquired from racketeering activity.  *Id.*

In *Candelaria-Silva*, the district court ordered forfeiture of the defendant's property as a substitute asset to satisfy, in part, the $6,000,000 money judgment in the preliminary order of forfeiture.  166 F.3d at 42.  The First Circuit found that it was not error for the district court to order the forfeiture of other property of the defendant because the record reflected that the government made efforts to locate the proceeds of the conspiracy and concluded that the proceeds were disposed of.  *Id.*

In this case, the jury determined that $3,100,000 represented the amount of money obtained by Defendant Weiss or that Defendant Weiss could reasonably forsee would be obtained by other members from the RICO enterprise.  (Doc. No. 1276, p. 15).  Thus, the jury found that $3,100,000 was the principal asset subject to forfeiture.  The forfeiture of the Center Mall mortgage is appropriate as a substitute asset to satisfy the $3,100,000 money judgment if the record reflects that any of the statutory bases of 18 U.S.C. section 1963(m) are met.  It is clear that the $3,100,000 cannot be located because Defendant Weiss used the funds to purchase the Center Mall Mortgage which Weiss caused to be transferred from Jasper Properties to Stonewell to conceal his interest in the property.  Because the Center Mall mortgage was purchased with the $3,100,000 that the jury forfeited, the mortgage does not exceed the value of the funds sought by the Government.  Therefore, the Government is entitled to the Center Mall mortgage under 18 U.S.C. section 1963(m) as a substitute asset for the $3,100,000.

## **Conclusion**

Based on the foregoing, the Court **GRANTS** the United States of America's Motion for Summary Judgment.  (Doc. No. 2081).  The United States of America is entitled to possession, title, and control of the Center Mall mortgage free and clear of any claim of Petitioner

-22-

Stonewell Corporation.


**DONE** and **ORDERED** in Chambers in Orlando, Florida this __6th_____ day of May, 2005.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT




Copies furnished to:

Counsel of Record