1

```
 1              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
 2                 ORLANDO DIVISION

 3          CASE NO:  6:98-CR-99-ORL-19KRS

 4   United States of America,

 5                  Plaintiff,                    COPY

 6   vs.

 7   Jan Schneiderman,

 8                  Defendant.

 9   _____

10          FRIDAY, APRIL 24, 2009
     HEARING ON MOTION FOR REDUCTION IN SENTENCE
11    BEFORE THE HONORABLE PATRICIA C. FAWSETT
      UNITED STATES DISTRICT COURT SENIOR JUDGE
12   _____

13

14   Appearances:

15   Counsel for Government:
     Anita Cream, AUSA
16

17   Defense Counsel:
     Mark Horwitz, Esq.
18

19

20

21

22

23   Official Court Reporter:  Koretta Stanford, RPR-CRR

24   *Proceedings Recorded Stenographically;
      Computer-aided Transcription*
25
```

2

```
 1                     I N D E X

 2   Ms. Cream.........................................  5:17

 3   Mr. Lindgren......................................  8:7

 4   Mr. Black.........................................14:22

 5   Mr. Horwitz.......................................17:19

 6   Statement by Ms. Schneiderman.....................22:10

 7   Ms. Cream.........................................23:3

 8   The Court.........................................24:15

 9                                               ...28:12

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

EXHIBIT 44

3

1          P R O C E E D I N G S

2          (Commenced 1:02 p.m.)

3          DEPUTY CLERK:  Case is the United States of America

4    vs. Jan Schneiderman; case number 6:98-CR-99-ORL-19KRS.

5          Counsel for the plaintiff.

6          MS. CREAM:  Good afternoon, Your Honor; Anita Cream

7    for the United States.  Seated to my left at counsel table are

8    Jim Black and Tom Lindgren, who represent the Delaware

9    Insurance Commissioner as Receiver for National Heritage Life

10   Insurance Company.

11         MR. LINDGREN:  Good afternoon, Your Honor.

12         MR. BLACK:  Good afternoon.

13         DEPUTY CLERK:  For the defense?

14         MR. HORWITZ:  Good afternoon, Your Honor; Mark

15   Horwitz on behalf of Jan Schneiderman.  And I thank the Court

16   for allowing Ms. Schneiderman to appear via video

17   conferencing, thank you.

18         THE COURT:  Well, this is the first time we've done

19   that.

20         Ms. Schneiderman, I can see you on the camera.  Can

21   you see everything in the courtroom?

22         [No sound.]

23         Okay.  We can't hear you.  We need to get that

24   straightened out.  It may be that your microphone is muted.

25   Do you have a mute button on the little --

4

1          DEPUTY CLERK:  We're calling Systems.  I have no

2    idea.

3          THE COURT:  Well, it's probably from her end.

4          DEPUTY CLERK:  Yeah.

5          MR. HORWITZ:  We were hearing them before.

6          (Brief pause in proceedings.)

7          THE DEFENDANT:  Can you hear me now, Your Honor?

8          THE COURT:  Yes, we can, good.

9          THE DEFENDANT:  Thank you.

10         THE COURT:  Ms. Schneiderman, I understand with your

11   consent we're proceeding, and you did not want to come down to

12   the hearing today, but preferred to attend in this manner; is

13   that correct?

14         THE DEFENDANT:  That's correct, Your Honor.

15         THE COURT:  And I wanted to ask you, I've re-read

16   your presentence report, if you have taken any medications in

17   the past 48 hours?

18         THE DEFENDANT:  No, ma'am.

19         THE COURT:  All right.  And if at any time you want

20   to talk to Mr. Horwitz privately, would you let me know, and

21   we can make arrangements for him to contact you during this

22   hearing.

23         THE DEFENDANT:  I will, Your Honor, thank you.

24         THE COURT:  All right.

25         All right, we will proceed.  The hearing today is

5

1  noticed on the motion of the government at docket number 2126
2  for a downward departure.  I have read the motion and the
3  Receiver's letter.  The defendant has also filed a memorandum
4  of law at docket number 2130, which I have reviewed.  And I
5  understand that the parties wanted to present evidence, so I
6  am prepared to receive evidence.
7          MS. CREAM:  Your Honor, the attorneys for the
8  Delaware Insurance Commissioner wanted the opportunity to
9  address you directly.  I think, if it's okay with you, we'd
10 like to just do it by way of a narrative so that they could
11 explain directly to you the assistance provided in connection
12 with the civil lawsuits --
13         THE COURT:  Well, that's satisfactory with me.
14         Mr. Horwitz, do you have any objection?
15         MR. HORWITZ:  No.  No objection, Your Honor.
16         THE COURT:  All right.  You may, then, Ms. Cream.
17         MS. CREAM:  Your Honor, just a moment before I
18 introduce Mr. Black and Mr. Lindgren.  I also wanted the Court
19 to know a little bit about the history of this motion, and how
20 it came to be filed.  As you know, I got involved in the case
21 in 2001.  At that point, Ms. Schneiderman had already been
22 cooperating with the government in connection with the
23 Stonewell forfeiture proceeding.  And at that time, she was
24 told that the office would ask for a two-level reduction as a
25 result of her cooperation.

6

1          At some point later, I began to receive
2  communications from an AUSA Wilson in Ohio, who explained to
3  me that Ms. Schneiderman had also provided completely
4  voluntarily information to the Northern District of Ohio about
5  an ongoing drug investigation.  And without giving me too many
6  of the details of that proceeding, he did explain that in the
7  Northern District of Ohio, the U.S. Attorney would value that
8  cooperation at two levels.  And he, therefore, asked that in
9  preparing this motion, we give that information to the Court
10 so that you could consider it.
11         The other thing that's not in the motion --
12         THE COURT:  So, he's asking you to do the two levels
13 for that?
14         MS. CREAM:  Correct.
15         Since the motion was filed, the government has filed
16 a motion for a preliminary order of forfeiture for additional
17 assets owned by Sholam Weiss, Worldwide Plumbing Supply
18 Company, and a variety of real properties that are held in the
19 names of either Weiss' wife, Goldie Weiss, or his sister and
20 brother-in-law, Surie and Juda Leftkowitz.
21         In that motion, the government referenced
22 information provided by Ms. Schneiderman, some of which was
23 provided in the course of the Stonewell forfeiture litigation
24 and additional information, which she has shared with us as we
25 put together the current forfeiture proceeding.

7

1    And it's likely that if that goes to trial,
2  Ms. Schneiderman would be asked to testify.  She has been very
3  helpful in explaining transactions in which she was a
4  participant and directing the government towards specific
5  documents that are relevant.
6         THE COURT:  Well, Ms. Cream, are you now asking me
7  to recognize her substantial assistance for this?  Which means
8  you couldn't come back.
9         MS. CREAM:  No, I'm not, Your Honor.  I just wanted
10  the Court to know of the assistance solely to convey the fact
11  that since her sentencing, Ms. Schneiderman has made very
12  serious and much appreciated efforts at cooperation.  If and
13  when that Worldwide forfeiture proceeding is concluded, I'd
14  have to talk with my office about whether or not we're coming
15  back.  But I did think it was important to let the Court know
16  now that that was going on, particularly because there was no
17  mention of it in the prior motion.
18         With that, Your Honor, I'd like to introduce Jim
19  Black and Tom Lindgren who together have had quite a bit of
20  contact with Mr. Schneiderman in connection with a variety of
21  civil lawsuits that the Receiver has brought.  When the
22  Receiver has been able to directly collect proceeds of the
23  RICO conspiracy, the government has allowed them to do so and
24  not pursued forfeiture of those same assets.
25         THE COURT:  How much has been collected to date?

8

1         MR. BLACK:  Approximately, $280 million, Your Honor.
2         THE COURT:  If you want to make a statement right
3  here.
4         MR. LINDGREN:  Whichever is your choice, Your Honor.
5         THE COURT:  Ms. Cream asked if it could be done by a
6  proffer, and Mr. Horwitz didn't object to that.
7         MR. LINDGREN:  Good afternoon.  Thank you, Your
8  Honor.  As Ms. Cream said, my name is Thomas Lindgren.  I'm an
9  attorney now with the law firm of Poyner and Spruill in
10  Raleigh, North Carolina.  For my first ten years involved with
11  this case, I had an office in New York under the firm name of
12  O'Keefe and Lindgren and started representing the Insurance
13  Commissioner of Delaware in 1996 in their efforts to recover
14  money in this case.  I've been, on behalf of the insurance
15  commissioner, the primary person who has dealt with Jan
16  Schneiderman since she began cooperating with my office and
17  the other attorneys and individuals representing the Delaware
18  Insurance Commissioner.
19         THE COURT:  When did the cooperation commence?
20         MR. LINDGREN:  Shortly after her conviction, Your
21  Honor.  The best of my recollection, going back on my records,
22  it would be around the year -- the end of 2000, the beginning
23  of 2001.
24         THE COURT:  All right.
25         MR. LINDGREN:  Once Ms. Schneiderman began

9

1  cooperating and from then continuing up until today, she has
2  been responsive to every request that we have made of her.
3  When my office was in New York, I would go up to the prison at
4  Danbury and meet with her personally.  On numerous occasions,
5  my associate at the time also did the same thing.
6  Ms. Schneiderman began reviewing records, either bank records
7  or other records in order to assist the insurance commissioner
8  in attempting to recover as much of the $440 million that was
9  lost by National Heritage.
10        The first specific instance where Ms. Schneiderman's
11  cooperation led to a recovery was in the Williams against LPDA
12  acquisition matter, which was where Jeffrey Sklaroff was
13  appointed Receiver by the Honorable Barrington D. Parker.
14  That was the civil proceeding, Your Honor, that we brought
15  regarding the Stonewell Center Point Mall that subsequently
16  became part of the forfeiture that Ms. Cream was, after ten
17  years, finally able to recover the $2.4 million on behalf of
18  the government.
19        But specifically, and even before she testified for
20  the government, Ms. Schneiderman recanted her affidavit that
21  she had filed back in 1997 stating that the discharge of the
22  mortgage was supposed to be filed.  She recanted and gave us
23  an affidavit stating that she had been forced by Sholam Weiss
24  under threats of physical violence to file that, that it was
25  not true and, in fact, the intention was that that affidavit

10

1  was not to be filed.  And subsequently, after the efforts of
2  the U.S. Attorney's Office here, the hearings, Your Honor's
3  ruling, and the trips to the Eleventh Circuit, that money was
4  recovered.  And after expenses, the money was credited -- was
5  given to the victim, and is part of that $280 million total
6  that has been recovered to date.
7        As I'm sure Your Honor is aware, there's still a
8  large outstanding judgment against Mr. Weiss, which the
9  insurance commissioner is still attempting to recover these
10  days.  Last year, a verdict was obtained against Bear Stearns
11  for $28 million dollars in a separate case.  It did not
12  involve Ms. Schneiderman, but just to show that there are
13  still ongoing recoveries and attempts to recover the money.
14        The next case specifically where Ms. Schneiderman
15  aided my office and the other attorneys for the insurance
16  commissioner was Donna Lee Williams against Jarnow
17  Corporation, and Isaac Nussen.  Your Honor may remember that
18  Mr. Nussen testified on behalf of Mr. Weiss during the
19  criminal trial, and I believe Your Honor also mentioned
20  Mr. Nussen's name in the Stonewell decision that you wrote.
21        Through Ms. Schneiderman's specific assistance, we
22  were able to obtain summary judgment against Mr. Nussen in
23  that case.  We have an unliquidated damage award against
24  Mr. Nussen and are in the process of determining whether or
25  not to proceed to attempt to collect on it.  Mr. Nussen has a

11

1  couple of other judgments against him, and we're trying to
2  weigh that.  But Ms. Schneiderman was able to provide specific
3  assistance.  She reviewed documents in that case.  She
4  reviewed records, checks.  We would send boxes up to the
5  prison in Danbury.  She would look at them and send us reports
6  back and was extremely helpful in our obtaining summary
7  judgment in that case.
8       The next case specifically that she assisted us was
9  Donna Lee Williams against Congregation Yetev Lev.  This
10  involved, Your Honor, a fraudulent conveyance of checks being
11  written to Congregation Yetev Lev and also the United Talmudic
12  Academy of Kiryas Joel.  Ms. Schneiderman provided specific
13  information and documentation regarding these transactions
14  resulting in the settlement with the United Talmudic Academy
15  defendants in the case.  Unfortunately, we had summary
16  judgment granted against us with regard to Congregation Yetev
17  Lev, but we were able to recover a substantial amount from
18  United Talmudic Academy, based upon her cooperation and
19  assistance in that case.
20       The next case, Your Honor, is -- it was brought in
21  the name of the new insurance commissioner.  Since we've been
22  going on for awhile, we're now on our third insurance
23  commissioner since this rehabilitation, but the case of
24  Matthew Denn against Goldy Feig was a mortgage foreclosure
25  action that was brought against Goldy Feig, Sholam Weiss's

12

1  wife, regarding a mortgage held by National Heritage, which is
2  a mortgage in the second position.  Ms. Schneiderman provided
3  virtually all of the information and documentation regarding
4  the mortgage, regarding the fact that there were never any
5  payments made on this mortgage, and she has been of great
6  assistance to us in that case.
7       That case, Your Honor, has now been stayed by virtue
8  of the motion for a preliminary order of forfeiture that's
9  filed by Ms. Cream's office, because the property is one of
10  the properties that the government is seeking to obtain by way
11  of that forfeiture motion.  So with that action, we survived
12  three motions for summary judgment and three appeals in that
13  case.  And Ms. Schneiderman provided affidavits and other
14  documentation to allow us to get to the point where now
15  hopefully the government can obtain that property, Your Honor.
16  It was a very difficult foreclosure, to say the least.  I'm
17  sure it's not a surprise based upon what you heard during the
18  course of the Weiss trial.
19       Your Honor, I'd also like to add that within the
20  last year and a half or so, through the Bureau of Prisons,
21  Ms. Schneiderman is now permitted to email me.  So, as things
22  are ongoing and we're still attempting to locate and recover
23  additional assets, it's become much easier, and I probably at
24  least once or twice a week send an email to Ms. Schneiderman
25  asking her for specific information, whether it be about

13

1 individuals or about certain documents.  And within a couple
2 days, she's able to get back to me.
3      I will tell Your Honor that during the entire time
4 that I've worked with her that I have always found her to be
5 truthful and honest with me.  She has never attempted to
6 mislead me.  When I ask her if she can help us with something
7 and she feels that she cannot, she tells me that she cannot.
8 It has been a pleasure working with her.
9      I will also say, Your Honor, that after her
10 conviction, her family, her father turned over boxes and boxes
11 of documents and records to us.  We have, on behalf of the
12 commissioner, gone through all of the financial records in
13 this case.  And the insurance commissioner has come to the
14 conclusion, Your Honor, that Jan Schneiderman did not benefit
15 at all from this National Heritage fraud, that we cannot find
16 or identify that she received any of the money that went
17 through any of the various accounts that she had.  And
18 virtually every dollar of money, of National Heritage's money
19 that went through, whether it be her escrow account, personal
20 account, or accounts where she was a nominee for Sholam Weiss,
21 that all that money has been accounted for with none of it
22 going to her.
23      If Your Honor has any other specific questions, I
24 tried to just outline the specific areas.  Although we at the
25 present time do not have any pending legal actions, on behalf

14

1 of the insurance commissioner, we have still been authorized
2 and directed to attempt to collect on the 337 million dollar
3 judgment that we have against Sholam Weiss.  We do believe
4 that there are substantial assets that are out there somewhere
5 that could be used to satisfy that judgment.  We have been
6 directed by not only the Insurance Commissioner of Delaware,
7 but by the guaranty associations of all of the states who also
8 had to reimburse and pay the policyholders who are still out
9 of pocket money in this case, as is the state of Delaware.
10      THE COURT:  Well, are you working with
11 Ms. Schneiderman currently on anything?
12      MR. LINDGREN:  Your Honor, we are currently working
13 with her with regard to tracing some assets that we believe
14 are in Europe.
15      THE COURT:  And so, is it your intent to come back
16 to court through the government for further reduction for
17 that?  You don't want that counted on this?
18      MR. LINDGREN:  No, Your Honor, we do not want it,
19 no, Your Honor.
20      THE COURT:  Mr. Lindgren, thank you.
21      MR. LINDGREN:  Thank you, Your Honor.
22      MR. BLACK:  Good afternoon, Your Honor; James J.
23 Black from the law firm of Black & Gerngross in Philadelphia.
24      THE COURT:  Good afternoon, Mr. Black.
25      MR. BLACK:  Your Honor, I am senior special counsel

1  to the Delaware Insurance Commissioner, and have worked along
2  with Mr. Lindgren in the forfeiture and civil actions that
3  were commenced after the criminal trial. I just would like to
4  reiterate what Mr. Lindgren said and indicate on behalf of the
5  commissioner and on behalf of the Receiver and the guaranty
6  associations that the victim in every way supports the
7  application for relief that Ms. Schneiderman is presenting
8  today.
9          I think, there are two aspects I would just like to
10  put a highlight on is that Mr. Lindgren alluded several times
11  to Your Honor, being familiar with Sholam Weiss. Sholam Weiss
12  is still extremely active in putting up obstacles and has been
13  very active in putting up untold legal obstacles to our
14  recovery. Notwithstanding that, this is the most successful
15  recovery effort of an insurance company insolvency caused by
16  fraud in history by many times.
17          All the policyholders, both covered by guaranty
18  associations and uncovered, have been paid back 100 cents on
19  the dollar. The only remaining creditors are the guaranty
20  funds, who paid some of that money, and we're still at it,
21  because we still believe there are still ill-gotten gains to
22  be gotten, but this has been tremendously successful. One of
23  the reasons it has been successful is because we've gotten
24  tremendous cooperation from people who were, frankly, on the
25  inside and were able to help us to thwart some of those

1  obstacles.
2          THE COURT: Who besides Ms. Schneiderman has been
3  assisting you?
4          MR. BLACK: Your Honor, I would say, first of all,
5  Blutrich and Pfeffer from --
6          THE COURT: They had pled, and they assisted the
7  government in the prosecution of the case.
8          MR. BLACK: Absolutely. And they have been
9  extremely valuable. The other original set of defendants was
10  Smyth and Davies. They cooperated certainly much less
11  enthusiastically. They answered what they were asked. They
12  were not proactive, that's a little bit of a -- I'd like to
13  put a little bit of an emphasis on that.
14          Ms. Schneiderman's been extremely proactive in not
15  only responding to our questions, but in telling us where to
16  go look and what to do in documents. And, of course, she has
17  a lawyer's mind, so she knows where there would be
18  corroborating evidence or where there would be evidence to
19  help us overcome some of the objections that we've had in
20  these various civil cases.
21          And there is kind of an unquantifiable issue there
22  that when she began to cooperate with us and as her
23  cooperation became known among the Weiss associates, there is
24  a deterrent effect. We don't get the obviously frivolous
25  stuff that we used to get, because they know that we can go

17

1  right to the source often and get the documents, so she has
2  been extremely valuable to us, and the commissioner and the
3  victim do support our application.
4          THE COURT:  Thank you, Mr. Black.
5          MR. BLACK:  Thank you, Your Honor.
6          THE COURT:  All right.  Mr. Horwitz, do you want to
7  give the opportunity for Ms. Schneiderman to say something at
8  this point or do you want to speak?
9          MR. HORWITZ:  I'd like to speak now, Your Honor.
10         THE COURT:  All right.
11         MR. HORWITZ:  At first, I'd like to advise the Court
12 that Ms. Schneiderman's father, Mr. Schneiderman, is here from
13 Boca, Florida, and her aunt and uncle, Mr. and Mrs. Gessner,
14 and her other uncle are here from New York, and Mr. Friedman
15 is here from DelRay Beach, her other uncle.  They're here just
16 to support her.  Not that they're going to testify, but I want
17 to let you know who that is sitting here.
18         THE COURT:  All right, thank you.
19         MR. HORWITZ:  Your Honor, this is a case that I came
20 into only in the area of a rule -- to handle this Rule 35
21 motion quite some time ago.  If you'll notice the letter that
22 was attached to the government's motion written by
23 Mr. Lindgren was back in '07, dated '07.  And I'd just like to
24 point out to you -- I'm not going to go over all the things
25 they talked about.  They have much more information and

18

1  firsthand knowledge about that, and I couldn't presume to tell
2  you the worth of Ms. Schneiderman to them.  I think, they've
3  done a great job in advising you as only they could do.  But
4  I'd like to point out a couple things, and I'm confident I
5  will be accurate.  And I'd request that the government or
6  Mr. Lindgren correct me or Mr. Black if I'm in any way
7  incorrect.
8          The government has noted that Ms. Schneiderman was
9  attempting to help during the time that Mr. Weiss was a
10 fugitive and, in fact, she, as the government notes in its
11 motion, actually did provide the location where he was
12 ultimately found.  So that's where it started.  And then, we
13 have this first case, the Delaware -- the forfeiture case in
14 which the government had promised Ms. Schneiderman two points
15 for her cooperation.  And I want to make sure the Court
16 understands that that promise of the two points was for the
17 cooperation in that, I'll call it, the Center Point Mall case.
18         THE COURT:  You mean, promise, you mean said that
19 they would ask for a two-level reduction?
20         MR. HORWITZ:  Right, the promise to ask for a
21 two-level reduction.  After that, after she completed that,
22 she continued to work.  And you've got an idea of what that
23 work entails through all of the different cases that have been
24 outlined for you.  And the cases are set out, and there's a
25 lot more -- and all of those cases were done by the Receiver.

19

1        And I'm sure the Court is aware, but I want to
2    satisfy myself when I say this, and that is that there was
3    always an understanding that the cooperation of
4    Ms. Schneiderman with the Receiver would be considered by the
5    government as substantial assistance to the government,
6    because of the common goal, that is, to recover these assets.
7        So, what we have is not only does Ms. Schneiderman
8    continue to work diligently and help the Receiver in the
9    numerous cases that had been outlined to you, both orally and
10   in the government's motion and in the letter, but also by pure
11   happenstance, Your Honor.  She was incarcerated and placed
12   where she was able to help the U.S. Attorney in the Northern
13   District of Ohio.  And that help, according to that assistant,
14   as conveyed to me and to Ms. Cream, was that they would
15   consider two points.
16       So what we have, I submit that while
17   Ms. Schneiderman is greatly appreciative of the filing of this
18   motion, it ultimately is your decision to find out how much
19   it's worth.  And given the --
20       THE COURT:  Well, the government's asked for four
21   levels, and you're already at four without getting into what
22   -- and you're asking for nine levels.
23       MR. HORWITZ:  Yes.
24       THE COURT:  All right.
25       MR. HORWITZ:  And the point is the government

20

1    promised two if she did that, the government here.  And the
2    government in Ohio said it's worth two, and so we submit that
3    there's some consideration for all of the work that she's
4    done, and I couldn't say it any better than -- I can't say it
5    even close to as good as the Receiver's lawyers have to you as
6    to the impact of her assistance to them and, of course, she's
7    also assisted on this recent case that's been filed.
8        So given all of that, Your Honor, we would ask that
9    the Court -- we've asked for nine.  And ultimately, it's your
10   decision, obviously.  I'm just saying that when you look at
11   all of the work and the promises that were made, it would seem
12   as though four really doesn't -- four levels doesn't really
13   take into account all of the work that she has done.
14       She's already served nine and a half years, and the
15   impact on her life -- she recognizes that she's there because
16   of her conduct, the fact that she was under -- my perception
17   is that she was under the control of this fella Weiss, and
18   she's not contending, nor do I, that limits her culpability in
19   any way.
20       But the impact on her life has probably been the
21   greatest as it pertains to the loss of her sister, because she
22   carries with her this belief that but for her misconduct and
23   criminal conduct, she would have been available to help in
24   providing a donor organ for her sister.  And, unfortunately,
25   the timing was such and she couldn't because of her own

21

1    conduct, and that's a burden that she carries with her.

2        But, so, Your Honor, we would request, and

3    Ms. Schneiderman has a brief comment to the Court.  But we

4    would request that she be given consideration greater than the

5    four-level reduction.  The other, I've advised the Court that

6    the government, according to Ms. Cream, they may come back and

7    they may not.  There's no guarantee that even if

8    Ms. Schneiderman cooperates that they would come back with an

9    additional substantial assistance motion, we don't know.

10        But taking that off the table for a moment, I would

11   submit that, granted nine is a number, how did I come up with

12   that number?  Well, I kind of added up all of the work that

13   she's done and thought it was worth something.  I put that in

14   the motion in my response, so you understood my reasoning

15   there.  But I would submit to you that four is just way too

16   low.  Six or seven -- I would say seven is a minimum for all

17   of this extra work, and she has done everything within her

18   power to correct the wrong that she has done.

19        And ultimately this was an economic crime, and she

20   has helped the only way she could.  She's not like Blutrich or

21   Pfeffer or Smyth, who walked away with the stolen assets that

22   they could have given back.  But she's done what she could do,

23   and that is to provide information and insight and review and

24   assist the Receiver's lawyers and the government lawyers in

25   any way possible.

22

1        Are there any questions, Your Honor?

2        THE COURT:  No, thank you very much.

3        Ms. Schneiderman, did you want to say anything or

4    correct anything that was said or state anything that you feel

5    should have been said that was not?

6        THE DEFENDANT:  I don't think I had to make any

7    corrections, Your Honor, but I did want to make a short

8    statement, if that's okay.

9        THE COURT:  Yes, it is.

10        THE DEFENDANT:  Thank you, Your Honor.

11        Your Honor, Ms. Cream, Mr. Marro, if you're there, I

12   am truly sorry for everything I have done.  I've worked very

13   hard and spent countless hours.  I will continue to work as

14   hard as necessary with the government, with the trustees'

15   attorneys, Tom Lindgren and Jim Black, to rectify what I have

16   done and hopefully make the victims whole.

17        As Mr. Horwitz just said, because of my conduct, I

18   was unable to help my family, in particular, my beloved

19   sister, who paid the ultimate price for my defeat when I was

20   needed the most, and I will live with that forever.  I have no

21   one to blame for that but myself.  All I ask today is if you

22   help me and especially my family, it would be very greatly

23   appreciated.  Thank you for this opportunity, Your Honor.

24        THE COURT:  Thank you, Ms. Schneiderman.

25        Is there anything anyone else would like to say?

23

1        MS. CREAM:  Your Honor, if I may, briefly.

2        THE COURT:  Ms. Cream.

3        MS. CREAM:  Mr. Horwitz spoke earlier about the fact

4   that it was his understanding that the government had always

5   agreed to recognize whatever assistance was provided by

6   Ms. Schneiderman to the Receivers.  I can't speak -- I can't

7   confirm that that is the case.  Since I became involved in

8   2001, the only specific promise that I was aware of and the

9   only thing that I've seen in the file documented was the

10  agreement to request a two-level downward departure as a

11  result of the cooperation in the Stonewell proceeding.

12        And so, in preparing this motion, I outlined for the

13  United States Attorney or, in this case, the acting U.S.

14  Attorney, Lee Bentley, the work that Ms. Schneiderman had

15  done, talked about the issues associated with that.  And it

16  was the office's assessment that taken as a whole, regardless

17  of whether or not there had ever been a specific promise to

18  recognize the work done on behalf of the Receiver that it was

19  appropriate, because all of the money, whether collected by

20  the government or directly by the Receiver was to go to the

21  victim.  It was restitution, and we did want to look to that,

22  but I'm not aware of any prior specific promise to do so.

23        THE COURT:  Well, Ms. Cream, the Receiver and the

24  government throughout this case and the attorneys have work

25  side by side helping each other.  And I don't think the Court

24

1   should split hairs on who should get the benefit of this and

2   who should not.  Her assistance has assisted the government,

3   the policyholders, the Receiver, the insurance commissioner.

4   And I don't think any of those other places can recognize it.

5   They can't do anything to help her, so it comes here.

6        MS. CREAM:  Absolutely, Your Honor.  My only point

7   is that I did not want to endorse that a specific promise had

8   been made.

9        THE COURT:  All right.

10        MS. CREAM:  Having said that, Your Honor, the U.S.

11  Attorney, looking at a whole at the cooperation, valued it at

12  four levels, consistent with our office policies and how we've

13  handled other defendants, and the U.S. Attorney continues to

14  maintain that four levels is appropriate.

15        THE COURT:  All right, gentlepeople.  There is a --

16  let me ask if anyone else wants to say anything.  There is a

17  guideline provision.  The guidelines, of course, are advisory

18  on substantial assistance to the authorities under 5K1.1.  The

19  preliminary requisites have been met.  The government has

20  filed a motion stating defendant has provided substantial

21  assistance in the investigation and prosecution of another

22  person, who has committed an offense.  And that predicate,

23  having been met, the Court then looks to the factors for

24  departure.

25        This is actually a presentencing provision, but also

25

1  the language in it would apply to, I think, post-sentencing
2  assistance. And it says, "The appropriate reduction shall be
3  determined by the Court for reasons stated that may include,
4  but are not limited to consideration of the following:  The
5  Court's evaluation of the significance and usefulness of the
6  defendant's assistance taking into consideration the
7  government's evaluation of the assistance rendered."
8         The trial in this case -- and Ms. Schneiderman did
9  not assist during the trial, she was a defendant -- took
10 slightly less than ten months of the Court's time and involved
11 a wide ranging series of extremely complex frauds.
12 Ms. Schneiderman was at the heart of many of the fraudulent
13 actions doing the beck and call of Mr. Weiss, and I have to
14 take into consideration the seriousness of the actions in the
15 complex series of frauds of Ms. Schneiderman.
16        But also, that bodes in favor of granting the
17 government's motion, because the assistance that she would
18 give to the government, which has already been presented to me
19 in the motion and in the other submissions, has been
20 significant and obviously useful with the amount of money that
21 the Receiver's counsel or the insurance commissioner's counsel
22 has stated has been recouped.
23        The Court must consider the truthfulness,
24 completeness, and reliability of any information or testimony
25 provided by the defendant.  The defendant testified, I

26

1  believe, if I recall, in the Stonewell case, which was quite a
2  bit of yarn to unravel.  And the proponent and movant here has
3  testified that she has been truthful and reliable.  And has
4  provided important information.
5         The nature and extent of the defendant's assistance,
6  it has been wide ranging over a series of different events.
7  Each one of these fraudulent acts could have been the basis of
8  an indictment by itself.  They were all lumped together,
9  because the characters and players in the frauds were the
10 same.  But it was a very complex and varied fraud.  And so,
11 her assistance, of course, has been far ranging.
12        There has not been any evidence of injury suffered
13 or danger or risk of injury to the defendant or her family
14 from the assistance, but Ms. Schneiderman has stated here and
15 it was presented in the record that her incarceration, because
16 of her actions, has caused her not to be able to assist her
17 sister in a serious and significant medical issue.  And then,
18 the timeliness of the defendant's assistance.  At the
19 inception of the hearing, I asked about that and was advised
20 it was very shortly after the sentencing.  So, in my view, the
21 motion should be granted.
22        Now, this leads to the level of the reduction.  And
23 I am cognizant, Ms. Schneiderman, that there needs to be
24 respect for the law, deterrence, and the public needs to have
25 confidence in the actions of the Court in terms of punishment

27

1  for defendants, so I weigh that on one side.
2          On the other, even at the time of sentencing, I
3  thought this was a very harsh sentence and had hoped during
4  the trial you would come forward and assist the government,
5  because you were one of the defendants that had so much to
6  lose by a verdict of guilty, and it did not happen.  In a way,
7  I am personally glad that this has come about that you made
8  this decision.  I do not think a four-level reduction is
9  appropriate here.  On the other hand, I think nine is beyond
10 what is appropriate.
11         And, Ms. Schneiderman, this is the question I have.
12 I'm faced with this from time to time when it appears that
13 someone is going to cooperate in the future, but the
14 government can't promise that it would come back.  Do I reward
15 the person now for the future assistance with the
16 understanding that I would consider that in the future that
17 wouldn't preclude the government from coming back and having a
18 further reduction.  But if the government doesn't come back,
19 then I've lost the opportunity to grant the relief.
20         Is it your intention, regardless of whether a motion
21 is filed in the future, to assist the government and to
22 continue and testify, if necessary?
23         THE DEFENDANT:  Your Honor, I think, I've made
24 myself very clear on that particular issue with Mr. Lindgren
25 and Mr. Black.  And I think they, after working with me for

28

1  this period of time, are confident, and if they are there,
2  they can speak for themselves, that I will continue to
3  cooperate.  I want to finish what I started.  And I'd like to
4  see this entire matter brought to fruition and all assets that
5  were misappropriated should be returned to the rightful
6  owners, and that is a personal goal of mine.  And I will make
7  every effort I possibly can, whether it be during my time in
8  prison, as I already have, or should I be released, I will
9  make every possible effort to continue to help Mr. Lindgren
10 Mr. Black, Ms. Cream, Mr. Marro, anybody who is in need of my
11 assistance, Your Honor, because this is very important to me.
12         THE COURT:  All right.  With that representation,
13 then, I am going to grant the government's motion and grant a
14 six-level reduction.  The defendant was scored at advisory
15 guideline Level 40, Criminal History Category I.  A six-level
16 reduction would put her at an Offense Level 34, Criminal
17 History Category I, which is 151 to 188 months.  There are no
18 mandatory minimums in her sentencing, correct?
19         MS. CREAM:  Correct, Your Honor.
20         THE COURT:  So at this time, I will reduce the
21 sentence from the -- well, there is a consecutive, though.
22 Let me go back through this.
23         (Pause in proceedings.)
24         It looks as though the consecutive was in order to
25 reach the guideline level.  And so, I'll have to figure out

29

1  how to apportion this among the different counts, which I can
2  do here with you or back in my office.  But at this time, I
3  will sentence the defendant to 156 months of incarceration.
4  And I may have to change how this was stacked up with the
5  counts of conviction.
6          Is there any objection to the sentence?
7          MS. CREAM:  No, Your Honor.
8          THE COURT:  Mr. Horwitz.
9          MR. HORWITZ:  No, Your Honor.
10         THE COURT:  And, Ms. Schneiderman, is there any
11  objection, anything you want to state?
12         THE DEFENDANT:  No.  Is it possible for me to speak
13  to Mr. Horwitz for a moment?
14         THE COURT:  See him or talk to him?
15         THE DEFENDANT:  Talk to him.
16         THE COURT:  All right.  Do we have a phone that he
17  can use?
18         DEPUTY CLERK:  We have a phone at the bench.
19         THE COURT:  Well, that wouldn't give him privacy.
20  Michele why don't you take him back to my office.
21  Do you know the number to call, Mr. Horwitz?
22         MR. HORWITZ:  No, ma'am, I don't.
23         THE COURT:  How can he reach you, Ms. Schneiderman?
24         (Brief pause in proceedings.)
25         Just take him in so he has privacy.  We'll wait

30

1  until you come back.  We'll wait right here for you.
2          MR. HORWITZ:  Thank you.
3          (Mr. Horwitz exits courtroom.)
4          THE COURT:  Ms. Schneiderman, we need to have you
5  mute your microphone when he calls you.
6          THE DEFENDANT:  Okay.
7          THE COURT:  So that it isn't heard here.
8          THE DEFENDANT:  Yes, ma'am.
9          THE COURT:  And then, when you're finished, he'll
10  come back in, and you'll need to un-mute.
11         THE DEFENDANT:  Okay.  There's a staff member
12  monitoring that control, Your Honor, and he will do that.
13         THE COURT:  All right.
14         (Pause in proceedings.)
15         Ms. Schneiderman, are you back on the mic?
16         THE DEFENDANT:  Yes, ma'am, I am.
17         (Mr. Horwitz returns to courtroom.)
18         THE COURT:  Your attorney is just walking in.
19         THE DEFENDANT:  Thank you.
20         THE COURT:  Did you have enough time to talk to him?
21         THE DEFENDANT:  Yes, I did.
22         THE COURT:  And is there anything else you want to
23  say?
24         THE DEFENDANT:  No, ma'am.
25         MR. HORWITZ:  Your Honor, there is something I'd

31

1  like to convey on Ms. Schneiderman's behalf, and she can
2  always confirm it, but this is something that had been
3  bothering me every since I got on to this case, and this
4  addresses your concerns about how she did start to cooperate
5  during the trial or before the trial.  Her lawyer was paid for
6  by Mr. Weiss.
7          THE COURT:  Yes.
8          MR. HORWITZ:  And fairly early on in that trial,
9  Ms. Schneiderman asked him -- said I'd like to approach the
10 government to enter a plea and cooperate.  And that happened,
11 she advises, on more than one occasion, and he kept talking
12 her out of it.  And, Your Honor, that was the detriment of
13 having a lawyer, who is being paid by a co-defendant, but it
14 was something that she tried to explore.
15         THE COURT:  All right.  There was a -- I believe
16 there was so much in that case so, correct me if I'm wrong,
17 but that was an issue that was explored initially about the
18 conflict of interest, and there were assurances given, because
19 the case would not have gone on with that in it had that
20 not --
21         MR. HORWITZ:  I think this was -- and I wasn't
22 there, but --
23         THE COURT:  So, you're saying that later this
24 happened after that hearing?
25         MR. HORWITZ:  Your Honor, it wasn't -- if that

32

1  happened before the trial.  I was told by my client that she
2  approached her lawyer on this shortly into the trial after it
3  had started.  But it was, to me, from what I've seen from the
4  outside, not being a participant, this was a further example
5  of Mr. Weiss's control over the key players.  And here,
6  Ms. Schneiderman, who still even in the trial couldn't do what
7  she wanted to because of following the advice of her lawyer,
8  who was really protecting Mr. Weiss, rather than her.
9          THE COURT:  Well, without getting into this deeply,
10 because I think it would make this degenerate into something
11 else, Ms. Schneiderman had opportunities during the trial to
12 say things.  I can recall her walking all around the courtroom
13 with all the different defendants, and many of them had their
14 own laptops.  I suspected they were emailing each other during
15 the trial and so forth, and she was part of that.
16         So, I'm not going to change what I have ruled here
17 because of that, because I'm trying to balance what is an
18 appropriate punishment for what was a truly heinous fraud and
19 complex and could not have been carried out by Mr. Weiss
20 alone.  I mean, he needed all these face people, these
21 nominees, to be able to perpetrate what he did, and there were
22 many willing people who did that, including Ms. Schneiderman
23 and others at the time.
24         But I feel -- Ms. Schneiderman has a law degree from
25 a very fine university and, you know, she is certainly on the

33

1  right course.  And the extent of her assistance is impressive,
2  because having tried the case, I know how complex this was.
3  And, as Mr. Black was saying, some people may just ask the
4  questions that are asked and do nothing more.  But someone who
5  is really trying to assist will then come forth with what was
6  not intended, was not expected or not known by the
7  authorities, and that's what I am understanding that she's
8  done.  So, therefore, I don't often give a six-level
9  reduction, and I'm not foreclosing the government from coming
10 back.
11      MR. HORWITZ:  Thank you, Your Honor.  I just wanted
12 to let you know a little of the side information.  Thank you
13 for your consideration in this case.
14      THE COURT:  Ms. Schneiderman, is there anything else
15 you want to say?
16      THE DEFENDANT:  Just to clarify for the sake of the
17 record, the conflict of interest issue was explored vis-a-vis
18 Mr. Kukec's previous representation of Isaac Rosenberg, who
19 was severed out of the trial at the last minute.  And if you
20 recall the hearing before Judge Spaulding involved any
21 potential conflicts between Isaac Rosenberg and I, which there
22 were none, because we were not involved in any transactions at
23 the same time.
24      THE COURT:  All right.
25      THE DEFENDANT:  So, just for the sake of

34

1  clarification, Your Honor.
2      THE COURT:  Why is this being brought up?  What is
3  the -- just for purposes of setting the record straight?  Or
4  is there some --
5      MR. HORWITZ:  The reason why I brought it up --
6      THE COURT:  Is there some relief you want?  Or --
7      MR. HORWITZ:  Your Honor, the reason why I brought
8  it up is to share with you that even though her cooperation
9  didn't officially start until after the trial, she was leaning
10 that way and only prevented from doing so because of
11 Mr. Kukec's advice.
12      THE COURT:  All right.
13      MR. HORWITZ:  That's the only reason I put it
14 forward, Your Honor.  And Ms. Schneiderman --
15      THE COURT:  I didn't know if it was a 2225 situation
16 or something like that.
17      MR. HORWITZ:  That's done.
18      THE COURT:  Okay.
19      MR. HORWITZ:  That was withdrawn quite sometime ago.
20      THE COURT:  Okay.  All right.
21      Anything from anybody else?
22      MS. CREAM:  No, Your Honor.
23      THE COURT:  Ms. Schneiderman, good luck to you.
24      THE DEFENDANT:  Thank you, ma'am.
25      (Hearing concluded at 1:56 p.m.)

35

```
1                    - - - - - - -
2                      CERTIFICATE
3   I HEREBY CERTIFY THAT THE FOREGOING IS AN ACCURATE
4   TRANSCRIPTION OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.
5
6   Koretta Stanford        5-7-09
    Koretta Stanford           Date
7   Official Court Reporter
    (407) 872-1715
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```